1  MICHAEL J. AGUIRRE, City Attorney
   JOE CORDILEONE, Senior Deputy City Attorney
2  California State Bar No. 73606
   MARIA C. SEVERSON, Chief Deputy City Attorney
3  California State Bar No. 173967
   Office of the City Attorney
4  1200 Third Avenue, Suite 1100
   San Diego, California 92101-4100
5  Telephone: (619) 533-5800
   Facsimile: (619) 533-5856
6

7  Attorneys for Defendant City of San Diego

Exempt from fees per Gov't code 6103
To the benefit of the City of San Diego

8

9              **UNITED STATES DISTRICT COURT**

10            **SOUTHERN DISTRICT OF CALIFORNIA**

11 TRACY MEANS,                          Case No. 08cv0580 WQH (POR)

12          Plaintiff,                   **DEFENDANT'S REQUEST FOR
                                         JUDICIAL NOTICE IN SUPPORT OF
13      v.                               ITS MOTION TO DISMISS
                                         PLAINTIFF'S FIRST AMENDED
14                                       COMPLAINT PURSUANT TO
   CITY OF SAN DIEGO, a municipal corporation   FEDERAL RULE OF CIVIL
15 and a Political Subdivision of the State of   PROCEDURE 12(b), AND IN THE
   California, and DOES 1-30, inclusive,   ALTERNATIVE, MOTION FOR A
16                                       MORE DEFINITE STATEMENT
          Defendant.                     PURSUANT TO FEDERAL RULE OF
17                                       CIVIL PROCEDURE 12(e) AND
                                         MOTION TO STRIKE PORTIONS OF
18                                       THE COMPLAINT PURSUANT TO
                                         FEDERAL RULE OF CIVIL
19                                       PROCEDURE 12(f)**

20                                       **NO ORAL ARUGMENT UNLESS
                                         REQUESTED BY COURT**
21
                                         Judge: Hon. William Q. Hayes
22                                       Courtroom:    4
                                         Date:  May 12, 2008
23                                       Time:. 11:00 a.m.

24                                       Magistrate: Hon. Louisa S. Porter

25

26      Pursuant to Federal Rule of Evidence 201, Defendant City of San Diego hereby

27 requests the Court take judicial notice of all of the documents, records, pleadings and orders

28 contained in the Court's file for this matter, including but not limited to:

                                1

1.    First Amended Complaint in instant action, including all its attachments,
       (removed to this Court on March 28, 2008);

2.    "Complaint for Declaratory Relief, Mandamus, and Attorney's Fees" filed by
       this Plaintiff against this Defendant on April 14, 2006, in San Diego Superior
       Court, Case No. 864419; and

3.    "Judgment by Court under CCP 437c, in Favor of Defendant City of San
       Diego and against Plaintiff Tracy L. Means", filed on November 8, 2007 in
       San Diego Superior Court, Case No. 864419.

4.    Notice of Ruling dated January 7, 2008, with attachment: Order, dated January
       4, 2008 (awarding Plaintiff Tracy L. Means attorney's fees and costs) in San
       Diego Superior Court, Case No. 8858344.

5.    February 8, 2008 ruling in San Diego Superior Court, Case No. 858344.

# I

## ARGUMENT

Judicial notice of these documents is proper pursuant to rule 201(b) of the Federal
Rules of Evidence, which permits courts to take judicial notice of facts that are "not subject to
reasonable dispute in that [they are] either (1) generally known within the territorial
jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to
sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The Federal
Rules direct courts to take judicial notice of such matters "if requested by a party and supplied
with the necessary information." Fed.R.Evid. 201(d).

This Court may judicially notice and consider the aforementioned documents in
deciding the City's Motion to Dismiss. In deciding a motion to dismiss, the Court is not
limited to the contents of the complaint. Rather, "[w]hen ruling on a motion to dismiss, the
court may consider the facts alleged in the complaint, documents attached to the complaint,
documents relied upon but not attached to the complaint when authenticity is not contested,
*and matters of which the Court takes judicial notice.*" *In re Peerless Sys., Corp Sec. Litig.*,
182 F. Supp. 2d 982, 987 n. 2 (S.D. Cal. 2002) (emphasis added); see also *Parrino v. FHP,*

2

1 | *Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (in ruling on a motion to dismiss, courts may take

2 | judicial notice of documents "whose contents are alleged in a complaint and whose

3 | authenticity no party questions, but which are not physically attached to the [plaintiff's]

4 | pleading") (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)). This well-

5 | established application of judicial notice is designed to prevent plaintiffs from avoiding Rule

6 | 12 dismissal "b deliberately omitting referenes to documents upon which their claims are

7 | based." *Parrino*, 146 F.3d at 706; see also *Pension Benefit Guar. Corp. v. White Consol.*

8 | *Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

9 |

10 | Dated:  April 2, 2008                    MICHAEL J. AGUIRRE, City Attorney

11 |

12 |                                         By    /s/
                                                Joe B. Cordileone
13 |                                             Senior Deputy City Attorney
                                                Attorneys for Defendant City of San Diego
14 |

3

# EXHIBIT 1

1  Paula S. Rosenstein, Esq. (SBN 126264)
   ROSENSTEIN, WILSON & DEAN, P.L.C.
2  1901 First Avenue, Suite 300
   San Diego, California 92101
3  Telephone: (619) 232-8377

4  Attorneys for Plaintiff
   TRACY MEANS

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SAN DIEGO

10

11  TRACY MEANS,                          CASE NO. 37-2007-00083609-CU-MC-CTL

12         Plaintiff,
                                          FIRST AMENDED COMPLAINT FOR
13  v.                                    DAMAGES (42 U.S.C. §1983)

14  CITY OF SAN DIEGO, a municipal
    corporation and a Political Subdivision of the
15  State of California, and DOES 1-30, inclusive,

16         Defendants.

17

18

19         Plaintiff Tracy Means (hereinafter "Plaintiff" or "Means") alleges:

20         1.  Defendant City of San Diego is, and at all times herein mentioned was, a municipal

21  corporation and a Political Subdivision of the State of California which is governed by the California

22  Government Code, among other federal, state and local laws and regulations.

23         2.  Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-

24  30, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this

25  complaint to allege their true names and capacities when ascertained. Plaintiff is informed and

26  believes and thereon alleges that each of the fictitiously named defendants is responsible in some

27  manner for the occurrences herein alleged and that Plaintiff's injuries as herein alleged were

28  proximately caused by the aforementioned defendants.

- 1 -

FIRST AMENDED COMPLAINT FOR DAMAGES

1       3.  Plaintiff is informed and believes and thereon alleges that at all times herein mentioned,

2   Defendants, and each of them, were agents, servants and employees of each of the remaining

3   defendants. Further, Defendants, and each of them, in doing the things hereinafter alleged, were acting

4   within the course and scope of such agency, servitude and employment, and with the permission and

5   consent of each of the other defendants.

6       4.  Plaintiff Tracy Means was an employee of the City of San Diego for approximately 8 years.

7   During this time, she held the position of Deputy Director, Airports Division. Most of the time she was

8   employed by the City, the Airports Division was part of the Real Estate Assets Department. For the

9   majority of the time that she was employed by the City, her immediate superior was William T. Griffith,

10  Director of the Real Estate Assets Department.

11      5.  Ms. Means left her employment with the City of San Diego in November 2005. Throughout

12  her employment, Ms. Means had received at least above average employment evaluations.

13      6.  After her departure from her employment with the City, Plaintiff was sued in a civil action

14  styled <u>City of San Diego, a municipal corporation and a political subdivision of the State of California,</u>

15  <u>Plaintiff v. Tracy L. Means (a.k.a. Tracy L. Williams), an individual, et al.</u>, San Diego Court Case No.

16  GIC 858344. (hereinafter "underlying action").

17      7.  The original Complaint in the underlying action was filed on December 13, 2005 and served

18  on Plaintiff Means on December 15, 2005. Ms. Means filed an Answer to that Complaint on January

19  13, 2006. Subsequently, amended the complaint three more times such that at the conclusion of the

20  lawsuit, the operative complaint was "Plaintiffs' Fourth Amended Complaint", a copy of which is

21  attached hereto as Exhibit "A". Ms. Means also filed an Answer to the Fourth Amended Complaint.

22      8.  The City's Complaint and the subsequent versions accuse Tracy Means of awarding fourteen

23  written purchase order contracts for consulting services to Co-Defendant Airport Business Solutions,

24  Inc. The Complaints allege that the purchase order contracts resulted in actual payments in the sum

25  of $218,527.00 to Co-Defendant Airport Business Solutions, Inc.

26      9.  Ms. Means filed a Motion for Summary Judgment in the underlying action arguing that

27  there was no evidence to create a triable issue of material fact and, in fact, that there was no evidence

28  to support the allegations made against Ms. Means. The Motion for Summary Judgment made by Ms.

1   Means was granted by the Superior Court of California, County of San Diego on August 10, 2007.

2   A Judgment was entered in Ms. Means' favor on September 20, 2007. A true and correct copy of the

3   Judgment is attached hereto as Exhibit "B".

4       10. The City filed a Notice of Appeal of the Judgment on October 9, 2007.

5       11. Plaintiff is informed and believes and thereon alleges that City Attorney, Michael J. Aguirre

6   did not ask for or receive permission to file the original complaint against Ms. Means nor did he ask

7   for or receive permission to continue the suit and file the four subsequent versions of the complaint.

8   In spite of knowing these facts, the City Council repeatedly ratified the continuation of the frivolous

9   and unlawful actions.

10      12. On February 27, 2006 and again on March 7, 2006, the City Council for the City of San

11  Diego addressed the question of whether the City would provide Tracy Means a defense in the civil

12  action. A motion was made to deny Ms. Means a defense. The motion passed.

13      13. On September 7, 2006, in a letter by her attorney to the Mayor of San Diego and City

14  Council, Ms. Means again asked the City government to take action which would stop the baseless

15  litigation against her and adopt a resolution directing the City Attorney to dismiss the suit. In the letter,

16  it was pointed out that the City government had its own duties and responsibilities relating to the abuse

17  of its authority separate and apart from that of Mr. Aguirre's. A true and correct copy of the letter sent

18  to the City's Mayor and Council is attached hereto and incorporated herein as Exhibit "C".

19      14. Despite repeated attempts by Ms. Means to have the lawsuit withdrawn, dismissed or

20  otherwise ended, the Mayor, City Council and City Attorney separately and together failed and refused

21  to do so in spite of the multiple requests by the Plaintiff. In so doing, Defendants, through their action

22  and inaction, acted under color of law and in violation of 18 U.S.C. §1983. These officers, together

23  and separately, hold the policymaking power for the Defendant City of San Diego.

24      15. Moreover, Plaintiff is informed and believes and thereon alleges that the City Council

25  believes that the City Attorney acted in violation of his obligations as City Attorney for the City of San

26  Diego in bringing this lawsuit and others without the Mayor's or City Council's authorization or

27  approval and in violation of state law and the rights of the Plaintiff. Despite this belief about the

28  limitations on the City Attorney's authority, the City Council allowed this lawsuit to continue and was

- 3 -

FIRST AMENDED COMPLAINT FOR DAMAGES

1  deliberately indifferent to the fact and knowledge which the City Council had that he had insufficient

2  evidence to support the allegations against Ms. Means being made in the underlying action.

3      16.  In failing and refusing to end the underlying action and in passing and refusing to pass

4  various resolutions regarding the underlying litigation, Defendant made official policy which violated

5  Plaintiff's Constitutional rights.

6                              **FIRST CAUSE OF ACTION**

7          (42 U.S.C. §1983; Equal Protection Under U.S. Constitution Amend. XIV)

8      17.  Plaintiff hereby refers to Paragraphs 1 through 16, inclusive, and incorporates them herein

9  by this reference.

10      18.  Plaintiff Tracy Means was, during the time period for which she was accused of engaging

11  in wrongdoing, an employee of the City of San Diego.

12      19.  City Attorney Aguirre has initiated lawsuits against other current and former employees

13  of the City of San Diego.  In each of them, the City of San Diego has provided a defense for the

14  employee.  In this case, despite multiple requests, Defendant continued the ill-considered, frivolous,

15  and unlawful underlying action deliberately indifferent to the harm being caused to Plaintiff while

16  simultaneously refusing to provide her with a defense to the underlying action.  However, no other

17  employee or former employee has had a suit filed against them for actions taken while acting in their

18  capacity as an employee of the City.  Ms. Means was deliberately singled out for unfair and inequitable

19  treatment in violation of the law.

20      20.  Defendants were deliberately indifferent to Plaintiff and refused to take any meaningful

21  action to stop the loss of her life, liberty or property interests she was suffering by the continuation of

22  the underlying action.

23      21.  Instead of directing the City Attorney's office to dismiss the underlying action, Defendants

24  encouraged, ratified and/or allowed the unfounded and unlawful  underlying action to continue.

25      22.  As a result of Defendants' actions, failure to act, deliberate indifference, arbitrary and/or

26  capricious conduct, Plaintiff was forced to take a significantly less challenging and lower paying

27  position as other airports and airport authorities, and government entities who run airports would not

28  hire her.  As a further result, Plaintiff has been deprived of continuing upward mobility on her career

- 4 -

1    path. Plaintiff has been damaged emotionally and physically by the actions and inaction of Defendants.

2    Plaintiff has also been damaged to the extent that the underlying action has negatively affected, and will

3    continue to negatively affect, her future career prospects, wages, benefits and earning capacity.

4         23.  Because of the Defendants' actions, Plaintiff was required to retain counsel to defend the

5    underlying action and therefore incurred significant costs and attorneys fees which would have been

6    unnecessary had Defendants not violated 42 U.S.C. §1983.

7         24.  Defendants' actions, failure to act, deliberate indifference, arbitrary and/or capricious

8    conduct, with regard to the deprivations and detriment that Plaintiff suffered was carried out in

9    violation of the Equal Protection Clause of the Fourteenth Amendment to the United States

10   Constitution and 42 U.S.C. §1983. At all times, Defendants have been, are presently and will be acting

11   under the color and authority of the laws of the United States and the State of California. As a result

12   of Defendants' conduct, Plaintiff suffered economic and non-economic damages in an amount to be

13   more precisely determined at trial.

14        25.  Plaintiff seeks a judgment declaring that the intentional acts and the acts of deliberate

15   indifference described above perpetrated by the Defendants are prohibited by the Equal Protection

16   Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983 and seek

17   the relief set forth in the prayer for relief.

18        26.  By failing to follow the minimum procedures required by the Constitution, state and local

19   law, Defendants deprived Plaintiff of her liberty and property interests to be free of unlawful

20   interference with her career in violation of the Equal Protection Clause of the Fourteenth Amendment

21   to the United States Constitution and 42 U.S.C. §1983. At all times, Defendants have been, are

22   presently and will be acting under the color and authority of the laws of the United States and the State

23   of California.

24        27.  Plaintiff therefore seeks a judgment declaring that the actions and the acts of deliberate

25   indifference described above perpetrated by the Defendants are prohibited by the Equal Protection

26   Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, and seek

27   the relief set forth in the prayer for relief.

28   // //

FIRST AMENDED COMPLAINT FOR DAMAGES

**SECOND CAUSE OF ACTION**

(42 U.S.C. §1983; Procedural Due Process Under U.S. Constitution Amend. XIV)

28. Plaintiff hereby refers to Paragraphs 1 through 27, inclusive, and incorporates them herein by this reference.

29. Plaintiff has protected liberty and property interests in a career, profession and job conferred by the California State Constitution. Article I, Section 1 recognizes that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Article 1, Section 7 recognizes that "(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws...."

30. Defendants have a custom, policy, and/or they tolerate a custom or policy that results in intentional, arbitrary and/or capricious harm or deliberate indifference to Plaintiff's legal rights. Plaintiff was deprived of her liberty and property interests to be free of unlawful interference with her career without due process of law. Plaintiff was an employee of Defendant City of San Diego from 1997 to 2005. At all times, Plaintiff did her job to the best of her ability in accordance with the instructions, directions and supervision of her superiors.

31. Defendants either failed to follow or had no adequate or effective formal or informal policy to ensure that lawsuits filed against former employees were legitimate and supported by evidence before permitting them to be filed on behalf of the City of San Diego. When Plaintiff complained to Defendants, they were deliberately indifferent to Plaintiff's health, safety and welfare and none of them took any meaningful action to stop the frivolous and unlawful underlying action.

32. Instead of addressing these actions, Defendants encouraged, convinced, and/or allowed the underlying action to continue against Plaintiff thus perpetuating the economic and non-economic harm to Plaintiff.

33. As a result of Defendants' actions, failure to act, and/or deliberate indifference, Plaintiff was constructively halted in her career path. She was unable to obtain employment commensurate or better than her position with the City of San Diego because of the underlying action, which was based upon a fatally flawed "investigation" that lacked in fundamental fairness. Plaintiff has also been denied

- 6 -

1    career opportunities. Plaintiff has been damaged emotionally, physically and economically by the

2    underlying action. Plaintiff has also been damaged to the extent that the publicity and fact of the

3    lawsuit against Plaintiff has negatively affected, and will continue to negatively affect, her future career

4    prospects.

5         34. Defendants did not follow the minimum procedures required by the Constitution, state and

6    local law in response to Plaintiff's complaints regarding the underlying action. As a result of the

7    foregoing actions, failure to act, and/or the deliberate indifference of Defendants, Plaintiff's career,

8    profession and job opportunities have been negatively impacted along with her income, emotional

9    health and physical health.

10        35. By failing to follow the minimum procedures required by the Constitution, state and local

11    law, Defendants deprived Plaintiff of her liberty and property interests to be free of unlawful

12    interference with her career in violation of the Due Process Clause of the Fourteenth Amendment to

13    .the United States Constitution and 42 U.S.C. §1983. At all times, Defendants have been, are presently,

14    and will be acting under the color and authority of the laws of the United States and the State of

15    California. As a result, Plaintiff suffered economic and non-economic damages in an amount to be

16    more precisely determined at trial.

17        36. Because of the Defendants' actions, Plaintiff was required to retain counsel to defend the

18    underlying action and therefore incurred significant costs and attorneys fees which would have been

19    unnecessary had Defendants not violated 42 U.S.C. §1983.

20        37. Plaintiff seeks a judgment declaring that the actions and the acts of deliberate indifference

21    described above perpetrated by the Defendants are prohibited by the Due Process Clause of the

22    Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983 and seek the relief set

23    forth in the prayer for relief.

24        38. By failing to follow the minimum procedures required by the Constitution, state and local

25    law, Defendants deprived Plaintiff of her liberty and property interests to be free of unlawful

26    interference with her career in violation of the Due Process Clause of the Fourteenth Amendment to

27    the U. S. Constitution and 42 U.S.C. §1983. At all times, Defendants have been, are presently and will

28    be acting under the color and authority of the laws of the United States and the State of California.

- 7 -

1    39.  Plaintiffs therefore seek a judgment declaring that the intentional acts and the acts of

2    deliberate indifference described above perpetrated by the Defendants are prohibited by the Due

3    Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983,

4    and seek the relief set forth in the prayer for relief.

5                                           **THIRD CAUSE OF ACTION**

6           (42 U.S.C. §1983; Substantive Due Process Under U.S. Constitution Amend. XIV)

7           40.  Plaintiff hereby refers to Paragraphs 1 through 39, inclusive, and incorporates them herein

8    by this reference.

9           41.  Defendants have a custom, policy, and/or they tolerate a custom or policy that results in

10   intentional, arbitrary and/or capricious harm or deliberate indifference to Plaintiff's legal rights.

11   Defendants interfered with Plaintiff's liberty and property interests in violation of the Constitution of

12   the United States.  Plaintiff was an employee of the City of San Diego from 1997 to 2005.  After she

13   left her employment with the City of San Diego, Plaintiff was sued by Defendants without any basis

14   for believing that the suit was meritorious.

15          42.  Defendants either failed to follow or had no effective or adequate formal or informal policy

16   to ensure that suits filed on behalf of the City of San Diego were meritorious and supported by

17   evidence.  When Plaintiff complained to Defendants, they were deliberately indifferent to the financial,

18   emotional, psychological and professional harm being caused to Plaintiff and none of them took any

19   meaningful action to stop the harmful conduct.

20          43.  Instead of addressing these actions, Defendants encouraged, convinced, and/or allowed

21   the underlying action to continue against Plaintiff thus perpetuating the economic and non-economic

22   harm to Plaintiff.

23          44.  As a result of Defendants' actions, failure to act, and/or deliberate indifference, Plaintiff

24   was constructively halted in her career path.  She was unable to obtain employment commensurate or

25   better than her position with the City of San Diego because of the underlying action and has been

26   denied career opportunities.  Plaintiff has been damaged economically, emotionally and physically by

27   the underlying action.  Plaintiff has also been damaged to the extent that the publicity and fact of the

28   lawsuit against Plaintiff has negatively effected, and will continue to negatively affect, her future career

- 8 -

1 | prospects, wages, benefits and earning capacity.

2 |     45. Defendants' actions, failures to act, and/or deliberate indifference towards the harm

3 | Plaintiff suffered were carried out because of their failure and refusal to examine the basis, evidence

4 | and legitimacy of the underlying action. Through the foregoing actions, failure to act, and deliberate

5 | indifference, Defendants interfered with Plaintiff's liberty and property interests to be free of unlawful

6 | interference with her career. Moreover, Defendants' actions, failure to act, and/or deliberate

7 | indifference created a risk of physical, financial and emotional harm to Plaintiff and further

8 | demonstrated their deliberate indifference to the harassment and impediments to her liberty and

9 | property interests by rendering her more vulnerable to that danger by allowing the underlying action

10 | to continue. As a result, Plaintiff's substantive due process rights guaranteed by the Fourteenth

11 | Amendment to the United States Constitution and 42 U.S.C. §1983 were violated. At all times,

12 | Defendants have been, are presently and will be acting under the color and authority of the laws of the

13 | United States and the State of California. As a result, Plaintiff suffered economic and non-economic

14 | damages in an amount to be more precisely determined at trial.

15 |     46. Because of the Defendants' actions, Plaintiff was required to retain counsel to defend the

16 | underlying action and therefore incurred significant costs and attorneys fees which would have been

17 | unnecessary had Defendants not violated 42 U.S.C. §1983.

18 |     47. Plaintiff therefore seeks a judgment declaring that the actions and the acts of deliberate

19 | indifference described above perpetrated by the Defendants are prohibited by the Due Process Clause

20 | of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, and seek the

21 | injunctive relief set forth in the prayer for relief.

22 | **PRAYER FOR RELIEF**

23 | WHEREFORE, Plaintiffs pray for judgment as stated below:

24 |     1. Issue a judgment declaring that the acts of the Defendants described herein violate the

25 | Fourteenth Amendment to the Constitution of the United States and further that the constitutional and

26 | statutory rights which have been violated are present rights of Plaintiff which must immediately be

27 | respected and protected.

28 |     2. For general damages in an amount to be proven at time of trial;

1        3. For damages for loss of earnings and other employment benefits, past and present, and for

2  loss of earning capacity in an amount to be proven at time of trial;

3        4. For special damages in an amount to be proven at time of trial;

4        5. For exemplary and punitive damages to be awarded according to proof at trial;

5        6. For interest on the aforesaid amount at a legal rate from and after the time when said

6  amounts were due to Plaintiff;

7        7. For costs of suit and attorneys' fees pursuant to state and federal statutes; and

8        8. For such other and further relief as the Court may deem just, proper, and appropriate.

9  Dated: _Feb. 4_ , 2008.      Respectfully submitted,

10                ROSENSTEIN, WILSON & DEAN, P.L.C.

12                By:

13                    Paula S. Rosenstein, Esq.
                        Attorneys for Plaintiff Tracy Means

FIRST AMENDED COMPLAINT FOR DAMAGES

# EXHIBIT A

MICHAEL J. AGUIRRE, City Attorney
MARK EDELMAN, Deputy City Attorney, SBN 156862
SHEILA A. LOWERY FERGUSON, Deputy City Attorney, SBN 149144
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone: (619) 533-5800
    Facsimile: (619) 533-5856

Attorneys for Plaintiffs
City of San Diego, a municipal corporation and a
Political Subdivision of the State of California;
and The People of the State of California

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

| | |
|---|---|
| CITY OF SAN DIEGO, a municipal corporation and a Political Subdivision of the State of California, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through San Diego City Attorney, Michael J. Aguirre,<br><br>           Plaintiffs,<br><br>    v.<br><br>TRACY L. MEANS, (aka Tracy L. Williams) an individual; MICHAEL HODGES, an individual; ROBERTA THOMPSON, an individual; AIRPORT BUSINESS SOLUTIONS, INC., a Georgia Corporation; ABS AVIATION CONSULTANCY, INC. d/b/a AIRPORT BUSINESS SOLUTIONS, a Florida Corporation; THOMPSON AVIATION CONSULTING, INC., a Florida Corporation; DOES 1-20, inclusive.<br><br>           Defendants. | Case No. GIC 858344<br><br>**FOURTH AMENDED COMPLAINT FOR INTENTIONAL MISREPRESENTATION OF FACT; NEGLIGENT MISREPRESENTATION OF FACT; TO RESCIND ILLEGALLY AWARDED PUBLIC CONTRACTS; TO RECOVER MONEY HAD AND RECEIVED; VIOLATIONS OF THE UNFAIR COMPETITION ACT; VIOLATIONS OF THE FALSE CLAIMS ACT; BREACH OF CONTRACT; PROFESSIONAL NEGLIGENCE; FRAUDULENT CONCEALMENT OF MATERIAL FACTS; AND STATUTORY LIABILITY UNDER SAN DEIGO CITY CHARTER SECTION 108.**<br><br>Dept: 65<br>Complaint filed: December 13, 2005<br>Trial: September 7, 2007<br><br>[UNLIMITED CIVIL CASE] |

For cause of action the Plaintiffs, the City of San Diego [CITY] and the People of the State of California [STATE] allege as follows:

1.    The City of San Diego is a charter municipal corporation under the laws of the State of California and a Political Subdivision of the State of California, and brings this action for intentional misrepresentation of fact, negligent misrepresentation of fact, to rescind contracts,

1   to recover public funds and collect damages for deliberate and willful violation of the City's

2   contract bidding policies, damages and civil penalties for violations of the Unfair Competition

3   Act and the False Claims Act, breach of contract, professional negligence, fraudulent

4   concealment of material facts and statutory liability under San Diego City Charter Section 108.

5       2.      The People of the State of California acting by and through San Diego City

6   Attorney Michael J. Aguirre, are a Plaintiff herein for purposes of Count Five only, for violations

7   of the Unfair Competition Act pursuant to California Business and Professions Code sections

8   17200 et seq.

9       3.      Plaintiffs allege that defendant Tracy L. Means (aka Tracy L. Williams) is a

10  terminated employee who was the Deputy Director of the Airports Division of the Real Assets

11  Department of the City of San Diego at all times described herein.

12      4.      Plaintiffs are informed and believe and thereon allege that defendant Michael

13  Hodges is, and at all times relevant hereto was, an individual residing in the State of Florida but

14  doing business in the City and County of San Diego, State of California. Further, that Michael

15  Hodges is the President and CEO of defendant Airport Business Solutions, Inc. and defendant

16  ABS Aviation Consultancy, Inc. d/b/a Airport Business Solutions.

17      5.      Plaintiffs are informed and believe and thereon allege that defendant Airport

18  Business Solutions, Inc. is a Georgia corporation that is authorized to transact business, and does

19  transact business, within the State of California.

20      6.      Plaintiffs are informed and believe and thereon allege that defendant ABS

21  Aviation Consultancy, Inc. d/b/a Airport Business Solutions is a Florida Corporation that is

22  authorized to transact business, and does transact business, within the State of California.

23      7.      Defendant Airport Business Solutions, Inc. and Defendant ABS Aviation

24  Consultancy, Inc. d/b/a Airport Business Solutions are hereinafter collectively referred to herein

25  as "ABS".

26      8.      Plaintiffs are informed and believe and thereon allege that Defendant Roberta

27  Thompson is, and at all times relevant hereto was, an individual residing in the State of Florida

28  but doing business in the City and County of San Diego, State of California as an employee of

2

1    "ABS". Plaintiffs further allege that since on or about September 9, 2002, defendant Roberta

2    Thompson has been the President, Secretary, Treasurer and Director of defendant Thompson

3    Aviation Consulting, Inc.

4        9.    Plaintiffs are informed and believe and thereon allege that defendant Thompson

5    Aviation Consulting, Inc., hereinafter referred to as "Thompson Consulting" is a Florida

6    Corporation that is authorized to transact business, and does transact business, within the State of

7    California. Plaintiffs are further informed and believe and thereon allege that "Thompson

8    Consulting" has been subcontracted to "ABS" since September 2002.

9        10.    The true names and capacities, whether individual, corporate, associate, or

10   otherwise, of defendants DOES 1 through 20, inclusive, are unknown to Plaintiffs which

11   therefore sue said defendants by such fictitious names. Plaintiffs will ask leave of court to amend

12   their Complaint to show the true names and capacities of such fictitiously named defendants

13   when the same have been ascertained. Plaintiffs are informed and believe, and thereon allege,

14   that each of the defendants designated DOES 1 through 20, inclusive, is responsible under the

15   law in some manner, through some wrongful conduct or otherwise, for the events and

16   happenings referred to herein, and thereby proximately caused damages to Plaintiffs as alleged

17   herein.

18       11.    Plaintiffs are informed and believe and thereon allege that at all times mentioned,

19   the defendants, named and unnamed, and each of them, were the principals, agents, servants,

20   employers, employees and/or partners of each of their remaining co-defendants, and in doing the

21   things herein described were acting in the course and scope of such relationships and with the

22   permission and consent of each of the other defendants.

23                                                **VENUE**

24       12.    Venue of this action is proper in the County of San Diego because one or

25   more of the relevant contracts were entered into, were performed, and were breached in San

26   Diego County and the liability and/or obligation of the parties arose in San Diego County.

27   / / /

28   / / /

## GENERAL ALLEGATIONS

13.    Some time prior to August 2000, defendant Tracy Means was engaged in the study of the operations, management and profitability of the municipal airports owned and operated by CITY. Commencing on or about September 8, 2000 and continuing through June 2005, Tracy Means awarded thirteen written purchase order contracts for consulting services to "ABS". The purchase order contracts totaled $308,000.00 and resulted in actual payments in the sum of $216,026.84 to "ABS". True and correct copies of the thirteen purchase orders are attached hereto as Exhibits "A" through "M".

14.    Plaintiffs are informed and believe and thereon allege that at the time the project work forming the subject matter of the above-referenced purchase orders was negotiated, defendants Tracy Means, Michael Hodges, Roberta Thompson, "Thompson Consulting" and "ABS", knew that the size and scope of the contemplated projects required that they be let out for competitive bidding by the general public. Pursuant to their meetings and agreement, Defendants, and each of them, and DOES 1 through 20, conspired to divide up the contemplated work into smaller purchase orders so that no competitive selection or bidding would be required. Defendants further agreed to divide up the work into small enough pieces so as to make the purchase order amounts come within the authority of a department director.

15.    Plaintiffs are informed and believe and thereon allege that at the time the project work forming the subject matter of the above-referenced purchase orders was negotiated, defendants, and each of them, and DOES 1 through 20, agreed to mischaracterize the first purchase order dated September 8, 2000, as a "sole source" contract in order to circumvent the requisite competitive selection and bidding process.

16.    At all times relevant hereto, Tracy Means, as the Deputy Director of the CITY'S Airports Division, was charged with knowledge of the San Diego Municipal Code sections 22.3037, 22.3212 and 22.3223, San Diego Administrative Regulation Number 25.70 and the San Diego City Charter.

17.    Section 22.3037(a) of the San Diego Municipal Code states that, "The City Manager may certify that a *sole source contract* is justified because strict compliance with

4

competitive selection or bidding requirements would be unavailing, or would not produce an

advantage, or would be undesirable, impractical, or impossible." Section 22.3037(b) provides

that, "The City Manager may delegate the *sole source* certification authority provided in section

22.307(a) to the Assistant City Manager, Deputy City Manager, or any Department Director."

18.    Plaintiffs are informed and believe and thereon allege that the September 8, 2000,

purchase order contract referenced in the Paragraph 15 above was not a "sole source" contract

within the meaning of San Diego Municipal Code section 22.3037(a). Plaintiffs are also

informed and believe and thereon allege that neither the City Manager, Assistant City Manager,

Deputy City Manager or any Department Director certified the September 8, 2000 purchase

order as a "sole source" contract pursuant to San Diego Municipal Code section 22.3037(b).

Plaintiffs are further informed and believe and thereon allege that defendant Tracy Means wrote

and signed a Memorandum dated August 15, 2000, from Real Estate Assets Department Director

William T. Griffith without his permission. Such Memorandum proposed that the September 8,

2000 contract with "ABS" be characterized as a "sole source" contract.

19.    San Diego Administrative Regulation Number 25.70 sections 9.1 through 9.4 set

forth the procurement requirements of a "sole source" contract. Section 9.1 provides that the

Initiating Department "[d]etermines the services are available from only one source and there is

no permissible substitute. Justification for this determination must document the efforts made to

identify and/or include alternatives, actual identification of other possible sources, and reason for

their exclusion . . ." Plaintiffs are informed and believe and thereon allege that Tracy Means,

according to the plan, and in agreement with "ABS", Michael Hodges, Roberta Thompson,

"Thompson Consulting", and DOES 1 through 20, completely disregarded the mandates of San

Diego Administrative Regulation Number 25.70 section 9.1. The services in question were

available from numerous sources and numerous permissible substitutes existed. Tracy Means

neither made nor documented any efforts to identify any other possible sources for providing the

services in question. Tracy Means also failed to provide any justification for excluding other

possible sources for such services.

20.    San Diego Administrative Regulation Number 25.70 sections 9.1(a) through (c) set forth the permissible justification factors for procuring services from a "sole source". Such factors include: (a) time constraints; (b) costs savings; and (c) unique expertise. Plaintiffs are informed and believe and thereon allege that none of these factors were present in the initial September 8, 2000 purchase order contract with "ABS".

21.    City of San Diego Administrative Regulation Number 25.70 section 2.2, states that, "Consultant selection shall be an open and competitive process, including a comparison of qualifications and output quality. Each step in the process must be objective and fully documented. The process must to be in accordance the City of San Diego's Minority (MBE), Women (WBE) and Disadvantaged (DBE) Business Enterprise Program." Plaintiffs are informed and believe and thereon allege that Tracy Means, with the agreement of defendants, and each of them, and DOES 1 through 20, completely disregarded the mandates of the foregoing Regulation.

22.    City of San Diego Administrative Regulation Number 25.70 section 2.3 provides that, "The consultant selection process shall include a specific analysis and review of cost statements. The fee to be paid shall be considered, but shall not be the sole basis for selection." Plaintiffs are informed and believe and thereon allege that Tracy Means, with the agreement of defendants, and each of them, and DOES 1 through 20, dealt exclusively with "ABS", and failed to solicit, obtain, analyze and review any cost statements from any other consultants.

23.    City of San Diego Administrative Regulation Number 25.70 section 6.5, states that, "Notice of the intent to seek consulting services and requests for submission of qualifications statements shall be published in the City's official newspaper and three minority focused newspapers for every service in excess of fifty thousand dollars ($50,000) provided that the price quotations are solicited from at least three potential sources for every service up to and including fifty thousand dollars ($50,000). All advertisements and RFP's shall indicate the City's MBE/WBE/DBE/DVBE goals." Plaintiffs are informed and believe and thereon allege that Tracy Means, with the agreement of defendants, and each of them, and DOES 1 through 20, completely disregarded the foregoing Regulation.

24. Tracy Means, with the agreement of defendants, and each of them, and DOES 1 through 20, purposefully violated the competitive selection and bidding provisions of San Diego Administrative Regulation Number 25.70. Tracy Means did not solicit any oral or written price quotations from any sources for any of the subject contracts other than from "ABS". She did not advertise any of the subject contracts. Tracy Means completely failed to conduct any competitive selection and bidding process at all.

25. San Diego Administrative Regulation Number 25.70 section 5.2 provides in part that Department Directors have approval authority for all contracts up to $25,000 as delegated to them by the San Diego City Manager. A Department Director may not then pass on this authority to a lower level in the organization unless the City Manager specifically states in writing that he/she may do so.

26. At all times relevant hereto, Tracy Means did not have the authority to award the contracts described herein, to enter into the contracts described herein, or to contractually bind CITY. Neither the City Manager nor the Director of the City of San Diego Department of Real Estate Assets delegated their authority to hire consultants to Tracy Means. Moreover, Tracy Means deliberately violated San Diego Administrative Regulation Number 25.70 section 5.2 by exceeding the express prohibition against awarding contracts totaling more than $25,000 to the same consultant within a single 12-month period. Tracy Means repeatedly violated this Regulation between 2000 and 2005 as part of her pattern and practice of subterfuge with defendants as set forth in detail herein.

27. Commencing in September 2000 and continuing through June 2005, Tracy Means, pursuant to the agreement of defendants, and each of them, and DOES 1 through 20, awarded thirteen contracts to "ABS", without the authority to do so. Neither the City Manager nor the Real Estate Assets Department Director authorized Tracy Means to award such contracts. All of the thirteen contracts awarded by Tracy Means to "ABS" were *ultra vires* and void.

28. Commencing in September 2000 and continuing through June 2005, Tracy Means, pursuant to the agreement of defendants, and each of them, and DOES 1 through 20, awarded thirteen contracts to "ABS" in violation of the requisite competitive selection and

7

1  bidding process set forth in City of San Diego Administrative Regulation Number 25.70. Such

2  contracts were illegal and void.

3      29.    Commencing in September 2000 and continuing through April 2005, "ABS" and

4  DOES 1 through 20 received money via payments that were authorized, allowed and approved

5  by Tracy Means.

6

7      30.    "ABS", Michael Hodges, Roberta Thompson, and "Thompson Consulting" [the

8  ABS DEFENDANTS] prepared two Business Plans, one for the CITY'S Brown Field Airport

9  and one for the CITY'S Montgomery Field Airport [BUSINESS PLANS]. The ABS

10 DEFENDANTS also prepared accompanying Rates and Charges Policies, Minimum Standards

11 for Commercial Aeronautical Activities, Leasing Policies for Commercial Aeronautical

12 Activities, Leasing Policies for Non-Aeronautical Commercial Property, and Leasing Policies for

13 Non-Commercial Aeronautical Property [ACCOMPANYING DOCUMENTS] which were

14 identical for each Airport. This work was performed pursuant to eight contracts with CITY. Such

15 contracts were Purchase Orders Numbers 5041151, 5041152, 5042709, 5045057, 5045058,

16 5051273, 5051275, and 5061091 (as reflected in Exhibits "B" through "I" inclusive). The ABS

17 BUSINESS PLANS and ACCOMPANYING DOCUMENTS were performed in a negligent,

18 wrongful, improper, unspecified, and un-workmanlike manner such that the BUSINESS PLANS

19 and ACCOMPANYING DOCUMENTS for CITY'S two airports produced were of no practical

20 use to the City of San Diego. Plaintiffs further allege that such work was performed in a manner

21 below the applicable professional standards of care and contained flaws, misstatements and

22 misinterpretations of Federal Aviation Administration Orders, Regulations, policies, procedures,

23 compliance requirements, and federal law. Such Federal Aviation Administration [FAA] Orders,

24 Regulations, policies, procedures, compliance requirements, and federal laws of which Plaintiffs

25 are presently aware include: FAA Advisory Circular 150/5190-5, Change 1, *Exclusive Rights*

26 *and Minimum Standards for Commercial Aeronautical Activities*, Section 2-2c, dated June 10,

8

1  2002; FAA Order 5190.6A, *Airport Compliance Requirements*, dated October 2, 1989 which

2  describes the responsibilities under FAA Airport Sponsors Assurance 5, *Preserving Rights and*

3  *Powers*, which implements the provisions of 49 U.S.C. section 47108(a); FAA Sponsors

4  Assurance 22(a) and 22(f), *Economic Nondiscrimination*, (FAA Sponsors Assurance 22

5  implements the provisions of 49 U.S.C. sections 47107(a)(1), (2), (3), (5) and (6) and 49 U.S.C.

6  47107(a)(13)); FAA Order 5190.6A, Appendix 5, *Definitions*; 49 U.S.C. section 47107(a)(6) and

7  FAA Airport Sponsor's Assurance 22(f); FAA Order 5190.6A, Section 4-14.d.(2); FAA Order

8  5190.1; FAA Advisory Circular 150/5190-5; FAA Order 5190.6A, Section 4, *Availability on*

9  *Fair and Reasonable Terms*, Subsections 4-14.d(2)(a) through (f); FAA Order 5190.6A,

10  Subsection 6-6; FAA Airport Sponsors Assurance 23, *Exclusive Rights*, which implements the

11  provisions of 49 U.S.C. sections 40103(e) and 47107(a)(4); FAA Airport Sponsors Assurance

12

13  24, *Fee and Rental Structure*, which implements the provisions of 49 U.S.C. section

14  47107(a)(13); FAA Airport Sponsors Assurance 25, *Airport Revenues*, which implements the

15

16  provisions of 49 U.S.C. section 47133; FAA Airport Sponsors Assurance 27, *Use by*

17  *Government Aircraft*, which implements the provisions of 49 U.S.C. section 47107(a)(11);

18  Sponsors Assurance 28, *Land for Federal Facilities*, which implements the provisions of 49

19  U.S.C. section 47107(a)(12); 14 C.F.R. Part 77 and Part 105;  FAA Order 5190.6A, *Airport*

20

21  *Compliance Requirements*, dated October 2, 1989, sections 3-8.b, 3-9.a, 3-9.b, 3-9(d)(2),3-

22  9(d)(3), 3-9(e)(1), and  3-9(e)(3). Plaintiffs are informed and believe that some of such work was

23  not in fact performed or delivered.

24      31.    Plaintiffs are informed and believe and thereon allege that at all times relevant

25  hereto Tracy Means did business exclusively with "ABS", with respect to the services described

26  herein in a manner that was contrary to law.

27

28

32.    On or about November 7, 2005, Plaintiffs first became aware of the unlawful conduct of defendants, and each of them, and DOES 1 through 20 described above, including, but not limited to, the existence of the above-referenced contracts, the fact that such contracts had been unilaterally awarded by Tracy Means in excess of her authority and in violation of the requisite competitive selection and bidding process, and the manner in which they had been subdivided so as to avoid the such competitive selection and bidding process. Prior to that time, Plaintiffs had no actual or reasonable notice of the actions of defendants as they were done with the assistance of the Deputy Director of the CITY's airports, Tracy Means.

## FIRST COUNT
## INTENTIONAL MISREPRESENTATION OF FACT
### (Brought by the CITY against Defendant Tracy Means)

33.    CITY refers to and incorporates herein by this reference, as though set forth in full, each and every allegation contained in paragraphs 1 through 32, hereinabove.

34.    The CITY reiterates herein the facts stated above in Paragraphs 17, 18, 19 and 20 which provide in part that defendant Tracy Means wrote and signed a Memorandum dated August 15, 2000, from her supervisor, Real Estate Assets Department Director, William T. Griffith to Purchasing Agent Linda Baldwin [the "Sole Source" Memorandum] without Mr. Griffith's knowledge or permission. Such Memorandum proposed that the first purchase order contract (a true and correct copy of which is attached hereto as Exhibit "A") dated September 8, 2000, awarded by Tracy Means to "ABS" be characterized as a "sole source" contract. "ABS" did not qualify as a "sole source". A "sole source" contract is exempt from the CITY'S competitive selection process. In so doing, Tracy Means fraudulently misrepresented to the City of San Diego Purchasing Division that William Griffith had authored the "Sole Source" Memorandum, had authorized and certified the "sole source" contract and that "ABS" qualified as a "sole source". In so doing, Tracy Means also successfully circumvented the competitive selection process required by San Diego Administrative Regulation Number 25.70.

35.    These representations made by Tracy Means were in fact false. The true facts were that (1) William Griffith did not either write or request that Tracy Means write the "Sole Source" Memorandum dated August 15, 2000; (2) William Griffith did not authorize Tracy

10

1 Means to sign the "Sole Source" Memorandum; (3) William Griffith did not authorize the hiring

2 of "ABS" to perform the work described in the "Sole Source" Memorandum and the resulting

3 contract, Purchase Order Number 5032956 attached hereto as Exhibit "A"; (4) William Griffith

4 did not certify the contract as a "sole source"; and (5) "ABS" did not qualify as a sole source

5 pursuant to San Diego Administrative Regulation Number 25.70 sections 9.1(a) through (c).

6       36.     When Tracy Means made the foregoing representations, she knew them to be

7 false and made them with the conscious intent to deceive, vex, annoy or harm the CITY in its

8 business and in order to induce the CITY to act in reliance on these representations by issuing

9 purchase order contract number 5032956, or with the expectation that CITY would so act.

10      37.     At the time the representations set forth in Paragraph 34 above were made by

11 Tracy Means, and at the time the CITY took the actions herein alleged and issued purchase order

12 contract number 5032956 to "ABS", the CITY was ignorant of the falsity of Tracy Means'

13 representations and believed them to be true. In reliance on said representations, CITY was

14 induced to and did, in fact, issue purchase order contract number 5032956 to "ABS". Had the

15 CITY known the actual facts it would not have taken such action. CITY'S reliance on the

16 representations by Tracy Means was justified as the "Sole Source" Memorandum as written by

17 Tracy Means containing the false information described in Paragraph 34 above was sufficient

18 for the issuance of purchase order contract number 5032956 to "ABS" as a "sole source" without

19 a competitive selection process. The "Sole Source" Memorandum on its face reflected that the

20 contract had been properly authorized and certified by Department Director William Griffith as a

21 "sole source" and that "ABS" qualified as a "sole source".

22      38.     As a proximate result of the fraudulent conduct of, and misrepresentations by

23 Tracy Means as herein alleged, CITY issued purchase order contract number 5032956 to "ABS"

24 which resulted in the payment to "ABS" of $23,999.00, by reason of which CITY has been

25 damaged in a sum to be proven at trial.

26      39.     The aforementioned conduct on the part of Defendant Tracy Means was an

27 intentional misrepresentation of material facts known to Tracy Means with an intention on the

28 part of Tracy Means of thereby depriving the CITY of legal rights or property, or to otherwise

1  cause injury and harm to CITY, and was despicable conduct that subjected the CITY to a cruel

2  and unjust hardship in conscious disregard of CITY'S rights, so as to justify an award of

3  exemplary and punitive damages against Tracy Means.

4        40.    Between July 1, 2000 and June 30, 2005, purchase order contracts for the hiring

5  of consultants by CITY Departments and Divisions were issued by the City of San Diego

6  Purchasing Division [PURCHASING] upon receipt of duly approved Purchase Requisitions

7  from the hiring Departments or Divisions.

8        41.    Between July 1, 2000 and June 30, 2005, PURCHASING had no oversight

9  authority over the hiring of consultants to perform consultant services for CITY Departments and

10  Divisions other than for itself.

11        42.    Between July 1, 2000 and June 30, 2005, PURCHASING was not authorized to

12  conduct the competitive selection process; to select consultants; or to authorize the hiring of

13  consultants to perform consultant services for CITY Departments and Divisions other than for

14  itself.

15        43.    Between July 1, 2000 and June 30, 2005, the procedure required for the issuance

16  of a purchase order contract to a consultant to perform consulting services for the City of San

17  Diego Airports Division of the Real Estate Assets Department [AIRPORTS] consisted of the

18  following:

19        (a)    AIRPORTS would determine that consultant services were needed;

20        (b)    AIRPORTS would conduct the required competitive selection process mandated

21  by City of San Diego Administrative Regulation Number 25.70 [AR 25.70];

22        (c)    After completing the required competitive selection process, AIRPORTS would

23  select a consultant to perform the consultant services;

24        (d)    Depending on the contract amount of the services to be performed by the selected

25  consultant, the hiring of the consultant would have to be authorized either by the Director of the

26  City of San Diego Department of Real Estate Assets, the City Manager, or the City Council as

27  mandated by AR 25.70 and San Diego Municipal Code section 22.3223;

28  / / /

1    (e)    Thereafter, AIRPORTS would issue a Purchase Requisition to PURCHASING

2    setting forth information including but not limited to, the particulars of the consultant selected, a

3    description of the consultant services to be performed, and the cost of such services;

4    (f)    The Purchase Requisition would also set forth that it had been "approved",

5    thereby providing PURCHASING with the necessary certification that all of the requirements of

6    AR 25.70 regarding the competitive selection process of the consultant and the proper

7    authorization pursuant to AR 25.70 and the San Diego Municipal Code for the hiring of the

8    consultant had been met;

9    (g)    In reliance on the fact that the Purchase Requisition had been "approved", thereby

10   providing the necessary certification that the mandates of AR 25.70 had been followed with

11   respect to conducting the requisite competitive selection process and that the mandates of AR

12   25.70 and the San Diego Municipal Code had been met with respect to obtaining the proper

13   authorizing authority for the hiring of the consultant, PURCHASING would then issue the

14   purchase order contract to the consultant.

15   44.    Between July 1, 2000 and June 30, 2005, Defendant Tracy Means "approved" and

16   directed the issuance of fifteen Purchase Requisitions to PURCHASING for consultant services

17   to be provided to CITY by Defendant "ABS". In so doing, Defendant Tracy Means represented

18   to PURCHASING that with respect to each Purchase Requisition: (1) the competitive selection

19   process mandated by AR 25.70 had been conducted with respect to the selection of "ABS"; and

20   (2) the proper authorization for the hiring of "ABS", required by AR 25.70 and the San Diego

21   Municipal Code had been obtained [REPRESENTATIONS].

22   45.    The REPRESENTATIONS made by Tracy Means set forth in Paragraph 44

23   above were in fact false. The true facts were that (1) the competitive selection process for the

24   hiring of "ABS" required by AR 25.70 had not been conducted; and (2) the proper authorization

25   for the hiring of "ABS" required by AR 25.70 and the San Diego Municipal Code had not been

26   obtained with respect to each of the aforementioned Purchase Requisitions.

27   46.    When Tracy Means made the REPRESENTATIONS set forth in Paragraph 44

28   above, she knew them to be false and made these REPRESENTATIONS with the conscious

13

1    intent to deceive, vex, annoy or harm the CITY in its business and in order to induce CITY to act

2    in reliance on these REPRESENTATIONS by issuing multiple purchase order contracts for

3    consultant services to "ABS" in the manner herein alleged, or with the expectation that CITY

4    would so act. True and complete copies of the thirteen purchase order contracts referred to herein

5    are attached hereto as Exhibits "A" through "M" and are incorporated by reference herein.

6        47.    At the time the REPRESENTATIONS set forth in Paragraph 44 above were made

7    by Tracy Means, and at the time CITY took the actions herein alleged and issued thirteen

8    purchase order contracts for consultant services to "ABS", CITY was ignorant of the falsity of

9    Tracy Means' REPRESENTATIONS and believed them to be true. In reliance on said

10   REPRESENTATIONS, CITY was induced to and did, in fact, issue thirteen purchase order

11   contracts for consultant services to "ABS". Had CITY known the actual facts it would not have

12   taken such actions. CITY'S reliance on the REPRESENTATIONS by Tracy Means was justified

13   as Tracy Means had "approved" and directed the issuance of the Purchase Requisitions which on

14   their face reflected  Tracy Means' "approval" certifying that the required competitive selection

15   process had been conducted and that the required hiring authorization had been obtained.

16       48.    As a proximate result of the fraudulent conduct of, and misrepresentations by

17   Tracy Means as herein alleged in Paragraph 44 above, CITY issued a series of thirteen purchase

18   order contracts to "ABS" which resulted in the payment to "ABS" of approximately

19   $216,026.84, by reason of which CITY has been damaged in a sum to be proven at trial. As a

20   proximate result of the fraudulent conduct of, and misrepresentations by, Tracy Means, as herein

21   alleged, CITY issued a series of thirteen purchase order contracts reflecting the hiring of "ABS"

22   to perform consultant services for CITY without the proper authorization and without the

23   required competitive selection process, by reason of which CITY has been damaged in a sum to

24   be proven at trial.

25       49.    The aforementioned conduct on the part of Defendant Tracy Means was an

26   intentional misrepresentation, deceit, or concealment of a material facts known to Tracy Means

27   with an intention on the part of Tracy Means of thereby depriving CITY of legal rights or

28   property, or to otherwise cause injury to CITY, and was despicable conduct that subjected CITY

1    to a cruel and unjust hardship in conscious disregard of CITY'S rights, so as to justify an award

2    of exemplary and punitive damages against Tracy Means.

3                                    SECOND COUNT
                          NEGLIGENT MISREPRESENTATION OF FACT
4                    (Brought by the CITY against Defendant Tracy Means)

5        50.    CITY refers to and incorporates herein by this reference, as though set forth in

6    full, each and every allegation contained in paragraphs 1 through 49, hereinabove.

7        51.    The CITY reiterates herein the facts stated above in Paragraphs 17, 18, 19 and 20

8    which provide in part that defendant Tracy Means wrote and signed a Memorandum dated

9    August 15, 2000, from her supervisor, Real Estate Assets Department Director, William T.

10   Griffith to Purchasing Agent Linda Baldwin [the "Sole Source" Memorandum] without Mr.

11   Griffith's knowledge or permission. Such Memorandum proposed that the first purchase order

12   contract (Exhibit "A" hereto") dated September 8, 2000, awarded by Tracy Means to "ABS" be

13   characterized as a "sole source" contract. "ABS" did not qualify as a "sole source". A "sole

14   source" contract is exempt from the CITY'S competitive selection process. In so doing, Tracy

15   Means fraudulently misrepresented to the City of San Diego Purchasing Division that William

16   Griffith had authored the "Sole Source" Memorandum, had authorized and certified the "sole

17   source" contract and that "ABS" qualified as a "sole source". In so doing, Tracy Means also

18   successfully circumvented the competitive selection process required by San Diego

19   Administrative Regulation Number 25.70.

20       52.    These representations made by Tracy Means were in fact false. The true facts

21   were that (1) William Griffith did not either write or request that Tracy Means write the "Sole

22   Source" Memorandum dated August 15, 2000; (2) William Griffith did not authorize Tracy

23   Means to sign the "Sole Source" Memorandum; (3) William Griffith did not authorize the hiring

24   of "ABS" to perform the work described in the "Sole Source" Memorandum and the resulting

25   contract, Purchase Order Number 5032956 attached hereto as Exhibit "A"; (4) William Griffith

26   did not certify the contract as a "sole source"; and (5) "ABS" did not qualify as a sole source

27   pursuant to San Diego Administrative Regulation Number 25.70 sections 9.1(a) through (c).

28   ///

1     53.    When Tracy Means made the representations set forth in Paragraph 51 above, she

2    had no reasonable grounds for believing them to be true and made them with the conscious intent

3    to deceive, vex, annoy or harm the CITY in its business and in order to induce the CITY to act in

4    reliance on these representations by issuing purchase order contract number 5032956, or with the

5    expectation that CITY would so act.

6    54.    At the time Tracy Means made the representations set forth in Paragraph 51

7    above, and at the time the CITY took the actions herein alleged and issued purchase order

8    contract number 5032956 to "ABS", the CITY was ignorant of the falsity of Tracy Means'

9    representations and believed them to be true. In reliance on said representations, CITY was

10    induced to and did, in fact, issue purchase order contract number 5032956 to "ABS". Had the

11    CITY known the actual facts it would not have taken such action. CITY'S reliance on the

12    representations by Tracy Means was justified as the "Sole Source" Memorandum as written by

13    Tracy Means containing the false information described in Paragraph 51 above was sufficient for

14    the issuance of purchase order contract number 5032956 to "ABS" as a "sole source" without a

15    competitive selection process. The "Sole Source" Memorandum on its face reflected that the

16    contract had been properly authorized and certified by Department Director William Griffith as a

17    "sole source" and that "ABS" qualified as a "sole source". To the extent that the

18    misrepresentations by Tracy Means described in Paragraph 51 above were not intentional, they

19    were negligent.

20    55.    As a proximate result of the fraudulent conduct of, and negligent

21    misrepresentations by Tracy Means as alleged in Paragraph 51 above, the CITY issued purchase

22    order contract number 5032956 to "ABS" which resulted in the payment to "ABS" of

23    $23,999.00, by reason of which CITY has been damaged in a sum to be proven at trial.

24    56.    CITY'S reliance on the REPRESENTATIONS of Tracy Means described in

25    Paragraph 51 above was reasonable and was a substantial factor in causing harm to CITY.

26    57.    Between July 1, 2000 and June 30, 2005, purchase order contracts for the hiring

27    of consultants by CITY Departments and Divisions were issued by the City of San Diego

28

1    Purchasing Division [PURCHASING] upon receipt of duly approved Purchase Requisitions

2    from the hiring Departments or Divisions.

3        58.    Between July 1, 2000 and June 30, 2005, PURCHASING had no oversight

4    authority over the hiring of consultants to perform consultant services for CITY Departments and

5    Divisions other than for itself.

6        59.    Between July 1, 2000 and June 30, 2005, PURCHASING was not authorized to

7    conduct the competitive selection process; to select consultants; or to authorize the hiring of

8    consultants to perform consultant services for CITY Departments and Divisions other than for

9    itself.

10        60.    Between July 1, 2000 and June 30, 2005, the procedure required for the issuance

11    of a purchase order contract to a consultant to perform consulting services for the City of San

12    Diego Airports Division of the Real Estate Assets Department [AIRPORTS] consisted of the

13    following:

14        (a)    AIRPORTS would determine that consultant services were needed;

15        (b)    AIRPORTS would conduct the required competitive selection process mandated

16    by City of San Diego Administrative Regulation Number 25.70 [AR 25.70];

17        (c)    After completing the required competitive selection process, AIRPORTS would

18    select a consultant to perform the consultant services;

19        (d)    Depending on the contract amount of the services to be performed by the selected

20    consultant, the hiring of the consultant would have to be authorized either by the Director of the

21    City of San Diego Department of Real Estate Assets, the City Manager, or the City Council as

22    mandated by AR 25.70 and San Diego Municipal Code section 22.3223;

23        (e)    Thereafter, AIRPORTS would issue a Purchase Requisition to PURCHASING

24    setting forth information including but not limited to, the particulars of the consultant selected, a

25    description of the consultant services to be performed, and the cost of such services;

26        (f)    The Purchase Requisition would also set forth that it had been "approved",

27    thereby providing PURCHASING with the necessary certification that all of the requirements of

28    AR 25.70 regarding the competitive selection process of the consultant and the proper

17

FOURTH AMENDED COMPLAINT OF PLAINTIFF, CITY OF SAN DIEGO

1  authorization pursuant to AR 25.70 and the San Diego Municipal Code for the hiring of the

2  consultant had been met;

3      (g)    In reliance on the fact that the Purchase Requisition had been "approved", thereby

4  providing the necessary certification that the mandates of AR 25.70 had been followed with

5  respect to conducting the requisite competitive selection process and that the mandates of AR

6  25.70 and the San Diego Municipal Code had been met with respect to obtaining the proper

7  authorizing authority for the hiring of the consultant, PURCHASING would then issue the

8  purchase order contract to the consultant.

9      61.    Between July 1, 2000 and June 30, 2005, Defendant Tracy Means "approved" and

10  directed the issuance of fifteen Purchase Requisitions to PURCHASING for consultant services

11  to be provided to CITY by Defendant "ABS". In so doing, Defendant Tracy Means represented

12  to PURCHASING that with respect to each Purchase Requisition: (1) the competitive selection

13  process mandated by AR 25.70 had been conducted with respect to the selection of "ABS"; and

14  (2) the proper authorization for the hiring of "ABS", required by AR 25.70 and the San Diego

15  Municipal Code had been obtained [REPRESENTATIONS].

16      62.    The REPRESENTATIONS made by Tracy Means set forth in Paragraph 61

17  above were in fact false. The true facts were that (1) the competitive selection process for the

18  hiring of "ABS" required by AR 25.70 had not been conducted; and (2) the proper authorization

19  for the hiring of "ABS" required by AR 25.70 and the San Diego Municipal Code had not been

20  obtained with respect to each of the aforementioned Purchase Requisitions.

21      63.    When Defendant Tracy Means made the REPRESENTATIONS described in

22  Paragraph 61 above she had no reasonable grounds for believing them to be true in that she knew

23  or should have known that the competitive selection process required by AR 25.70 had not been

24  conducted with respect to the selection of ABS and that the authorization for the hiring of "ABS"

25  required by AR 25.70 and San Diego Municipal Code sections 22.3223, 22.3212(e) and 22.3037

26  had not been obtained.

27      64.    Tracy Means made the REPRESENTATIONS described in Paragraph 61 above

28  with the conscious intent to deceive, vex, annoy or harm the CITY in its business and in order to

18

1  induce CITY to act in reliance on these REPRESENTATIONS by issuing multiple purchase

2  order contracts for consultant services to "ABS" in the manner herein alleged, or with the

3  expectation that CITY would so act. True and complete copies of the thirteen purchase order

4  contracts referred to herein are attached hereto as Exhibits "A" through "M" and are incorporated

5  by reference herein. To the extent that the REPRESENTATIONS by Tracy Means described

6  above were not intentional, they were negligent.

7       65.    At the time the REPRESENTATIONS described in Paragraph 61 above were

8  made by Tracy Means, and at the time CITY took the actions herein alleged, CITY was ignorant

9  of the falsity of Tracy Means' REPRESENTATIONS and believed them to be true. In reliance

10  on said REPRESENTATIONS, CITY was induced to and did, in fact, issue thirteen purchase

11  order contracts for consultant services to "ABS". Had CITY known the actual facts it would not

12  have taken such actions. CITY'S reliance on the REPRESENTATIONS by Tracy Means was

13  justified as Tracy Means had "approved" and directed the issuance of the Purchase Requisitions

14  which on their face reflected Tracy Means' "approval" certifying that the required competitive

15  selection process had been conducted and that the required hiring authorization had been

16  obtained.

17       66.    As a proximate result of the misrepresentations by Tracy Means as alleged in

18  Paragraph 61 above, CITY issued a series of thirteen purchase order contracts to "ABS" which

19  resulted in the payment to "ABS" of approximately $216,026.84, by reason of which CITY has

20  been damaged in a sum to be proven at trial. As a proximate result of the fraudulent conduct of,

21  and misrepresentations by, Tracy Means, as herein alleged, CITY issued a series of thirteen

22  purchase order contracts reflecting the hiring of "ABS" to perform consultant services for CITY

23  without the proper authorization and without the required competitive selection process, by

24  reason of which CITY has been damaged in a sum to be proven at trial.

25       67.    CITY'S reliance on the REPRESENTATIONS of Tracy Means described in

26  Paragraph 61 above was reasonable and was a substantial factor in causing harm to CITY.

27  / / /

28  / / /

## THIRD COUNT
### RESCISSION
#### (California Civil Code sections 1689(b)(5) and 1689(b)(6))
#### (Brought by the CITY against Defendants "ABS", "Thompson Consulting", Michael Hodges, and Roberta Thompson and DOES 1-20)

68.    CITY refers to and incorporates herein by this reference, as though set forth in full, each and every allegation contained in paragraphs 1 through 67 hereinabove.

69.    Commencing on or about September 8, 2000, and ending on or about June 21, 2005, defendant Tracy Means in her capacity as Deputy Director of the Airports Division of the Real Estate Assets Department of the City of San Diego awarded "ABS" a series of thirteen, related contracts for the study of the feasibility and marketability of developing CITY' two municipal airports, Montgomery Field and Brown Field which primarily consisted of Business Plans with accompanying Leasing Policies of various types, Rates and Charges Policies, and Minimum Standards for each airport.

70.    The dates and amounts of the afore-referenced written contracts and the amounts actually paid by CITY to "ABS" pursuant to such contracts include the following:

| CONTRACT DATE | CONTRACT AMOUNT | PAYMENT AMOUNT |
| --- | --- | --- |
| 9/08/00 | $24,000 | $23,999.22 |
| 7/05/01 | $24,000 | $24,000.00 |
| 7/05/01 | $24,000 | $23,500.00 |
| 8/23/01 | $24,500 | $24,392.30 |
| 2/20/02 | $20,000 | $34,305.64 |
| 2/20/02 | $20,000 | $19,998.60 |
| 7/01/02 | $24,500 | $24,404.49 |
| 7/01/02 | $24,500 | $21,229.96 |
| 6/19/03 | $24,500 | $10,715.55 |
| 6/20/03 | $24,500 | $ 0 |
| 6/21/04 | $24,500 | $22,169.87 |
| 6/21/04 | $24,500 | $1,670.70 |
| 6/21/05 | $24,500 | $ 0 |

71.    Between September 2000 and June 2004, CITY, through the unauthorized and unlawful actions of Tracy Means, paid "ABS" a total of $216,026.84 pursuant to the afore-listed thirteen contracts.

72.    The thirteen contracts awarded by Tracy Means to "ABS" listed in Paragraph 70 above were *ultra vires*. At all times relevant hereto, Tracy Means did not have the authority to

1  award such contracts pursuant to City of San Diego Administrative Regulation Number 25.70

2  and San Diego Municipal Code sections 22.3223, 22.3212(e) and 22.3037. At all times relevant

3  hereto, CITY is informed and believes and thereon alleges that "ABS", Michael Hodges, Roberta

4  Thompson, "Thompson Consulting" and DOES 1 through 20, knew that Tracy Means did not

5  have the authority to award such contracts. At all times relevant hereto, Tracy Means willfully

6  exceeded the $25,000 per 12-month period limit set forth in Paragraph 26 above.

7      73.    Eleven of the thirteen contracts (as reflected in Exhibits "B" through "L"

8  inclusive") awarded by Tracy Means to "ABS" listed in Paragraph 70 above were deliberately

9  divided up by defendants so as to avoid the competitive bidding requirements of San Diego

10  Administrative Regulation Number 25.70.

11      74.    The thirteen contracts awarded by Tracy Means to "ABS" listed in Paragraph 70

12  above were made in disregard of the competitive process set forth in  San Diego Administrative

13  Regulation Number 25.70. Tracy Means neither solicited price quotations from any sources other

14  than "ABS" nor advertised the contracts. Ms. Means unilaterally awarded the subject contracts to

15  "ABS" without any competitive selection process in violation of law. Such contracts were

16  unlawful, void and unenforceable.

17      75.    The thirteen contracts awarded by Tracy Means to "ABS" listed in Paragraph 70

18  above were made in violation of the public policy behind the competitive bidding process set

19  forth in San Diego Administrative Regulation Number 25.70. Such policy is to protect the

20  taxpayers from fraud, corruption, and carelessness on the part of public officials, and the waste

21  and dissipation of public funds.

22      76.    The thirteen contracts awarded by Tracy Means to "ABS" listed in Paragraph 70

23  above were unlawful for causes that did not appear in their terms or conditions, and the parties

24  were not equally at fault.

25      77.    The thirteen contracts awarded by Tracy Means to "ABS" listed in Paragraph 70

26  above violated public policy and the public interest will be prejudiced by permitting the contracts

27  to stand.

28

FOURTH AMENDED COMPLAINT OF PLAINTIFF, CITY OF SAN DIEGO

78.   Commencing in September 2000 and continuing through April 2005, Tracy Means willfully approved, allowed and paid demands on the City of San Diego Treasury by "ABS". Tracy Means willfully authorized, allowed and approved numerous checks reflecting payments to "ABS" on behalf of CITY for services rendered pursuant to the unlawful contracts referenced in Paragraph 70 above. Such payments were not authorized by law as set forth in full in Paragraphs 72 through 77 above.

79.   "ABS", Michael Hodges, Roberta Thompson, and "Thompson Consulting" performed the work pursuant to eight contracts with CITY, Purchase Orders Numbers 5041151, 5041152, 5042709, 5045057, 5045058, 5051273, 5051275, and 5061091 (as reflected in Exhibits "B" through "I" inclusive) in a negligent, wrongful, improper, unspecified, and un-workmanlike manner such that the Business Plans and accompanying documents for CITY'S two airports produced were of no practical use to the City of San Diego. CITY further alleges that such work was performed in a manner below the applicable professional standards of care and contained flaws, misstatements and misinterpretations of Federal Aviation Administration Orders, Regulations, policies, procedures, compliance requirements, and federal law. The precise Federal Aviation Administration Orders, Regulations, policies, procedures, compliance requirements, and federal laws which the CITY claims that the ABS Defendants misstated and misinterpreted are set forth in detail in Paragraph 30 hereinabove which the CITY hereby specifically incorporates herein by reference. CITY is informed and believes that some of such work was not in fact performed or delivered.

80.   CITY intends that service of the summons and complaint in this action serve as notice of rescission of the thirteen contracts described above, and hereby demands that defendants "ABS", "Thompson Consulting", Michael Hodges, and Roberta Thompson, and each of them, and DOES 1 through 20 restore to CITY the consideration furnished by CITY as described herein, specifically the sum of $216,026.84.

81.   Pursuant to California Civil Code sections 1689(b) (5) and 1689(b) (6), CITY is entitled to rescission of the thirteen subject contracts described herein.

///

22

## FOURTH COUNT
## MONEY HAD AND RECEIVED
### (California Civil Code section 1692)
**(Brought by the CITY against Defendants "ABS", "Thompson Consulting", Michael Hodges, and Roberta Thompson and DOES 1-20)**

82.    CITY refers to and incorporates herein by this reference, as though set forth in full, each and every allegation contained in paragraphs 1 through 81 hereinabove.

83.    Between September 2000, and continuing through June 2005, at San Diego, California, defendants, "ABS", "Thompson Consulting", Michael Hodges, and Roberta Thompson and each of them, and DOES 1 through 20, became indebted to CITY in the sum of $216,026.84 for money had and received by such defendants, and each of them, and DOES 1 through 20, for the use and benefit of CITY.

84.    As set forth fully above, between approximately September 2000 and continuing through April 2005, defendant Tracy Means willfully approved, allowed and paid demands on the City of San Diego Treasury by "ABS" that were not authorized by law. Such demands for payment and payments thereon were for the services performed by "ABS" pursuant to the unlawful contracts referenced in Paragraph 70 above. Such payments were not authorized by law as set forth in full in Paragraphs 72 through 77 above.

85.    Neither the whole nor any part of this sum has been paid and there is now due, owing, and unpaid to CITY the sum of $216,026.84, with interest thereon at the legal rate from the date of receipt of such funds by defendants, "ABS", "Thompson Consulting", Michael Hodges, and Roberta Thompson.

86.    Pursuant to California Civil Code section 1692, CITY is entitled to the moneys had and received by defendants "ABS", "Thompson Consulting", Michael Hodges, and Roberta Thompson herein.

/ / /

/ / /

/ / /

/ / /

/ / /

# FIFTH COUNT
## VIOLATIONS OF THE UNFAIR COMPETITION ACT
(California Business and Professions Code section 17200 *et seq.*)
(Brought by the CITY and the STATE, acting by and through San Diego City Attorney Michael J. Aguirre, and the City of San Diego against all Defendants and DOES 1 - 20)

87.    Plaintiffs refer to and incorporate herein by this reference, as though set forth in full, each and every allegation contained in paragraphs 1 through 86 hereinabove.

88.    Commencing in or around September 2000, and continuing through June 2005, defendants, and each of them, and DOES 1 through 20, entered into thirteen, related purchase order contracts listed in Paragraph 70 above and in so doing engaged in conduct that injured competition and constituted unfair and unlawful business practices in violation California Business and Professions Code section 17200.

89.    The above-described unfair and unlawful conduct of defendants, and each of them, included, but was not limited to:

(a)    Entering into thirteen contracts in violation of the competitive bidding process set forth in San Diego Administrative Regulation Number 25.70;

(b)    Dividing up the work to be performed for CITY into smaller purchase orders so that no competitive bidding would be required;

(c)    Dividing up the work to be performed for CITY into small enough pieces so as to make the purchase order contract amounts come within the authority of a department director;

(d)    Contracting with CITY employee Tracy Means who was without authority to award the subject thirteen purchase order contracts listed in Paragraph 70 above; and

(e)    Mischaracterizing the initial purchase order contract of September 8, 2000 as a "sole source" contract in violation of San Diego Municipal Code sections 22.3037 and 22.3212(e) and San Diego Administrative Regulation Number 25.70 sections 9.1 through 9.4 in order to improperly circumvent the requisite competitive selection and bidding process.

90.    As a result of their unfair competition and unfair and unlawful business practices, "ABS", "Thompson Consulting", Michael Hodges and Roberta Thompson have acquired money

24

1  through multiple payments from CITY that were unlawfully authorized by Tracy Means.

2  Defendants should restore that money to the general public and the taxpayers of the City of San

3  Diego.

4      91.    As set forth fully above, between approximately September 2000 and continuing

5  through April 2005, defendant Tracy Means willfully approved, allowed and paid demands on

6  the City of San Diego Treasury by "ABS" that were not authorized by law. Such demands for

7  payment and payments thereon were for the services performed by "ABS" pursuant to the

8  unlawful contracts referenced in Paragraph 70 above. Such payments were not authorized by law

9  as set forth in full in Paragraphs 72 through 77 above. Pursuant to Section 108 of the San Diego

10  City Charter, Tracy Means is individually liable to CITY for the amounts of such demands.

11      92.    The afore-described conduct of defendants, and each of them, and DOES 1

12  through 20, has also harmed the general public and the taxpayers of CITY by reducing

13  competition for the subject contracts through the circumvention of the competitive bidding

14  process thereby causing waste and dissipation of public funds. Further, through the conduct of

15  defendants, and each of them, and DOES 1 through 20, members of the general public were

16  likely to be deceived.

17      93.    Pursuant to California Business and Professions Code section 17203, Plaintiffs

18  are entitled to restitutionary relief herein.

19      94.    Defendants, and each of them, and DOES 1 through 20, are subject to civil

20  penalties as provided in California Business and Professions Code section 17206 for each

21  violation of the Unfair Competition Act.

22
### SIXTH COUNT
### FALSE CLAIM PRESENTATION FOR PAYMENT
23  **(California Government Code Section 12650, et seq.)**
**(Brought by the CITY against all Defendants and DOES 1 - 20)**

24

25      95.    CITY refers to and incorporates herein by this reference, as though set forth in

26  full, each and every allegation contained in paragraphs 1 through 94 hereinabove.

27      96.    The amount in controversy regarding false claims as hereinafter alleged is in

28  excess of $500.

97.    CITY reiterates herein the facts contained in Paragraphs 26, 27, 28 and 29 above.

98.    During the course of their work pursuant to the thirteen unlawful contracts described in Paragraphs 70 through 77 above, the ABS DEFENDANTS, and each of them, and DOES 1 through 20, knowingly presented or caused to be presented claims in the form of invoices to Tracy Means, an officer and employee of the CITY at that time, for approval and for payment of money by the CITY that CITY is informed and believes were false. CITY is informed and believes and thereon alleges that the work for which the ABS DEFENDANTS invoiced CITY was performed pursuant to unlawful contracts, was not performed at all, was performed outside of the scope of the contracts, was not contracted for, was billed at hourly rates higher than those agreed upon, and/or was billed based upon inflated work hours.

99.    The ABS DEFENDANTS and DOES 1 through 20, knowingly presented or caused to be presented the false claims described in the preceding Paragraph to Tracy Means for payment or approval with actual knowledge that they were false, or in deliberate ignorance of the truth or falsity of the information, or with reckless disregard of the truth or falsity of the information.

100.    The false claims described in Paragraph 98 above were knowingly approved for payment by the CITY by Tracy Means on behalf of the CITY, and were knowingly presented or caused to be presented by Tracy Means to the CITY for payment with actual knowledge that they were false, or in deliberate ignorance of the truth or falsity of the information, or with reckless disregard of the truth or falsity of the information.

101.    The ABS Scopes of Work for the two BUSINESS PLANS (including the Scope of Work for an "Airport Document Review and Analysis for the City of San Diego's Montgomery Field and Brown Field Airports" which really was for ongoing work on the BUSINESS PLANS) specified that Michael Hodges would bill at the rate of $185.00 per hour and Roberta Thompson and Randy Bisgard would bill at the rate of $140.00 per hour. However, Roberta Thompson billed at the rate of $145.00 per hour for all of her work on both of the BUSINESS PLANS and ACCOMPANYING DOCUMENTS, except that on 3/01/04 she billed at the rate of $150.00 per hour. On 11/22/02, 7/24/02, 2/28/03, 5/23/03, 9/12/02, and 11/22/02

26

1   Michael Hodges billed at the rate of $195.00 per hour for his work on the BUSINESS PLANS.

2   On 3/01/04, Michael Hodges billed at the rate of $200.00 per hour for his work relating to the

3   Brown Field Business Plan. On 4/29/02 Randy Bisgard billed at the rate of $145.00 per hour for

4   work on the Brown Field Business Plan. These inflated hourly rates are contained in the

5   following "ABS" Invoices: No. SDM 1 dated 8/29/01; No. SDM 2 dated 10/05/01; No. SDM 3

6   dated 11/02/01; No. SDM 4 dated 12/10/01; No. SDM 5 dated 1/27/01; No. MYF 1 dated

7   8/29/01; No. MYF 2 dated 10/05/01; No. MYF 3 dated 11/02/01; No. MYF 4 dated 12/10/01;

8   No. MYF 5 dated 1/27/01; No. MYF/SDM 1 dated 8/29/01; No. MYF/SDM 2 dated 10/05/01;

9   No. MYF/SDM 3 dated 11/02/01; No. MYF/SDM 5 dated 1/27/02; No. SDM 2-1 dated 4/29/02;

10  No. SDM 2-2 dated 7/24/02; Invoice No. SDM 2-3 dated 11/22/02; No. MYF 2-1 dated 3/08/02;

11  No. MYF 2-2 dated 7/24/02; No. SDM 3-3 dated 2/28/03; No. SDM 5/03 dated 5/23/03; No.

12  MYF 2-3 dated 9/12/02; No. MYF 2-4 dated 11/22/02; and No. BF 03/01 dated 3/01/04.

13          102.   The "ABS" Invoices described in the preceding paragraph constituted false claims

14  under California Government Code sections 12650, et seq., in particular, but not limited to,

15  Government Code section 12651(a)(1). The ABS DEFENDANTS and DOES 1 through 20

16  knowingly presented or caused to be presented such Invoices to Tracy Means for payment or

17  approval, with actual knowledge that they were false, or in deliberate ignorance of the truth or

18  falsity of the information, or with reckless disregard of the truth or falsity of the information.

19  Tracy Means approved such invoices on behalf of the CITY for payment by the CITY and

20  knowingly presented or caused to be presented such Invoices to the CITY for payment with

21  actual knowledge that they were false, or in deliberate ignorance of the truth or falsity of the

22  information, or with reckless disregard of the truth or falsity of the information.

23          103.   The ABS DEFENDANTS performed work that was not contracted for and/or was

24  outside the scope of the contracts at issue herein as follows:

25          (a)    With respect to Purchase Order Contract Number 5032956, the work to be

26  performed by the ABS DEFENDANTS was: (1) a review and commentary of the Feasibility

27  Study prepared by Leigh Fisher Associates for BFAP on the aviation-related aspects of the

28

                                                27

1   SANDACC project; and (2) a review and commentary of the Feasibility Study prepared by

2   Keyser Marston for BFAP on the non-aviation-related aspects of the SANDACC project. In

3   addition to the foregoing, the ABS DEFENDANTS also performed a "Management Documents

4   Review and Analysis" and a "Montgomery Field Lease Review" which were outside the scope of

5   this contract and were not contracted for;

6

7           (b)     With respect to Purchase Order Contract Number 5042709, the ABS

8   DEFENDANTS actually performed ongoing work on the SDM and MYF Business Plans which

9   was outside the scope of this contract as it was part of the original contracts reflected in Purchase

10  Orders Numbers 5041151 and 5041152;

11          (c)     With respect to Purchase Order Contract Number 5045057 for "Consultant

12  Services for Business Development and Review at Brown Field Airport" the ABS

13  DEFENDANTS actually performed ongoing work on the Brown Field Business Plan which was

14  outside the scope of this contract as it was part of the original contract reflected in Purchase

15  Order Number 5041151;

16

17          (d)     With respect to Purchase Order Contract Number 5045058 for "Consultant

18  Services for Business Development and Review at Montgomery Field Airport" the ABS

19  DEFENDANTS actually performed ongoing work on the Montgomery Field Business Plan

20  which was outside the scope of this contract  as it was part of the original contract reflected in

21  Purchase Order Number 5041152;

22

23          (e)     With respect to Purchase Order Contract Number 5051273 for "Consultant

24  Services for Business Development and Review at Brown Field Airport for the Period 7/01/02

25  through 6/30/03" the ABS DEFENDANTS actually performed ongoing work on the Brown Field

26  Business Plan which was outside the scope of this contract as it was part of the original contract

27  reflected in Purchase Order Number 5041151;

28

(f)    With respect to Purchase Order Contract Number 5051275 for "Consultant Services for Business Development and Review at Montgomery Field Airport for the Period 7/01/02 through 6/30/03" the ABS DEFENDANTS actually performed ongoing work on the Montgomery Field Business Plan which was outside the scope of this contract as it was part of the original contract reflected in Purchase Order Number 5041152;

(g)    With respect to Purchase Order Contract Number 5061091 for "Consultant Services for Brown Field Airport Enhancement" the ABS DEFENDANTS actually performed work relating to the Business Plans for both airports which was outside the scope of this contract as it was part of the original contracts reflected in Purchase Orders Numbers 5041151 and 5041152. Roberta Thompson also traveled to San Diego for a "Meeting, Update Tour/Other Area Airports, RFP's Discussion" that was outside the scope of this contract as described; and

(h)    With respect to Purchase Order Contract Number 5071503 for "Consultant Services for Airport Enhancement at Brown Field Airport" the ABS DEFENDANTS, in addition to performing the authorized consulting work, performed appraisals which were outside the scope of this contract.

104.    The "ABS" Invoices for the work performed by the ABS DEFENDANTS described in the preceding Paragraph that was not contracted for and/or was performed outside the scope of the contracts, for which the ABS DEFENDANTS billed the CITY constituted false claims under California Government Code sections 12650, et seq., in particular, but not limited to, Government Code section 12651(a)(1). The ABS DEFENDANTS knowingly presented or caused to be presented to Tracy Means for payment or approval, Invoices for such work with actual knowledge that such claims for payment were false, or in deliberate ignorance of the truth or falsity of the information, or with reckless disregard of the truth or falsity of the information.

105.    Tracy Means approved the "ABS" Invoices for the work that was performed outside the scope of the contracts and/or was not contracted for as described in Paragraph 103 above, for payment by the CITY and knowingly presented or caused to be presented such

29

1  Invoices to the CITY for payment, with actual knowledge that they were false, or in deliberate

2  ignorance of the truth or falsity of the information, or with reckless disregard of the truth or

3  falsity of the information.

4      106.  The thirteen Purchase Order Contracts described in Paragraphs 70 through 77

5  above that Tracy Means: (1) authorized without the authority to do so as described in Paragraphs

6  26, 27, 71 and 72 above; and (2) awarded without the requisite competitive selection process as

7  described in Paragraphs 24, 28 and 74 above, constituted false claims under California

8  Government Code sections 12650, et seq., in particular, but not limited to, Government Code

9  section 12651(a)(1). Tracy Means authorized the issuance of such contracts by the CITY and

10  thereby knowingly presented or caused to be presented to the CITY false claims for payment.

11  Tracy Means presented or caused to be presented such false claims for payment to the CITY with

12  actual knowledge that they were false, or in deliberate ignorance of the truth or falsity of the

13  information, or with reckless disregard of the truth or falsity of the information.

14      107.  The "Sole Source" Memorandum described in Paragraphs 18, 34 through 36, and

15  51 through 53 above that Tracy Means wrote and signed without permission and without the

16  authority to do so, containing false information, constituted a false claim under California

17  Government Code sections 12650, et seq., in particular, but not limited to, Government Code

18  section 12651(a)(1). Via this "Sole Source" Memorandum, Tracy Means authorized the issuance

19  of a contract by the CITY to "ABS" and thereby knowingly presented or caused to be presented

20  to the CITY a false claim for payment. Tracy Means presented or caused to be presented such

21  false claim for payment to the CITY with actual knowledge that it was false, or in deliberate

22  ignorance of the truth or falsity of the information, or with reckless disregard of the truth or

23  falsity of the information.

24      108.  As a proximate and legal result of the actions of the ABS DEFENDANTS, and

25  each of them, Tracy Means and DOES 1 through 20, described above in Paragraphs 95 through

26  107, CITY was damaged in an amount that will be proven at trial. Further, the ABS

27  DEFENDANTS, and each of them, Tracy Means and DOES 1 through 20, are subject to treble

28  damages, costs of suit, and civil penalties for each false claim as provided in California

1  Government Code sections 12650, *et seq.*, and are jointly and severally liable for all damages

2  proven at trial and for such other relief as the Court deems proper.

3  

**SEVENTH COUNT**
**FALSE RECORD OR STATEMENT TO GET A FALSE CLAIM PAID OR APPROVED**

4  (California Government Code section 12650, *et seq.*)
(Brought by the CITY against all Defendants and DOES 1 - 20)

5

6     109.   CITY refers to and incorporates herein by this reference, as though set forth in

7  full, each and every allegation contained in paragraphs 1 through 108 hereinabove.

8     110.   The amount in controversy regarding false claims as hereinafter alleged is in

9  excess of $500.

10     111.   CITY reiterates herein the facts contained in Paragraphs 26, 27, 28 and 29 above.

11     112.   During the course of their work pursuant to the thirteen unlawful contracts

12  described above in Paragraphs 70 through 77 above, the ABS DEFENDANTS, and each of

13  them, and DOES 1 through 20, knowingly made, used or caused to be made or used false records

14  or statements to get false claims paid and/or approved by the CITY. The ABS DEFENDANTS

15  did this by submitting false claims in the form of invoices which constituted false records or

16  statements to Tracy Means for approval on behalf of the CITY and for the payment of money by

17  the CITY for work pursuant to the thirteen unlawful contracts that was not performed, was

18  performed outside of the scope of the contracts, was not contracted for, was billed at hourly rates

19  higher than those agreed upon, and/or was billed based upon inflated work hours.

20     113.   The false records or statements to get false claims paid and/or approved by the

21  CITY described in Paragraph 112 above were knowingly made, used or caused to be made or

22  used by the ABS DEFENDANTS and each of them, and DOES 1 through 20, with actual

23  knowledge that they were false, or in deliberate ignorance of the truth or falsity of the

24  information, or with reckless disregard of the truth or falsity of the information.

25     114.   The false records or statements to get false claims paid and/or approved by the

26  CITY described in Paragraph 112 above were knowingly used or caused to be used by Tracy

27  Means to get false claims paid by the CITY with actual knowledge that they were false, or in

28

31

1  deliberate ignorance of the truth or falsity of the information, or with reckless disregard of the

2  truth or falsity of the information.

3    115.    The ABS Scopes of Work for the two BUSINESS PLANS (including the Scope

4  of Work for an "Airport Document Review and Analysis for the City of San Diego's

5  Montgomery Field and Brown Field Airports" which really was for ongoing work on the

6  BUSINESS PLANS) specified that Michael Hodges would bill at the rate of $185.00 per hour

7  and Roberta Thompson and Randy Bisgard would bill at the rate of $140.00 per hour. However,

8  Roberta Thompson billed at the rate of $145.00 per hour for all of her work on both of the

9  BUSINESS PLANS and ACCOMPANYING DOCUMENTS, except that on 3/01/04 she billed

10  at the rate of $150.00 per hour. On 11/22/02, 7/24/02, 2/28/03, 5/23/03, 9/12/02, and 11/22/02

11  Michael Hodges billed at the rate of $195.00 per hour for his work on the BUSINESS PLANS.

12  On 3/01/04, Michael Hodges billed at the rate of $200.00 per hour for his work relating to the

13  Brown Field Business Plan. On 4/29/02 Randy Bisgard billed at the rate of $145.00 per hour for

14  work on the Brown Field Business Plan. These inflated hourly rates are contained in the

15  following "ABS" Invoices:  No. SDM 1 dated 8/29/01; No. SDM 2 dated 10/05/01; No. SDM 3

16  dated 11/02/01; No. SDM 4 dated 12/10/01; No. SDM 5 dated 1/27/01; No. MYF 1 dated

17  8/29/01; No. MYF 2 dated 10/05/01; No. MYF 3 dated 11/02/01; No. MYF 4 dated 12/10/01;

18  No. MYF 5 dated 1/27/01; No. MYF/SDM 1 dated 8/29/01; No. MYF/SDM 2 dated 10/05/01;

19  No. MYF/SDM 3 dated 11/02/01; No. MYF/SDM 5 dated 1/27/02; No. SDM 2-1 dated 4/29/02;

20  No. SDM 2-2 dated 7/24/02; Invoice No. SDM 2-3 dated 11/22/02; No. MYF 2-1 dated 3/08/02;

21  No. MYF 2-2 dated 7/24/02; No. SDM 3-3 dated 2/28/03; No. SDM 5/03 dated 5/23/03; No.

22  MYF 2-3 dated 9/12/02; No. MYF 2-4 dated 11/22/02; and No. BF 03/01 dated 3/01/04.

23    116.    The "ABS" Invoices described in the preceding Paragraph constituted false

24  records or statements to get false claims paid and/or approved by the CITY under California

25  Government Code sections 12650, et seq., in particular, but not limited to, Government Code

32

1   section 12651(a)(2). Tracy Means knowingly used or caused to be used such false records or

2   statements to get the ABS DEFENDANTS' false claims paid by the CITY with actual

3   knowledge that they were false, or in deliberate ignorance of the truth or falsity of the

4   information, or with reckless disregard of the truth or falsity of the information. The ABS

5   DEFENDANTS knowingly made, used or caused to be made or used such false records or

6   statements to get their false claims paid and/or approved by the CITY with actual knowledge that

7   they were false, or in deliberate ignorance of the truth or falsity of the information, or with

8   reckless disregard of the truth or falsity of the information.

9       117.    The ABS DEFENDANTS performed work that was not contracted for and/or was

10  outside the scope of the contracts at issue herein as follows:

11      (a)     With respect to Purchase Order Contract Number 5032956, the work to be

12  performed by the ABS DEFENDANTS was: (1) a review and commentary of the Feasibility

13  Study prepared by Leigh Fisher Associates for BFAP on the aviation-related aspects of the

14  SANDACC project; and (2) a review and commentary of the Feasibility Study prepared by

15  Keyser Marston for BFAP on the non-aviation-related aspects of the SANDACC project. In

16  addition to the foregoing, the ABS DEFENDANTS also performed a "Management Documents

17  Review and Analysis" and a "Montgomery Field Lease Review" which were outside the scope of

18  this contract;

19

20      (b)     With respect to Purchase Order Contract Number 5042709, the ABS

21  DEFENDANTS actually performed ongoing work on the SDM and MYF Business Plans which

22  was outside the scope of this contract as it was part of the original contracts reflected in Purchase

23  Orders Numbers 5041151 and 5041152;

24

25      (c)     With respect to Purchase Order Contract Number 5045057 for "Consultant

26  Services for Business Development and Review at Brown Field Airport" the ABS

27  DEFENDANTS actually performed ongoing work on the Brown Field Business Plan which was

28

33

1  outside the scope of this contract as it was part of the original contract reflected in Purchase

2  Order Number 5041151;

3      (d)    With respect to Purchase Order Contract Number 5045058 for "Consultant

4
   Services for Business Development and Review at Montgomery Field Airport" the ABS
5
   DEFENDANTS actually performed ongoing work on the Montgomery Field Business Plan
6
7  which was outside the scope of this contract as it was part of the original contract reflected in

8  Purchase Order Number 5041152;

9      (e)    With respect to Purchase Order Contract Number 5051273 for "Consultant

10
   Services for Business Development and Review at Brown Field Airport for the Period 7/01/02
11
   through 6/30/03" the ABS DEFENDANTS actually performed ongoing work on the Brown Field
12
   Business Plan which was outside the scope of this contract as it was part of the original contract
13
14  reflected in Purchase Order Number 5041151;

15     (f)    With respect to Purchase Order Contract Number 5051275 for "Consultant

16  Services for Business Development and Review at Montgomery Field Airport for the Period

17  7/01/02 through 6/30/03" the ABS DEFENDANTS actually performed ongoing work on the

18  Montgomery Field Business Plan which was outside the scope of this contract as it was part of
19
   the original contract reflected in Purchase Order Number 5041152;
20
21     (g)    With respect to Purchase Order Contract Number 5061091 for "Consultant

22  Services for Brown Field Airport Enhancement" the ABS DEFENDANTS actually performed

23  work relating to the Business Plans for both airports which was outside the scope of this contract

24  as it was part of the original contracts reflected in Purchase Orders Numbers 5041151 and

25  5041152. Roberta Thompson also traveled to San Diego for a "Meeting, Update Tour/Other Area

26  Airports, RFP's Discussion" that was outside the scope of this contract as described; and

27

28

34

(h)    With respect to Purchase Order Contract Number 5071503 for "Consultant Services for Airport Enhancement at Brown Field Airport" the ABS DEFENDANTS, in addition to performing the authorized consulting work, performed appraisals which were outside the scope of this contract.

118.    The "ABS" Invoices for the work performed by the ABS DEFENDANTS described in the preceding Paragraph that was not contracted for and/or was performed outside the scope of the contracts constituted false records or statements that the ABS DEFENDANTS made, used or caused to be made or used to get false claims paid and/or approved by the CITY pursuant to California Government Code sections 12650, et seq., in particular, but not limited to, Government Code section 12651(a)(2). The ABS DEFENDANTS knowingly made, used or caused to be made or used such false records or statements to get their false claims paid and/or approved by the CITY with actual knowledge that they were false, or in deliberate ignorance of the truth or falsity of the information, or with reckless disregard of the truth or falsity of the information.

119.    Tracy Means knowingly used or caused to be used the false records or statements described in Paragraph 117 above to get the ABS DEFENDANTS' false claims paid and/or approved by the CITY with actual knowledge that they were false, or in deliberate ignorance of the truth or falsity of the information, or with reckless disregard of the truth or falsity of the information.

120.    The thirteen Purchase Order Contracts described in Paragraphs 70 through 77 above that Tracy Means: (1) authorized without the authority to do so as described in Paragraphs 26, 27, 71 and 72 above; and (2) awarded without the requisite competitive selection process as described in Paragraphs 24, 28 and 74 above, constituted false records or statements to get false claims paid and/or approved by the CITY under California Government Code sections 12650, et seq., in particular, but not limited to, Government Code section 12651(a)(2). Tracy Means authorized the issuance of such contracts by the CITY and thereby knowingly used or caused to be used false records or statements to get the ABS DEFENDANTS' false claims paid by the

35

1  CITY. Tracy Means used or caused to be used such false records or statements to get the ABS

2  DEFENDANTS' false claims paid by the CITY with actual knowledge that they were false, or in

3  deliberate ignorance of the truth or falsity of the information, or with reckless disregard of the

4  truth or falsity of the information.

5       121.  The "Sole Source" Memorandum described in Paragraphs 18, 34 through 36, and

6  51 through 53 above that Tracy Means wrote and signed without permission and without the

7  authority to do so, containing false information, constituted a false record or statement to get the

8  ABS DEFENDANTS' false claims paid or approved by the CITY under California Government

9  Code sections 12650, et seq., in particular, but not limited to, Government Code section

10  12651(a)(2). Via this "Sole Source" Memorandum, Tracy Means authorized the issuance of a

11  purchase order contract by the CITY to "ABS" and thereby knowingly made, used or caused to

12  be made or used a false record or statement to get the ABS DEFENDANTS' false claims paid by

13  the CITY. Tracy Means made, used or caused to be made or used such false record or statement

14  to get the ABS DEFENDANTS' false claims paid by the CITY with actual knowledge that they

15  were false, or in deliberate ignorance of the truth or falsity of the information, or with reckless

16  disregard of the truth or falsity of the information.

17       122.  As a proximate and legal result of the actions of the ABS DEFENDANTS, and

18  each of them, *Tracy Means* and DOES 1 through 20, *as described in Paragraphs 109 through*

19  *121 above*, the CITY was damaged in an amount that will be proven at trial. Further, the ABS

20  DEFENDANTS, and each of them, *Tracy Means* and DOES 1 through 20, are subject to treble

21  damages, costs of suit, and civil penalties for each false claim as provided in California

22  Government Code sections 12650, *et seq.*, and are jointly and severally liable for all damages

23  proven at trial and for such other relief as the Court deems proper.

24                           **EIGHTH COUNT**
    **CONSPIRACY TO DEFRAUD A PUBLIC ENTITY BY FALSE CLAIMS**

25               **(California Government Code section 12650, *et seq.*)**

26       **(Brought by the CITY against All Defendants and DOES 1 - 20)**

27       123.  CITY refers to and incorporates herein by this reference, as though set forth in

28  full, each and every allegation contained in paragraphs 1 through 122 hereinabove.

FOURTH AMENDED COMPLAINT OF PLAINTIFF, CITY OF SAN DIEGO

124.    Defendants, and each of them, and DOES 1 through 20, conspired to prepare and/or to present the false claims to CITY as alleged herein.

125.    Defendants, and each of them, and DOES 1 through 20, conspired to prepare and/or to present the false claims in order to defraud CITY by getting the false claims allowed and/or paid by CITY.

126.    In furtherance of the conspiracy or conspiracies, defendants, and each of them, and DOES 1 through 20, submitted, presented, prepared, caused to be made, and/or caused to be presented the false claims to CITY, or in other ways attempted to have the false claims allowed and/or paid by CITY.

127.    The conspiracy or conspiracies to defraud CITY by defendants, and each of them, and DOES 1 through 20, constitute a false claim under California Government Code sections 12650, *et seq.*, including, but not limited to, section 12651(a)(3).

128.    As a proximate and legal result of the actions of defendants, and each of them, and DOES 1 through 20, with respect to the conspiracy or conspiracies, CITY was damaged in an amount that will be proven at trial. Defendants, and each of them, and DOES 1 through 20, are subject to treble damages, costs of suit, and civil penalties as provided in California Government Code sections 12650, *et seq.*, and are jointly and severally liable for all damages proven at trial and for such other relief as the Court deems proper.

## NINTH COUNT
## BREACH OF CONTRACT
**(Brought by the CITY against Defendants, "ABS", "Thompson Consulting", Michael Hodges, Roberta Thompson)**

129.    CITY refers to and incorporates herein by this reference, as though set forth in full, each and every allegation contained in paragraphs 1 through 128 hereinabove.

130.    The ABS DEFENDANTS entered into eight contracts with CITY, Purchase Orders Numbers 5041151, 5041152, 5042709, 5045057, 5045058, 5051273, 5051275, and 5061091 (as reflected in Exhibits "B" through "I" inclusive), hereinafter collectively referred to as THE CONTRACTS, to provide the consultant services to CITY complained of herein.

37

131.    CITY fulfilled its obligations under THE CONTRACTS by paying all of the Invoices submitted by the ABS DEFENDANTS for the consultant services performed pursuant to THE CONTRACTS.

132.    All conditions, if any, required for the ABS DEFENDANTS' performance occurred.

133.    Pursuant to THE CONTRACTS, the ABS DEFENDANTS prepared Business Plans with accompanying Rates and Charges Policies, Minimum Standards for Commercial Aeronautical Activities, Leasing Policies for Commercial Aeronautical Activities, Leasing Policies for Non-Aeronautical Commercial Property, and Leasing Policies for Non-Commercial Aeronautical Property, for CITY'S two municipal airports, Brown Field and Montgomery Field.

134.    Expressly or impliedly, or both, THE CONTRACTS required the ABS DEFENDANTS to comply with the applicable professional standards of care in the performance of their work.

135.    THE CONTRACTS impliedly required the ABS DEFENDANTS to provide work product that was not flawed, and that did not contain misstatements and misinterpretations of Federal Aviation Administration Orders, Regulations, policies, procedures, compliance requirements, and federal law.

136.    The ABS DEFENDANTS materially breached THE CONTRACTS by providing the CITY with work product pursuant to such contracts that was performed below the applicable professional standards of care and contained flaws, misstatements and misinterpretations of Federal Aviation Administration Orders, Regulations, policies, procedures, compliance requirements, and federal law.

137.    The material breaches of THE CONTRACTS by the ABS DEFENDANTS alleged herein directly and proximately caused damage and injury to CITY in an amount that will be proven at trial.

/ / /

/ / /

/ / /

1

## TENTH COUNT
### PROFESSIONAL NEGLIGENCE
**(Brought by the CITY against Defendants, "ABS", "Thompson Consulting", Michael Hodges, and Roberta Thompson)**

2

3

138.    CITY refers to and incorporates herein by this reference, as though set forth in

4

5

full, each and every allegation contained in paragraphs 1 through 137 hereinabove.

6

139.    At all times relevant hereto, the ABS DEFENDANTS owed CITY a duty of care

7

and skill in performing professional services for CITY. The ABS DEFENDANTS had an

8

obligation to comply with the applicable standards of care while performing the professional

9

services for CITY pursuant to the eight contracts referred to in Paragraphs 30, 78 and 130 herein-

10

above. Such services included the Business Plans and accompanying Rates and Charges Policies,

11

Minimum Standards for Commercial Aeronautical Activities, Leasing Policies for Commercial

12

Aeronautical Activities, Leasing Policies for Non-Aeronautical Commercial Property, and

13

Leasing Policies for Non-Commercial Aeronautical Property, for CITY'S two municipal

14

airports, Brown Field and Montgomery Field.

15

140.    The ABS DEFENDANTS breached their duty to exercise reasonable care and

16

skill in accordance with the applicable professional standards of care in performing the

17

consultant services pursuant to the eight contracts with CITY as set forth above in Paragraphs 30,

18

78, and 130 above.

19

141.    As a proximate and legal result of the professional negligence of the ABS

20

DEFENDANTS, CITY has been damaged.

21

142.    CITY suffered actual losses and damages proximately and legally caused by the

22

professional negligence of the ABS DEFENDANTS in an amount to be proven at trial.

23

## ELEVENTH COUNT
### FRAUDULENT CONCEALMENT OF MATERIAL FACTS
**(California Civil Code section 1710(3))**

24

**(Brought by the CITY against Defendant Tracy Means)**

25

143.    CITY refers to and incorporates herein by this reference, as though set forth in

26

full, each and every allegation contained in paragraphs 1 through 142 hereinabove.

27

28

39

144.    At all times relevant hereto, Deputy Airports Director, Tracy Means, an "Accredited Airport Executive" was aware of the material facts that the Business Plans and accompanying Rates and Charges Policies, Minimum Standards for Commercial Aeronautical Activities, Leasing Policies for Commercial Aeronautical Activities, Leasing Policies for Non-Aeronautical Commercial Property, and Leasing Policies for Non-Commercial Aeronautical Property, prepared by the ABS DEFENDANTS for CITY'S two municipal airports, Brown Field and Montgomery Field, were neglectfully performed, containing flaws, misstatements and misinterpretations of Federal Aviation Administration Orders, Regulations, policies, procedures, compliance requirements, and federal law. Such Federal Aviation Administration [FAA] Orders, Regulations, policies, procedures, compliance requirements, and federal laws of which CITY is presently aware include: FAA Advisory Circular 150/5190-5, Change 1, *Exclusive Rights and Minimum Standards for Commercial Aeronautical Activities*, Section 2-2c, dated June 10, 2002; FAA Order 5190.6A, *Airport Compliance Requirements*, dated October 2, 1989 which describes the responsibilities under FAA Airport Sponsors Assurance 5, *Preserving Rights and Powers*, which implements the provisions of 49 U.S.C. section 47108(a); FAA Sponsors Assurance 22(a) and 22(f), *Economic Nondiscrimination*, (FAA Sponsors Assurance 22 implements the provisions of 49 U.S.C. sections 47107(a)(1), (2), (3), (5) and (6) and 49 U.S.C. 47107(a)(13)); FAA Order 5190.6A, Appendix 5, *Definitions*; 49 U.S.C. section 47107(a)(6) and FAA Airport Sponsor's Assurance 22(f); FAA Order 5190.6A, Section 4-14.d.(2); FAA Order 5190.1; FAA Advisory Circular 150/5190-5; FAA Order 5190.6A, Section 4, *Availability on Fair and Reasonable Terms*, Subsections 4-14.d(2)(a) through (f); FAA Order 5190.6A, Subsection 6-6; FAA Airport Sponsors Assurance 23, *Exclusive Rights*, which implements the provisions of 49 U.S.C. sections 40103(e) and 47107(a)(4); FAA Airport Sponsors Assurance 24, *Fee and Rental Structure*, which implements the provisions of 49 U.S.C. section 47107(a)(13); FAA Airport

40

1  Sponsors Assurance 25, *Airport Revenues*, which implements the provisions of 49 U.S.C. section

2  47133; FAA Airport Sponsors Assurance 27, *Use by Government Aircraft*, which implements the

3  provisions of 49 U.S.C. section 47107(a)(11); Sponsors Assurance 28, *Land for Federal*

4  *Facilities*, which implements the provisions of 49 U.S.C. section 47107(a)(12); 14 C.F.R. Part 77

5  and Part 105;  FAA Order 5190.6A, *Airport Compliance Requirements*, dated October 2, 1989,

6  sections 3-8.b, 3-9.a, 3-9.b, 3-9(d)(2),3-9(d)(3), 3-9(e)(1), and  3-9(e)(3). Plaintiffs are informed

7  and believe that some of such work was not in fact performed or delivered.

8

9      145.    CITY was unaware and could not have discovered, prior to paying "ABS" for its

10  services, that the Business Plans and accompanying Rates and Charges Policies, Minimum

11  Standards for Commercial Aeronautical Activities, Leasing Policies for Commercial

12  Aeronautical Activities, Leasing Policies for Non-Aeronautical Commercial Property, and

13  Leasing Policies for Non-Commercial Aeronautical Property, prepared by the ABS

14  DEFENDANTS for CITY'S two municipal airports, Brown Field and Montgomery Field,

15  (hereinafter collectively referred to as THE BUSINESS PLANS AND ACCOMPANYING

16  DOCUMENTS), were neglectfully performed, containing flaws, misstatements and

17  misinterpretations of Federal Aviation Administration Orders, Regulations, policies, procedures,

18  compliance requirements, and federal law. Had CITY been aware of such concealed facts, CITY

19  would not have paid "ABS" for its services in preparing THE BUSINESS PLANS AND

20  ACCOMPANYING DOCUMENTS.

21      146.    CITY first learned the extent of the ABS DEFENDANTS' negligence in

22  preparing THE BUSINESS PLANS AND ACCOMPANYING DOCUMENTS and that such

23  documents contained flaws, misstatements and misinterpretations of Federal Aviation

24  Administration Orders, Regulations, policies, procedures, compliance requirements, and federal

25  law, within the last thirty-days following a thorough and detailed review and analysis of such

26  documents by CITY'S consulting experts, one of whom is a former Federal Aviation

27  Administration employee.

28

147.   Tracy Means intentionally deceived, vexed, annoyed or harmed the CITY in its business by actively concealing from CITY that THE BUSINESS PLANS AND ACCOMPANYING DOCUMENTS were neglectfully performed, containing flaws, misstatements and misinterpretations of Federal Aviation Administration Orders, Regulations, policies, procedures, compliance requirements, and federal law.

148.   Tracy Means had a duty to disclose to CITY that that THE BUSINESS PLANS AND ACCOMPANYING DOCUMENTS were neglectfully performed, containing flaws, misstatements and misinterpretations of Federal Aviation Administration Orders, Regulations, policies, procedures, compliance requirements, and federal law.

149.   CITY reasonably relied on Tracy Means' deception as described in Paragraph 147 herein-above.

150.   As a proximate and legal result of the fraudulent concealment of material facts by Tracy Means as described above, CITY has been damaged.

151.   CITY suffered actual losses and damages proximately and legally caused by the fraudulent concealment of material facts by Tracy Means in an amount to be proven at trial which at a minimum amounts to approximately $168,000.00.

152.   The aforementioned conduct on the part of Defendant Tracy Means was an intentional concealment of material facts known to Tracy Means with an intention on the part of Tracy Means of thereby depriving CITY of legal rights or property, or to otherwise cause injury to CITY, and was despicable conduct that subjected CITY to a cruel and unjust hardship in conscious disregard of CITY'S rights, so as to justify an award of exemplary and punitive damages against Tracy Means.

## TWELFTH COUNT
### STATUTORY LIABILITY UNDER SAN DIEGO CITY CHARTER SECTION 108
**(Brought by the CITY against Defendant Tracy Means)**

153.   CITY refers to and incorporates herein by this reference, as though set forth in full, each and every allegation contained in paragraphs 1 through 152 hereinabove.

154.   Commencing on or about September 8, 2000, and ending on or about June 21, 2005, defendant Tracy Means, in her capacity as Deputy Director of the Airports Division of the

42

Real Estate Assets Department of the City of San Diego, awarded "ABS" a series of thirteen contracts. These contracts were for consulting services regarding the development of CITY'S two municipal airports, Montgomery Field and Brown Field. These services primarily consisted of the preparation of two BUSINESS PLANS and the ACCOMPANYING DOCUMENTS.

155.    The dates and amounts of the afore-referenced written contracts and the amounts actually paid by the CITY to "ABS" pursuant to such contracts include the following:

| CONTRACT DATE | CONTRACT AMOUNT | PAYMENT AMOUNT |
|---|---|---|
| 9/08/00 | $24,000 | $23,999.22 |
| 7/05/01 | $24,000 | $24,000.00 |
| 7/05/01 | $24,000 | $23,500.00 |
| 8/23/01 | $24,500 | $24,392.30 |
| 2/20/02 | $20,000 | $34,305.64 |
| 2/20/02 | $20,000 | $19,998.60 |
| 7/01/02 | $24,500 | $24,404.49 |
| 7/01/02 | $24,500 | $21,229.96 |
| 6/19/03 | $24,500 | $10,715.55 |
| 6/20/03 | $24,500 | $ 0 |
| 6/21/04 | $24,500 | $22,169.87 |
| 6/21/04 | $24,500 | $1,670.70 |
| 6/21/05 | $24,500 | 0 |

156.    Between September 2000 and June 2004, CITY, through the unauthorized and unlawful actions of Tracy Means, paid "ABS" a total of $216,026.84 pursuant to the afore-listed thirteen contracts.

157.    The thirteen contracts awarded by Tracy Means to "ABS" listed in Paragraph 155 above were void, because Means failed to comply with the legally-mandated procedure for letting consulting contracts. At all times relevant hereto, Tracy Means did not have the authority to award such contracts pursuant to City of San Diego Administrative Regulation Number 25.70 and San Diego Municipal Code sections 22.3223, 22.3212(e) and 22.3037. At all times relevant hereto, Tracy Means willfully exceeded the $25,000 per 12-month period limit set forth in Paragraph 26 above.

158.    Eleven of the thirteen contracts (as reflected in Exhibits "B" through "L" hereto inclusive) awarded by Tracy Means to "ABS" listed in Paragraph 155 above were deliberately

1  divided up by defendants so as to avoid the competitive bidding requirements of San Diego

2  Administrative Regulation Number 25.70.

3      159.   The thirteen contracts awarded by Tracy Means to "ABS" listed in Paragraph 155

4  above were made in disregard of the competitive process set forth in San Diego Administrative

5  Regulation Number 25.70. Tracy Means neither solicited price quotations from any sources other

6  than "ABS" nor advertised the contracts. Tracy Means unilaterally awarded the subject contracts

7  to "ABS" without any competitive selection process in violation of law. Such contracts were

8  unlawful, void and unenforceable.

9      160.   The thirteen contracts awarded by Tracy Means to "ABS" listed in Paragraph 155

10  above were made in violation of the public policy behind the competitive bidding process set

11  forth in San Diego Administrative Regulation Number 25.70. Such policy is to protect the

12  taxpayers from fraud, corruption, and carelessness on the part of public officials, and the waste

13  and dissipation of public funds.

14      161.   Section 108 of the San Diego City Charter provides that "[e]very officer who

15  shall wilfully [sic] approve, allow, or pay any demand on the treasury not authorized by law,

16  shall be liable to the City individually and on his official bond, for the amount of the demand so

17  approved, allowed or paid, and shall forfeit such office and be forever debarred and disqualified

18  from holding any position in the service of the City."

19      162.   Commencing in September 2000 and continuing through April 2005, Tracy

20  Means willfully approved and allowed the payment by the CITY of all of the Invoices submitted

21  to her by "ABS" pursuant to the thirteen purchase order contracts set forth above in Paragraph

22  155. Such Invoices constitute demands on the CITY treasury within the meaning of San Diego

23  City Charter Section 108. Tracy Means willfully authorized, allowed and approved numerous

24  checks reflecting payments to "ABS" on behalf of CITY for services rendered pursuant to the

25  unlawful contracts referenced in Paragraph 155 above. Such payments were not authorized by

26  law as set forth in full in Paragraphs 157 through 160 above.

27      163.   Tracy Means willfully approved for payment by the CITY all of the Invoices

28  submitted by "ABS" pursuant to the thirteen contracts listed in Paragraph 155 above which were

1  not authorized by law. Pursuant to Section 108 of the San Diego City Charter, Tracy Means is

2  individually liable to CITY for the amounts of the "ABS" Invoices that she approved for

3  payment by the CITY which amount to $216,026.84.

4        **WHEREFORE**, the City of San Diego prays for judgment as follows:

5  On the **FIRST COUNT**:

6        1.    For actual money damages in an amount to be proven at trial for losses or damage

7  suffered by CITY resulting from the fraudulent acts of Defendant, Tracy Means;

8        2.    For pre-judgment interest on any awards of damages at the highest legal rate from

9  date of loss pursuant to Civil Code section 3287;

10       3.    For punitive damages pursuant to California Civil Code section 3294(a) in an

11 amount appropriate to punish defendant Tracy Means and deter defendant and others from

12 engaging in similar misconduct.

13 On the **SECOND COUNT**:

14       4.    For actual money damages in an amount to be proven at trial for losses or damage

15 suffered by CITY resulting from the negligent misrepresentations of Defendant, Tracy Means;

16       5.    For pre-judgment interest on any awards of damages at the highest legal rate from

17 date of loss pursuant to Civil Code § 3287.

18 On the **THIRD COUNT**:

19       6.    That this Court declare that each of the thirteen purchase order contracts described

20 herein are illegal, improperly awarded and are therefore unlawful pursuant to the San Diego

21 Municipal Code and the San Diego Administrative Regulations set forth above;

22       7.    That each of the thirteen purchase order contracts described herein be declared

23 rescinded; and

24       8.    That defendants, Airport Business Solutions, Inc., ABS Aviation Consultancy,

25 Inc. d/b/a Airport Business Solutions, Michael Hodges, Roberta Thompson, Thompson Aviation

26 Consulting, Inc. and DOES 1 through 20, be ordered to repay the City of San Diego the funds

27 illegally obtained in the sum of $216,026.84, with interest thereon at the legal rate of 10% per

28 annum commencing from the date of defendants' receipt of such funds.

FOURTH AMENDED COMPLAINT OF PLAINTIFF, CITY OF SAN DIEGO

1  On the **FOURTH COUNT**:

2      9.      For repayment to the City of San Diego by defendants, Airport Business

3  Solutions, Inc., ABS Aviation Consultancy, Inc. d/b/a Airport Business Solutions, Michael

4  Hodges, Roberta Thompson, Thompson Aviation Consulting, Inc. and DOES 1 through 20, of

5  the funds illegally obtained in the sum of $216,026.84, with interest thereon at the legal rate of

6  10% per annum commencing from the date of defendants' receipt of such funds.

7  On the **FIFTH COUNT**:

8      10.      For restitution to the City of San Diego of all sums unlawfully obtained by means

9  of unfair competition and business practices by defendants Tracy Means, Airport Business

10  Solutions, Inc., ABS Aviation Consultancy, Inc. d/b/a Airport Business Solutions, Michael

11  Hodges, Roberta Thompson, Thompson Aviation Consulting, Inc. and DOES 1 through 20, in

12  the sum of $216,026.84, with interest thereon at the legal rate of 10% per annum commencing

13  from the date of defendants' receipt of such funds; and

14      11.      For civil penalties, in accordance with California Business and Professions Code

15  section 17206, to be awarded against defendants Tracy Means, Airport Business Solutions, Inc.,

16  ABS Aviation Consultancy, Inc. d/b/a Airport Business Solutions, Michael Hodges, Roberta

17  Thompson, Thompson Aviation Consulting, Inc. and DOES 1 through 20, in an amount up to

18  $2,500 for each act constituting unfair competition or an unfair or unlawful business practice.

19  On the **SIXTH** and **SEVENTH COUNTS**:

20      12.      For damages to be awarded against defendants Tracy Means, Airport Business

21  Solutions, Inc., ABS Aviation Consultancy, Inc. d/b/a Airport Business Solutions, Michael

22  Hodges, Roberta Thompson, Thompson Aviation Consulting, Inc. and DOES 1 through 20, in an

23  amount according to proof, and in accordance with California Government Code sections

24  12650, *et seq.*;

25      13.      For treble damages in accordance with California Government Code section

26  12651, to be awarded against defendants Tracy Means, Airport Business Solutions, Inc., ABS

27  Aviation Consultancy, Inc. d/b/a Airport Business Solutions, Michael Hodges, Roberta

28  Thompson, Thompson Aviation Consulting, Inc. and DOES 1 through 20; and

1        14.    For civil penalties, in accordance with California Government Code

2  section 12651, to be awarded against Tracy Means, Airport Business Solutions, Inc., ABS

3  Aviation Consultancy, Inc. d/b/a Airport Business Solutions, Michael Hodges, Roberta

4  Thompson, Thompson Aviation Consulting, Inc. and DOES 1 through 20, in an amount up to

5  $10,000 for each false claim.

6  On the **EIGHTH COUNT**:

7        15.    For damages to be awarded against defendants Tracy Means, Airport Business

8  Solutions, Inc., ABS Aviation Consultancy, Inc. d/b/a Airport Business Solutions, Michael

9  Hodges, Roberta Thompson, Thompson Aviation Consulting, Inc. and DOES 1 through 20, in an

10  amount according to proof, and in accordance with California Government Code sections

11  12650, *et seq.*;

12        16.    For treble damages in accordance with California Government Code section

13  12651, to be awarded against defendants Tracy Means, Airport Business Solutions, Inc., ABS

14  Aviation Consultancy, Inc. d/b/a Airport Business Solutions, Michael Hodges, Roberta

15  Thompson, Thompson Aviation Consulting, Inc. and DOES 1 through 20; and

16        17.    For civil penalties, in accordance with California Government Code

17  section 12651, to be awarded against defendants Tracy Means, Airport Business Solutions, Inc.,

18  ABS Aviation Consultancy, Inc. d/b/a Airport Business Solutions, Michael Hodges, Roberta

19  Thompson, Thompson Aviation Consulting, Inc. and DOES 1 through 20, in an amount up to

20  $10,000 for each false claim.

21  On the **NINTH COUNT**:

22        18.    For monetary damages in an amount to be proven at trial for losses or damages

23  suffered by CITY resulting from the breaches of contract by Airport Business Solutions, Inc.,

24  ABS Aviation Consultancy, Inc. d/b/a Airport Business Solutions, Michael Hodges, Roberta

25  Thompson, and Thompson Aviation Consulting, Inc.; and

26        19.    For pre-judgment interest on any awards of damages at the highest legal rate from

27  dates of loss pursuant to Civil Code section 3287.

28  / / /

FOURTH AMENDED COMPLAINT OF PLAINTIFF, CITY OF SAN DIEGO

1  On the **TENTH COUNT**:

2      20.    For monetary damages in an amount to be proven at trial for losses or damages

3  suffered by CITY resulting from the professional negligence of Airport Business Solutions, Inc.,

4  ABS Aviation Consultancy, Inc. d/b/a Airport Business Solutions, Michael Hodges, Roberta

5  Thompson, and Thompson Aviation Consulting, Inc.; and

6      21.    For pre-judgment interest on any awards of damages at the highest legal rate from

7  dates of loss pursuant to Civil Code section 3287.

8  On the **ELEVENTH COUNT**:

9      22.    For actual money damages in an amount to be proven at trial for losses or damage

10 suffered by CITY resulting from the fraudulent concealment of material facts by defendant,

11 Tracy Means;

12     23.    For pre-judgment interest on any awards of damages at the highest legal rate from

13 date of loss pursuant to Civil Code section 3287; and

14     24.    For punitive damages pursuant to California Civil Code section 3294(a) in an

15 amount appropriate to punish defendant Tracy Means and deter defendant and others from

16 engaging in similar misconduct.

17 On the **TWELFTH COUNT**:

18     25.    For payment to the CITY by Defendant Tracy Means of all sums that the CITY

19 paid to "ABS" pursuant to the "ABS" Invoices that Tracy Means approved and allowed with

20 respect to the illegal contracts described in Paragraphs 155 through 160 above, namely the sum

21 of $216,026.84, with interest thereon at the legal rate of 10% per annum, commencing from the

22 date of disbursement of such funds.

23 / / /

24 / / /

25 / / /

26 / / /

27 / /

28 / / /

FOURTH AMENDED COMPLAINT OF PLAINTIFF, CITY OF SAN DIEGO

1  On **ALL COUNTS:**

2      26.    For costs of suit incurred herein;

3      27.    For reasonable attorney's fees; and

4      28.    For such other relief as to the Court seems just and proper.

5      Dated: April 27 , 2007            MICHAEL J. AGUIRRE, City Attorney

6

7

8                                    By  _Sheila A. Ferguson_

                                      SHEILA A. LOWERY FERGUSON

9                                        Deputy City Attorney

10                                      Attorneys for Plaintiffs the City of San Diego and

11                                      The People of the State of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOURTH AMENDED COMPLAINT OF PLAINTIFF, CITY OF SAN DIEGO

EXHIBIT "A"

Page: 1 of 1

**Ship To:**
Center ID: 720BROWN
AIRPORTS
Attn: BROWN FIELD MS 14
1424 CONTINENTAL ST
SAN DIEGO, CA
92173-5717

**Bill To:**
Center ID: 730BROWN
AIRPORTS
Attn: MONTGOMERY FIELD MS 14
3750 JOHN J MONTGOMERY DR
SAN DIEGO, CA
92123-1753

Issue Date: 09/08/00
OPIS No.: DO01-5032956-0

Billing Contact:
Matt Anderson
Phone: 858-573-1434

**Vendor:**
AIRPORT BUSINESS SOLUTIONS
10014 N DALE MABRY HWY STE 101
TAMPA, FL  33618-4426
USA
Phone No: (813) 269-2525

Terms:
Net 30
FOB:
Destination
Deliver on or before: 06/30/01

Buyer: Michael Winterberg
Phone: (619) 533-6441

Vendor ID: ABS 02898344

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
|--------|--------------------|--------------|-----------|----------------|
| | | 24,000.00 EA | $ 1.0000 | $ 24,000.00 |
| 1 | DEPARTMENT OPEN | | | |

Proposed San Diego Air Commerce Center Project (SANDACC) at
Brown Field Airport.
Authorize and approve consultant services for a Feasibility Study by
Marketechs International, regarding the proposed San Diego Air
Commerce Center Project (SANDACC) at Brown Field Airport.

Req. No.: RQ01 304810

| | | |
|---|---|---|
| Line Item Total | $ | 24,000.00 |
| Tax | | 0.00 |
| Freight | | 0.00 |
| PO Total: | $ | 24,000.00 |

Notes: The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/
and are incorporated herewith by reference.

IMPORTANT!
To ensure prompt payments, PO
must appear on all shipments a
invoices; and, all invoices must
directed to *Billing Contact* person
*Bill-To* address listed above.

EXHIBIT "B"

# City of San Diego
## PURCHASE ORDER COPY

PO No. | 5041151-0

| Ship To: Center ID: 720BROWN | Bill To: Center ID: 720BROWN | Issue Date: 07/05/01 Page: 1 of 1 |
|---|---|---|
| AIRPORTS | AIRPORTS | OPIS No.: DO02-5041151-0 |
| Attn: BROWN FIELD MS 14 | Attn: MONTGOMERY FIELD MS 14 | |
| 1424 CONTINENTAL ST | 3750 JOHN J MONTGOMERY DR | Billing Contact: |
| SAN DIEGO, CA | SAN DIEGO, CA | Regina Seaton |
| 92173-5717 | 92123-1753 | Phone: 858-573-1434 |

| Vendor: | Terms: Net 30 |
|---|---|
| **AIRPORT BUSINESS SOLUTIONS** | FOB: Destination |
| 10014 N DALE MABRY HWY STE 101 | Deliver on or before: 06/30/02 |
| TAMPA, FL 33618-4426 | |
| USA | Buyer: Michael Winterberg |
| | Phone: (619) 533-6441 |
| Vendor ID: ABS 02698344   Phone No: (813) 269-2525 | |

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | CONSULTANT | 24,000.00 EA | $ 1.0000 | $ 24,000.00 |
| | Consultant Services for Development of a Business Plan for Brown Field Airport. | | | |
| | Req. No.: RQ02 401495 | | | |

Notes: The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/ and are incorporated herewith by reference.

| | | |
|---|---|---|
| Line Item Total | $ | 24,000.00 |
| Tax | | 0.00 |
| Freight | | 0.00 |
| PO Total: | $ | 24,000.00 |

**IMPORTANT!**
To ensure prompt payments, PO must appear on all shipments and invoices; and, all invoices must be directed to *Billing Contact* person

EXHIBIT "C"

| Ship To: | Center ID: 720MONTG | Bill To: | Center ID: 720MONTG | Issue Date: 07/05/01 | Page: 1 of 1 |
|---|---|---|---|---|---|

| Ship To: | Bill To: | | |
|---|---|---|---|
| AIRPORTS | AIRPORTS | **Issue Date:** 07/05/01 | **Page:** 1 of 1 |
| Attn: MONTGOMERY FIELD MS 14 | Attn: MONTGOMERY FIELD MS 14 | **OPIS No.:** DO02-5041152-0 | |
| 3750 JOHN J MONTGOMERY DR | 3750 JOHN J MONTGOMERY DR | **Billing Contact:** | |
| SAN DIEGO, CA | SAN DIEGO, CA | Regina Seaton | |
| 92123-1753 | 92123-1753 | Phone: 858-573-1434 | |

| Vendor: | | Terms: Net 30 |
|---|---|---|
| AIRPORT BUSINESS SOLUTIONS | | FOB: Destination |
| 10014 N DALE MABRY HWY STE 101 | | Deliver on or before: 06/30/02 |
| TAMPA, FL 33618-4426 | | Buyer: Michael Winterberg |
| USA | | Phone: (619) 533-6441 |
| Vendor ID: ABS 02698344 | Phone No: (813) 269-2525 | |

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | CONSULTANT | 24,000.00 EA | $ 1.0000 | $ 24,000.00 |
| | Consultant Services for Business Plan for Montgomery Field Airport. | | | |
| | Req. No.: RQ02 401494 | | | |

| | | |
|---|---|---|
| | Line Item Total | $ 24,000.00 |
| | Tax | 0.00 |
| | Freight | 0.00 |
| | PO Total: | $ 24,000.00 |

Notes: The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/ and are incorporated herewith by reference.

**IMPORTANT!**

To ensure prompt payments, PO must appear on all shipments a invoices; and, all invoices must directed to *Billing Contact* person *Bill-To* address listed above.

EXHIBIT "D"

Case 3:08-cv-00566-WQH-POR  Document 4-3  Filed 04/02/2008  Page 72 of 124

Page: 1 of 1

| | |
|---|---|
| | Issue Date: 03/23/01 |
| | OPIS No.: DO02-5042709-0 |

**Ship To:**  Center ID: 720MONTG
AIRPORTS
Attn: MONTGOMERY FIELD MS 14
3750 JOHN J MONTGOMERY DR
SAN DIEGO, CA          92123-1753

**Bill To:**  Center ID: 720MONTG
AIRPORTS
Attn: MONTGOMERY FIELD MS 14
3750 JOHN J MONTGOMERY DR
SAN DIEGO, CA          92123-1753

**Billing Contact:**
Regina Seaton
Phone: 858-573-1434

**Vendor:**
AIRPORT BUSINESS SOLUTIONS
10014 N DALE MABRY HWY STE 101
TAMPA, FL  33618-4426
                    USA

Phone No: (813) 269-2525

**Terms:**
Net 30
**FOB:**
Destination
Deliver on or before: 06/30/02

**Buyer:** Michael Winterberg
**Phone:** (619) 533-6441

Vendor ID: ABS 02898344

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | CONSULTANT | 24,500.00 EA | $ 1.0000 | $ 24,500.00 |
| | Consultant services for Airport document review & analysis for Airports Division. | | | |
| | Req. No.: RQ02 404164 | | | |

| | | |
|---|---|---|
| Line Item Total | $ | 24,500.0 |
| Tax | | 0.0 |
| Freight | | 0.0 |
| PO Total: | $ | 24,500. |

**Notes:** The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/ and are incorporated herewith by reference.

**IMPORTANT!**
To ensure prompt payments, P
must appear on all shipments
invoices; and, all invoices mus
directed to *Billing Contact* pers
*Bill-To* address listed above.

City of San Diego  Purchasing Division  MS 56P  1200 Third Ave. Ste 200  San Diego CA  9210

EXHIBIT "E"

| | | | Issue Date: 02/20/02 | Page: 1 of 1 |
|---|---|---|---|---|
| Ship To:   Center ID: 720BROWN | Bill To:   Center ID: 720BROWN | | OPIS No.: DO02-5045057-0 | |

**Ship To:**
AIRPORTS
Attn: BROWN FIELD MS 14
1424 CONTINENTAL ST
SAN DIEGO, CA
92173-5717

**Bill To:**
AIRPORTS
Attn: MONTGOMERY FIELD MS 14
3750 JOHN J MONTGOMERY DR
SAN DIEGO, CA
92123-1753

Issue Date: 02/20/02
OPIS No.: DO02-5045057-0

Billing Contact:
Regina Seaton
Phone: 858-573-1434

---

Vendor:

AIRPORT BUSINESS SOLUTIONS
10014 N DALE MABRY HWY STE 101
TAMPA, FL 33618-4426
USA

Vendor ID: ABS 02898344

Phone No.: (813) 269-2525

Terms:  Net 30
FOB:

Deliver on or before: 06/30/02

Buyer: Georgette Parkerson*
Phone:

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | CONSULTANT | 20,000.00 EA | $ 1.0000 | $ 20,000.00 |
| | consultant services for business development and review at brown field airport. | | | |
| | Req. No.: RQ02 409249 | | | |

| | | |
|---|---|---|
| Line Item Total | $ | 20,000.00 |
| Tax | | 0.00 |
| Freight | | 0.00 |
| PO Total: | $ | 20,000.00 |

Notes: The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/ and are incorporated herewith by reference.

Dept. Contact: Regina Seaton
(858) 573-1434

**IMPORTANT!**

To ensure prompt payments, PO must appear on all shipments a invoices; and, all invoices must directed to *Billing Contact* person *Bill-To* address listed above.

EXHIBIT "F"

| Ship To: | Center ID: 720MONTG | Bill To: | Center ID: 720MONTG | Issue Date: 02/20/02 | Page: 1 of 1 |
|---|---|---|---|---|---|
| AIRPORTS<br>Attn: MONTGOMERY FIELD MS 14<br>3750 JOHN J MONTGOMERY DR<br>SAN DIEGO, CA<br>92123-1753 | | AIRPORTS<br>Attn: MONTGOMERY FIELD MS 14<br>3750 JOHN J MONTGOMERY DR<br>SAN DIEGO, CA<br>92123-1753 | | OPIS No.: DO02-5043058-0<br><br>Billing Contact:<br>Regina Seaton<br>Phone: 858-573-1434 | |

| Vendor: | | Terms:<br>Nat 30 |
|---|---|---|
| AIRPORT BUSINESS SOLUTIONS<br>10014 N DALE MABRY HWY STE 101<br>TAMPA, FL 33618-4426<br>USA | | FOB:<br><br>Deliver on or before: 06/30/02<br><br>Buyer: Georgette Parkerson<br>Phone: |
| Vendor ID: ABS 02898344 | Phone No: (813) 269-2525 | |

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
|---|---|---|---|---|
| | | 20,000.00 EA | $ 1.0000 | $ 20,000.00 |
| 1 | CONSULTANT<br><br>consultant services for business development and review at<br>montgomery field airport.<br><br>Req. No.: RQ02 409252 | | | |

| | | | |
|---|---|---|---|
| Line Item Total | $ | 20,000.00 |
| Tax | | 0.00 |
| Freight | | 0.00 |
| PO Total: | $ | 20,000.00 |

Notes: The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/
and are incorporated herewith by reference.

Dept. Contact: Regina Seaton
(858) 573-1434

**IMPORTANT!**

To ensure prompt payments, PO
must appear on all shipments a
invoices; and, all invoices must
directed to *Billing Contact* person
*Bill-To* address listed above.

EXHIBIT "G"

# PURCHASE ORDER COPY

PO No.: DO03-5051273-0

| | | Issue Date: 07/01/02 | Page: 1 of 1 |
|---|---|---|---|
| | | OPIS No.: DO03-5051273-0 | |

Ship To:    Center ID: 720BROWN
AIRPORTS
Attn: BROWN FIELD MS 14
1424 CONTINENTAL ST
SAN DIEGO, CA
            92173-5717

Bill To:    Center ID: 720BROWN
AIRPORTS
Attn: MONTGOMERY FIELD MS 14
3750 JOHN J MONTGOMERY DR
SAN DIEGO, CA
           92123-1753

Billing Contact:
Regina Seaton
Phone: 858-573-1434

Vendor:
**AIRPORT BUSINESS SOLUTIONS**
**10014 N DALE MABRY HWY STE 101**
**TAMPA, FL 33618-4426**
            **USA**

Terms:
Net 30
FOB:

Deliver on or before: 06/30/03

Buyer: Lisa Hoffmann
Phone: (619) 236-6096

Vendor ID: ABS 02898344      Phone No: (813) 269-2525

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | CONSULTANT | 24,500.00 EA | $ 1.0000 | $ 24,500.00 |
| | Consultant services for business development and review at Brown Field Airport for the period 07/01/02 through 06/30/03. | | | |
| | Req. No.: RQ03 501532 | | | |

|  | |
|---|---|
| Line Item Total | $ 24,500.[ |
| Tax | 0.[ |
| Freight | 0. |
| PO Total: | $ 24,500. |

Notes: The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/ and are incorporated herewith by reference.

**IMPORTANT!**

To ensure prompt payments, P must appear on all shipments invoices; and, all invoices mus directed to *Billing Contact* pers *Bill-To* address listed above.

EXHIBIT "H"

# PURCHASE ORDER COPY — PCF701

| | | | Issue Date: 07/01/02 | Page: 1 of 1 |
|---|---|---|---|---|
| | | | OPIS No.: DO03-5051275-0 | |

| Ship To: Center ID: 720MONTG | Bill To: Center ID: 720MONTG | |
|---|---|---|
| AIRPORTS<br>Attn: MONTGOMERY FIELD MS 14<br>3750 JOHN J MONTGOMERY DR<br>SAN DIEGO, CA          92123-1753 | AIRPORTS<br>Attn: MONTGOMERY FIELD MS 14<br>3750 JOHN J MONTGOMERY DR<br>SAN DIEGO, CA          92123-1753 | Billing Contact:<br>Regina Seaton<br>Phone: 858-573-1434 |

| Vendor: | Terms: Net 30 |
|---|---|
| AIRPORT BUSINESS SOLUTIONS<br>10014 N DALE MABRY HWY STE 101<br>TAMPA, FL 33618-4426<br>USA | FOB:<br><br>Deliver on or before: 06/30/03 |
| | Buyer: Lisa Hoffmann<br>Phone: (619) 236-6096 |

Vendor ID: ABS 02898344          Phone No: (813) 269-2525

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
|---|---|---|---|---|
| | | 24,500.00 EA | $    1.0000 | $    24,500.00 |
| 1 | CONSULTANT<br><br>Consultant services for business development and review at Montgomery Field Airport for the period 07/01/02 through 06/30/03.<br><br>Req. No.: RQ03 501537 | | | |

| | | |
|---|---|---|
| Line Item Total | $ | 24,500.0 |
| Tax | | 0.0 |
| Freight | | 0.0 |
| PO Total: | $ | 24,500. |

Notes: The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/ and are incorporated herewith by reference.

### IMPORTANT!

To ensure prompt payments, P· must appear on all shipments invoices; and, all invoices mus· directed to *Billing Contact* perso· *Bill-To* address listed above.

City of San Diego    Purchasing Division    MS 66P    1200 Third Ave. Ste 200    San Diego CA    9210

EXHIBIT "I"

PURCHASE ORDER

| Ship To: | Center ID: 720BROWN | Bill To: | Center ID: 720BROWN | Issue Date: 06/19/03 | Page: 1 of 1 |
| --- | --- | --- | --- | --- | --- |

Ship To:
AIRPORTS
Attn: BROWN FIELD MS 14
1424 CONTINENTAL ST
SAN DIEGO, CA
          92173-5717

Bill To:
AIRPORTS
Attn: MONTGOMERY FIELD MS 14
3750 JOHN J MONTGOMERY DR
SAN DIEGO, CA
          92123-1753

Issue Date: 06/19/03
OPIS No.: DO04-5061091-0

Billing Contact:
Tracy L. Means
Phone: 858 573-1430

Vendor:

**AIRPORT BUSINESS SOLUTIONS**
10014 N DALE MABRY HWY STE 101
TAMPA, FL 33618-4426
      USA

Vendor ID: ABS 02898344      Phone No: (813) 269-2525

Terms:
Net 30
FOB:

Deliver on or before: 06/30/03

Buyer: Jan-Nicole Edgell
Phone: (619) 533-6728

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
| --- | --- | --- | --- | --- |
| 1 | CONSULTANT | 24,500.00 EA | $ 1.0000 | $ 24,500.00 |
|  | Consultant services for brown field airport enhancement |  |  |  |
|  | Req. No.: RQ04 601744 |  |  |  |

Notes: The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/ and are incorporated herewith by reference.

| | | |
| --- | --- | --- |
| Line Item Total | $ | 24,500.00 |
| Tax | | 0.00 |
| Freight | | 0.00 |
| PO Total: | $ | 24,500.00 |

IMPORTANT!

To ensure prompt payments, PO must appear on all shipments an invoices; and, all invoices must b directed to *Billing Contact* person Bill-To address listed above.

PA 2555a (Rev. 9-02)      City of San Diego   Purchasing Division   MS 56P   1200 Third Ave. Ste 200   San Diego CA   92101-4

EXHIBIT "J"

Case 3:08-cv-00580-WQH-POR Document 4-3 Filed 04/02/2008 Page 84 of 124

# City of San Diego
## PURCHASE ORDER COPY

PO No. | 5061116-0

| Ship To: Center ID: 720MONTG | Bill To: Center ID: 720MONTG | Issue Date: 06/20/03 Page: 1 of 1 |
|---|---|---|
| AIRPORTS<br>Attn: MONTGOMERY FIELD MS 14<br>3750 JOHN J MONTGOMERY DR<br>SAN DIEGO, CA<br>92123-1753 | AIRPORTS<br>Attn: MONTGOMERY FIELD MS 14<br>3750 JOHN J MONTGOMERY DR<br>SAN DIEGO, CA<br>92123-1753 | OPIS No.: DO04-5061116-0<br><br>Billing Contact:<br>Tracy L. Means<br>Phone: 658 573-1430 |

**Vendor:**

AIRPORT BUSINESS SOLUTIONS
10014 N DALE MABRY HWY STE 101
TAMPA, FL 33618-4426

USA

Vendor ID: ABS 02898344          Phone No: (813) 269-2525

**Terms:** Net 30

**FOB:**

Deliver on or before: 06/30/03

Buyer: Jan-Nicole Edgell
Phone: (619) 533-6728

| Line # | Item ID/Description | Quantity/UM | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | CONSULTANT<br><br>Consultant service for Montgomery Field airport enhancement.<br>Alternate Contact: Regina Seaton 858 573-1434<br><br>Req. No.: RQ04 601741 | 24,500.00 EA | $ 1.0000 | $ 24,500.00 |

Notes: The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/ and are incorporated herewith by reference.

| | |
|---|---|
| Line Item Total | $ 24,500.00 |
| Tax | 0.00 |
| Freight | 0.00 |
| PO Total: | $ 24,500.00 |

**IMPORTANT!**

To ensure prompt payments, PO must appear on all shipments and invoices; and, all invoices must be directed to Billing Contact person Bill-To address listed above.

PA 2555a (Rev. 9-02)     City of San Diego · Purchasing Division · MS 56P     1200 Third Ave. Ste 200   San Diego CA  92101-4

EXHIBIT "K"

Case 3:07-cv-00580-WQH-RBB Document 1 Filed 04/02/2008 Page 86 of 124

# PURCHASE ORDER COPY

| | PO No. | 5071503-0 |
|---|---|---|

| Ship To: | Bill To: | Issue Date: 06/21/04 |
|---|---|---|

Ship To:
Center ID: 720BROWN
Airports
Attn: BROWN FIELD MS 14
1424 CONTINENTAL ST
SAN DIEGO, CA
92173-5717

Bill To:
Center ID: 720BROWN
Airports
Attn: MONTGOMERY FIELD MS 14
3750 JOHN J MONTGOMERY DR
SAN DIEGO, CA
92123-1753

Issue Date: 06/21/04
OPIS No.: DO05-5071503-0
Page: 1 of 1

Billing Contact:
regina seaton
Phone: 858-573-1434

Vendor:

AIRPORT BUSINESS SOLUTIONS
365 ARROYO
ROSWELL, GA 30075-1258
USA

Vendor ID: ABS 02898344

Phone No: (678) 461-4300

Terms:
Net 1
FOB:

Deliver on or before: 06/30/04

Buyer: Pam Glover
Phone: (619) 236-5554

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | CONSULTANT | 24,500.00 EA | $ 1.0000 | $ 24,500.00 |
| | consultant services for airport enhancement at brown field airport. · open PO 7/01/04 - 6/30/04 | | | |
| | Req. No.: RQ05 701925 | | | |

**Notes:** The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/ and are incorporated herewith by reference.

| Line Item Total | $ | 24,500.00 |
|---|---|---|
| Tax | | 0.00 |
| Freight | | 0.00 |
| PO Total: | $ | 24,500.00 |

**IMPORTANT!**

To ensure prompt payments, PO # must appear on all shipments and invoices; and, all invoices must be directed to *Billing Contact* person at *Bill-To* address listed above.

'A 2555a (Rev. 9-02)   City of San Diego   Purchasing Division   MS 56P   1200 Third Ave.  Ste 200   San Diego CA   92101-4195

EXHIBIT "L"



# City of San Diego
# PURCHASE ORDER COPY

PO No. **5071504-0**

| Ship To: | Center ID: 720MONTG | Bill To: | Center ID: 720MONTG | Issue Date: 06/21/04 | Page: 1 of 1 |
|---|---|---|---|---|---|
| Airports | | Airports | | OPIS No.: DO05-5071504-0 | |
| Attn: MONTGOMERY FIELD MS 14 | | Attn: MONTGOMERY FIELD MS 14 | | | |
| 3750 JOHN J MONTGOMERY DR | | 3750 JOHN J MONTGOMERY DR | | Billing Contact: | |
| SAN DIEGO, CA | | SAN DIEGO, CA | | regina seaton | |
| 92123-1753 | | 92123-1753 | | Phone: 858-573-1434 | |

| Vendor: | | Terms: Net 1 |
|---|---|---|
| AIRPORT BUSINESS SOLUTIONS | | FOB: |
| 365 ARROYO | | |
| ROSWELL, GA  30075-1258 | | Deliver on or before: 06/30/04 |
| USA | | |
| | | Buyer: Pam Glover |
| | | Phone: (619) 236-5554 |
| Vendor ID:  ABS 02898344 | Phone No: (678) 461-4300 | |

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | CONSULTANT | 24,500.00 EA | $        1.0000 | $      24,500.00 |
| | consultant services for airport enhancement at montgomery field airport - open PO 7/01/04 - 6/30/05 | | | |
| | Req. No.: RQ05 701924 | | | |

Notes:  The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/ and are incorporated herewith by reference.

| | | |
|---|---|---|
| Line Item Total | $ | 24,500.00 |
| Tax | | 0.00 |
| Freight | | 0.00 |
| PO Total: | $ | 24,500.00 |

**IMPORTANT!**

To ensure prompt payments, PO # must appear on all shipments and invoices; and, all invoices must be directed to *Billing Contact* person at *Bill-To* address listed above.

EXHIBIT "M"



# City of San Diego
## PURCHASE ORDER COPY

| | |
|---|---|
| PO No. | **5081147-0** |

| Ship To:    Center ID: 720MONTG | Bill To:    Center ID: 720MONTG | |
|---|---|---|
| AIRPORTS<br>Attn: MONTGOMERY FIELD MS 14<br>3750 JOHN J MONTGOMERY DR<br>SAN DIEGO, CA<br>92123-1753 | AIRPORTS<br>Attn: MONTGOMERY FIELD MS 14<br>3750 JOHN J MONTGOMERY DR<br>SAN DIEGO, CA<br>92123-1753 | Issue Date: 06/21/05    Page: 1 of 1<br>OPIS No.: DO06-5081147-0<br><br>Billing Contact:<br>tracy means<br>Phone: 858-573-1430 |

| Vendor: | | Terms:<br>  Net 1 |
|---|---|---|
| AIRPORT BUSINESS SOLUTIONS<br>10014 N DALE MABRY HWY STE 101<br>TAMPA, FL 33618-4426<br><br>          USA | | FOB:<br><br>Deliver on or before: 06/22/05<br><br>Buyer: Pam Glover |
| Vendor ID: ABS 02898344       Phone No: (813) 269-2525 | | Phone: (619) 236-5554 |

| Line # | Item ID/Description | Quantity/U/M | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | CONSULTANT<br><br>as needed consultant for airport improvements/enhancements<br><br>Req. No.: RQ06 801312 | 24,500.00 EA | $   1.0000 | $   24,500.00 |

Notes: The Terms and Conditions of this Purchase Order are available at http://sandiego.gov/purchasing/ and are incorporated herewith by reference.

| | | |
|---|---|---|
| Line Item Total | $ | 24,500.00 |
| Tax | | 0.00 |
| Freight | | 0.00 |
| PO Total: | $ | 24,500.00 |

**IMPORTANT!**

To ensure prompt payments, PO # must appear on all shipments and invoices; and, all invoices must be directed to *Billing Contact* person at *Bill-To* address listed above.

# EXHIBIT B

1

2

3    **F I L E D**
Clerk of the Superior Court

4    SEP 2 0 2007

5    By: R. LINDSEY-COOPER, Deputy

6

7

8                    **SUPERIOR COURT OF CALIFORNIA**

9              **IN AND FOR THE COUNTY OF SAN DIEGO**

10   CITY OF SAN DIEGO, a municipal           CASE NO. GIC 858344
     corporation and a Political Subdivision of the
11   State of California and the PEOPLE OF THE    JUDGMENT BY COURT
     STATE OF CALIFORNIA, acting by and         UNDER CCP §437c
12   through San Diego City Attorney, Michael J.
     Aguirre                                    Judge:  Hon. Joan M. Lewis
13                                              Dept.:  65
            Plaintiff,
14
15   v.

16   TRACY L. MEANS, (aka Tracy L. Williams)
     an individual; MICHAEL HODGES, an
17   individual; ROBERTA THOMPSON, an
     individual; AIRPORT BUSINESS
18   SOLUTIONS, INC., a Georgia Corporation;
     ABS AVIATION CONSULTANCY, INC.,
19   d/b/a AIRPORT BUSINESS SOLUTIONS, a
     Florida Corporation; THOMPSON
20   AVIATION CONSULTING, INC., a Florida
     Corporation; and Does 1-20, inclusive,
21
            Defendants.
22

23        This matter having been assigned to Superior Court, Department 65 for all purposes at the time

24   of the initial filing of this lawsuit, the Honorable Joan M. Lewis, Judge Presiding, and Maria C.

25   Severson and Joe B. Cordileone of the Office of the City Attorney for the City of San Diego appearing

26   for Plaintiffs City of San Diego and the People of the State of California and Paula S. Rosenstein of

27   Rosenstein, Wilson & Dean, P.L.C., appearing for Defendant Tracy L. Means (aka Tracy L. Williams)

28   came on for hearing of a Motion for Summary Judgment or, in the Alternative, Summary Adjudication

1  of Issues, on August 10, 2007 at approximately 9:00 a.m.

2       Based upon the pleadings and evidence filed in support of and opposition to Defendant Tracy

3  L. Means' Motion for Summary Judgment, as well as the pleadings on file in this matter and after

4  hearing oral argument on the Motion, the Court made the following findings and orders:

5       Defendant's request for judicial notice is granted.

6       Plaintiff's request for judicial notice of the specified provisions of the City Charter, Municipal

7  Code and Administrative Regulations is granted. The Court declines Plaintiff's request, however, to

8  take judicial notice of unspecified pleadings filed in this action.

9       Plaintiff City of San Diego's Evidentiary Objections Numbers 1, 6 and 7 are sustained.

10  Plaintiff's remaining objections are overruled.

11       Defendant Tracy L. Means' Evidentiary Objections Numbers 3, 7, 14, 16, 18, 19, 20, 22, 24,

12  25, 28, 31, 33, 34, 35, 36, 37, 39, 41, 42, 43, 49-53 and 56-61 are sustained. Defendant's remaining

13  objections are overruled.

14       Defendant Tracy L. Means moves for summary judgment or, in the alternative, summary

15  adjudication of each of the causes of action brought against her in this case.

16       As to the first, second and eleventh causes of action for misrepresentation and concealment,

17  Defendant argued that she was immune from liability pursuant to Gov. Code Sec. 822.2. Defendant's

18  separate statement cited evidence to support her argument that "[n]one of the documents produced,

19  testimony given or interrogatory responses provided include admissible evidence that Ms. Means knew

20  or believed that she was failing to follow City procedures, assuming she did, that the ABS Defendants'

21  work was negligent or of poor quality, assuming it was, or that she intentionally overlooked or

22  concealed anything regarding the ABS Defendants' work." [See evidence cited in support of

23  Defendant's Separate Statement of Undisputed Fact ("SSUF") No. 83]. It is undisputed that no one

24  ever told Defendant that she was doing anything wrong regarding the hiring or use of vendors,

25  including consultants. [See the City's response to SSUF No. 49]. It is further undisputed that various

26  City personnel from various departments were present at many meetings with ABS' personnel. [See

27  the City's response to SSUF No. 68] The evidence cited by Defendant demonstrates that she had no

28  special relationship or friendship with ABS' principals [see evidence in support of SSUF Nos. 60 and

- 2 -

1    61]. Moreover, the evidence cited by Defendant at her SSUF No. 29 supports the assertion that the

2    City lacks evidence of any personal or financial benefit to Defendant as a result of the work performed

3    by the City. The Court believes the cited evidence is sufficient to meet the Defendant's burden that the

4    conduct complained of in this case does not rise to the level of "actual fraud, corruption or actual

5    malice."

6         The Defendant having met her burden, the burden then shifted to the Plaintiff to try and create

7    a triable issue of fact. In response to SSUF 83, the City cited to evidence it believed demonstrated that

8    the Defendant "knew that she was breaking the City's laws regarding the selection and hiring of

9    consultants, that the ABS work product was of poor quality and that she intentionally concealed this

10   fact from the City." The Court has reviewed the evidence cited and concludes it does not support the

11   assertion urged by the City. At best, the Court believes, the evidence reflects that the Defendant did

12   not follow certain policies and/or procedures and perhaps was negligent in that regard. However, this

13   Court is of the opinion there is simply no evidence to suggest – or create a triable issue of fact – that

14   the Defendant at any time acted with actual fraud, corruption or actual malice, as that phrase has been

15   defined in the context of Gov. Code Sec. 822.2. Moreover, there is no competent evidence that the

16   Defendant was in any special relationship with ABS' principals or that she benefitted in any way from

17   ABS' work for the City. The Court therefore concludes that the Plaintiff has failed to meet its burden

18   and that the causes of action for misrepresentation and concealment lack merit because the Defendant

19   is immune from liability pursuant to Sec. 822.2.

20        To the extent the 17200 claims are based on alleged misrepresentations and/or concealment,

21   the Court similarly concludes that the fifth cause of action lacks merit because Defendant would be

22   immune from liability. Moreover, the Court concludes that the evidence cited by Defendant, as

23   specified above, demonstrates that Defendant was acting within the course and scope of her

24   employment. Plaintiff's evidence cited in opposition to this motion fails to create an issue of fact on this

25   point. Therefore, as the employee of a governmental entity acting within the course and scope of her

26   employment, the Court concludes Defendant would not be liable under B&P Sec. 17200, et seq. [See,

27   for example, *Janis v. California State Lottery Commission* (1998) 68 Cal.App.4th 824, 831].

28        Defendant additionally sought adjudication of the False Claims Act causes of action. The Court

- 3 -

1    concludes that the evidence cited above is sufficient to meet the Defendant's burden that she did not

2    "knowingly" present a false claim or make a false record. In opposing the motion, the City argued that

3    whether the "knowingly" element has been satisfied is a question of fact. Although the Court agrees

4    that often such issues may present questions of fact, it believes the City must submit some evidence to

5    suggest a question of fact exists. In this case the Court concludes that the City has not met its burden

6    and that there is simply insufficient evidence cited to create a triable issue of fact on this element.

7    Accordingly, these causes of action lack an essential element and therefore lack merit. Moreover, as

8    to the eighth cause of action for conspiracy to defraud a public entity by false claims, the Court notes

9    that the City has stated its agreement to withdraw this claim.

10        The Plaintiff's final cause of action is for violation of City Charter Section 108. This section

11    applies to bonded City officers. The City offers no evidence to refute Defendant's assertion that she was

12    not bonded. [See evidence cited in support of Defendant's SSUF No. 97 and the City's response

13    thereto]. Moreover, the evidence cited in support of SSUF No. 96 demonstrates that Defendant was

14    not an "officer" of the City and the City offers no evidence to refute that assertion. For these reasons

15    the Court concludes that Sec. 108 is not applicable to Defendant and therefore a claim for its violation

16    lacks merit.

17        For all of the above reasons, Defendant Tracy L. Means' motion for summary judgment is

18    granted and therefore,

19    // //

20

21    // //

22

23    // //

24

25    // //

26

27    // //

28

JUDGMENT BY COURT UNDER CCP §437c

1    **IT IS ORDERED, ADJUDGED AND DECREED** that Plaintiffs City of San Diego and the

2    People of the State of California shall take nothing by way of their Fourth Amended Complaint against

3    Defendant Tracy L. Means (aka Tracy L. Williams) and that Plaintiffs are ordered to pay and

4    Defendant Tracy L. Means is entitled to receive attorneys' fees in the amount of $_____, plus

5    costs in the amount of $_____.

6    DATED: _____SEP 20 2007_____                           JOAN M. LEWIS

7                                                           HON. JOAN M. LEWIS
                                                           Judge of the Superior Court
8

9    Approved as to Form:

10

11   Dated: __9/12/07__

12                                                         ROSENSTEIN, WILSON AND DEAN, P.L.C.

13

14                                                         By:    Paula S. Rosenstein, Esq.
                                                           Attorneys for Defendant Tracy L. Means
15

16   Dated: __9-12-07__

17                                                         OFFICE OF THE CITY ATTORNEY

18

19                                                         By:    Michael J. Aguirre, Esq.
                                                                  Maria C. Severson, Esq.
20                                                                Joe Cordileone, Esq.
                                                                  Sheila L. Ferguson, Esq.
21                                                         Attorneys for Plaintiffs
                                                           CITY OF SAN DIEGO, a municipal corporation and a
22                                                         Political Subdivision of the State of California and the
                                                           PEOPLE OF THE STATE OF CALIFORNIA, acting
23                                                         by and through San Diego City Attorney, Michael J.
                                                           Aguirre
24

25

26

27

28

- 5 -

# EXHIBIT C

A Professional Law Corporation

**R  W  D**

ROSENSTEIN  WILSON  &  DEAN

Paula S. Rosenstein
Bridget J. Wilson
Merrianne E. Dean

Telephone (619) 232-8377
Facsimile (619) 238-8376

September 7, 2006

HONORABLE SCOTT PETERS, COUNCIL PRESIDENT
HONORABLE MEMBERS OF THE CITY COUNCIL
CITY OF SAN DIEGO
202 C Street
San Diego, CA 92101

RE:    City of San Diego v. Means
       Superior Court Case No. GIC 858344

Dear Council President Peter and Council Members Faulconer, Atkins, Young, Maienschein, Frye, Madaffer and Hueso:

In February 2006, on behalf of my client, Tracy L. Means, I demanded payment of Ms. Means' costs of defense in the above referenced matter. The demand was based on the law and in particular, Government Code Section 995. The City Council refused the demand. We are returning to you now notify you of the current status of this matter and to request that the City Council adopt a resolution directing the City Attorney to dismiss this frivolous lawsuit and reimburse Ms. Means for her damages before the taxpayers of this City are forced to pay Ms. Means significantly more money after trial and a judgment in Ms. Means' favor is rendered.

We write this letter with the hope that you will take the necessary time to review the situation, see for yourselves its lack of merit and take the appropriate action. In order to assist you in making this decision, we will review the background, facts, evidence and law as they are being discovered in the litigation.

I.

**The Actual Evidence Does Not Support the Complaint's Allegations**

The First Amended Complaint currently on file against Ms. Means alleges negligent and intentional misrepresentation of fact, attempts to rescind public contracts which were allegedly awarded to co-defendant Airport Business Solutions illegally, attempts to recover "money had and received", alleges violations of the unfair competition act, and a conspiracy to defraud a public entity by false claims.

While these are legal terms that involve complex issues, the City's allegations really boil down to an assertion that Ms. Means not only failed to follow the Municipal Code, City Charter and Administrative Regulations regarding the use of consultants but that she did so intentionally and with the purpose of harming the City. While these are certainly serious allegations, the problem is that the City has no evidence to support them. All the City Attorney has been able to point to is that fact that there were 14 separate purchase orders in favor of ABS over six years which added up to approximately $218,000. That fact alone is insufficient to prove intentional wrong doing.

HONORABLE SCOTT PETERS, COUNCIL PRESIDENT
HONORABLE MEMBERS OF THE CITY COUNCIL
September 7, 2006
Page 2

Perhaps most telling is that the City Attorney has not been able to ascribe any motive to Ms. Means' alleged conduct. There are *no* allegations that Ms. Means personally benefitted in any way whatsoever by these supposed actions - not personally, not professionally, not even remotely. Documents were placed on her desk for approval and one of her tasks was to approve the item or decline to approve it. There were never any illicit motives and that is why the Complaint in this matter does not ascribe any to Ms. Means. Even the City Attorney knows that there were none.

What the evidence does show is that the City's regulations, Municipal Code and Charter provide for a check and balance system. The City Manager has the authority to award contracts up to $250,000 without going before the City Council.[1] Contracts less than $25,000 could be awarded by Department Directors. They could not delegate that authority - only the City Manager could and that had to be in writing. We have yet to see any delegation documents although for years, the tasks have been delegated. Nonetheless, assuming what the City alleges to be true, and we do not concede that it is, even if Ms. Means did sign off on the purchase orders in violation of some rule or regulation, they should never have been paid without either the Department Director's approval, Will Griffith, or the City Manager's approval as she supposedly did not have the authority to do direct that payments be made herself. (*See* Admin. Reg. 25.70)

Therefore, the Purchasing Agent, who is charged with making sure systems have been followed before directing payments to be issued, authorized the payments - over a six year period - without the Department Director approving the payments or ascertaining that certain authority had been delegated to Ms. Means, a *Deputy Director*, in writing and by the City Manager. At no time did anyone ever tell Ms. Means that she was not following the correct procedure in accomplishing the work she was charged to perform, i.e. running the Airports Division in a sound, business-like, financially successful manner.[2] At no time did anyone ever tell her that the purchase orders needed to be signed off by Will Griffith before they could be paid. At no time was she told that the documentation submitted was insufficient.

The evidence further shows, or rather fails to show, that Ms. Means, *at any time*, received any training, formal or informal, on the proper procedures and intimate details for choosing vendors to work on Airports issues. Moreover, the evidence also shows that she received "superior" and "outstanding" marks in nearly every single category on her performance evaluations from the man who was her superior for most of her tenure with the City of San Diego, Will Griffith, former Director of the Real Estate Assets Department. The financial and performance records demonstrate that Ms. Means took over a Division with about a $250,000 fund balance, was told to bring it up to a $300,000 fund balance and, within four years, raised the fund balance to almost $3 million. Ms. Means was instructed to run the Division as a business, to make the Division efficient and profitable, and to make sure it complied with FAA regulations, and she did. There is no doubt that Ms. Means did an outstanding job for the City.

---

[1] All of the alleged actions took place prior to the implementation of the strong mayor form of government and therefore those rules and systems apply here.

[2] Interestingly, the evidence also shows that the Purchasing Agent paid invoices that were approved by no one and others which were approved by an Administrative Aide.

HONORABLE SCOTT PETERS, COUNCIL PRESIDENT
HONORABLE MEMBERS OF THE CITY COUNCIL
September 7, 2006
Page 3

The City Attorney has also alleged that the work quality by Airport Business Solutions was of poor quality, done negligently and in an unworkmanlike manner. Yet, the evidence elicited in the fact-finding which is the basis of the litigation shows that no one ever told ABS that anyone thought their work was substandard. The evidence further shows that no one ever told Ms. Means that they thought that ABS' work was substandard. Not only is there no evidence in the fact-finding record of any such communication, but the head of the fact-finding team, Daro Quiring, confirmed during his deposition that no such evidence was received during the course of the fact-finding and he knew of none. Moreover, Mr. Quiring confirmed that no exploration was done of ABS' credentials and nothing was done to obtain a standard against which to measure the quality of the work performed. So, how the City Attorney reached this conclusion is a mystery.

## II.

### Tracy Means' Is Not Liable to the City

Based upon the evidence that the City Attorney has presented thus far, there will be no liability found against Ms. Means. Not only are the facts lacking but the law will preclude such a finding.

Ms. Means, as are all government employees, is immune for much of the work she performs as a government employee. During the last discussion with the City Council about whether to provide Ms. Means' with a defense, Councilwoman Donna Frye asked Michael Aguirre whether the fact that she had awarded the 14 invoices meant she was outside the "course and scope of her employment". This was a critical question as, if she is acting within the course and scope of her employment, the City must provide her a defense. Mr. Aguirre erroneously answered "yes".

In fact, under California law, an employee acts within the course and scope of her employment if she is doing an act which is required or incident to her duties *or* it was performed for the benefit of the employer and not to serve her own purposes. *Neal v. Gatlin* (1973) 35 CA3d 871, 875; *Clark Equip. Co. v. Wheat* (1979) 92 CA 3d 503, 520. The employer is liable for the employee's actions irrespective of its wrongful nature, *assuming arguendo*, it is wrongful. *Neal*, supra. As such, even if the City Attorney is correct that Ms. Means' acted wrongfully, again - something we do not believe or concede, the City is still liable for her actions.

Further, Government Code Section 820.2 provides that:

> "a public employee is not liable for an injury resulting from [her] act
> or omission where the act or omission was the result of the exercise
> of the discretion vested in [her], whether or not such discretion be
> abused."

There can be no doubt that Ms. Means, in retaining ABS, to the extent that she did, was exercising her discretion by discharging her duties to run the airport as well, as efficiently, and as profitably as she could. She will be immune from liability.

HONORABLE SCOTT PETERS, COUNCIL PRESIDENT
HONORABLE MEMBERS OF THE CITY COUNCIL
September 7, 2006
Page 4

Additionally, Government Code Section 822.2 states that:

> "A public employee acting in the scope of [her] employment is not
> liable for an injury caused by [her] misrepresentation, whether or not
> such misrepresentation be negligent or intentional, unless [she] is
> guilty of actual fraud, corruption or actual malice."

The City Attorney has not even made allegations that would support "actual fraud, corruption or actual malice." At best, the City Attorney can say that Ms. Means did not follow the rules and even that is unclear. He has not been able to suggest why and he has certainly not alleged, because there is no evidence of (because it did not happen), that she authorized payment to ABS for personal or professional gain or out of "actual malice", i.e. malicious intent.

It might be helpful to know that "actual fraud" is not the same as "fraud". It requires something more. In fact, case law has defined it as, in addition to the essentials of common law deceit, a public employee who is motivated by corruption or actual malice, i.e., a conscious intent to deceive, vex, annoy or harm the injured party in his business. *Schonfeld v. City of Vallejo* (1975) 50 Cal. App. 3d 401, 410. Malice is defined as "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act." *Penal Code section 7.* "Actual malice" is defined by *Civil Code section 48a*, subdivision 4(d) in the context of defamation, as a "state of mind arising from hatred or ill will toward the plaintiff." Despite extensive discovery propounded on the City by Ms. Means, no evidence of any facts supporting malice or actual malice has been provided. There will never be any because Ms. Means was never acting with hatred or ill will. She never had a wish to vex, annoy or injure the City.

The immunities provided to government employees along with the complete lack of evidence of any intentional wrongful conduct will lead to a judgment being entered in Ms. Means' favor and against the City.

### III.

### The City Has Not Been Damaged

One of the essential elements of any cause of action is damages. In other words, in order for a lawsuit to succeed, the City must prove both liability and damages. We have already demonstrated that the City will be unable to prove that Ms. Means is liable to it. The City will also be unable to prove that it has been damaged, i.e. lost money as a result of her actions, assuming only for the sake of this discussion that the allegations are true.

The City asked ABS to do work for it – marketing studies, business plans, ways to enhance Brown and Montgomery Fields, among other things. ABS did the work. The City is saying that the work should have been competitively bid. So far, the City has yet to produce any evidence that if it had been competitively bid, it would have been able to get the same quality of work for less money. If it can not do that, it has suffered to no damages. As discussed above, the City has yet to show that the work was of no use to the City. To the contrary, the evidence will show that some actions were taken pursuant to ABS' work. Moreover, just because the City decided not to

HONORABLE SCOTT PETERS, COUNCIL PRESIDENT
HONORABLE MEMBERS OF THE CITY COUNCIL
September 7, 2006
Page 5

implement recommendations of a consultant does not mean that the work was of no value to the client. The City obtains reports on various issues on a regular basis. Some are done by City employees. Others are done by outside consultants. Reports often contain recommendations. The Division, Department, Mayor or City Council, depending on the appropriate level, may adopt some, all or none of the recommendations. That does not mean that the report, regardless of whether it was internal or external, was of no value to the City.

In sum, the City will be unable to show that it was damaged. This too will cause the suit to fail.

## IV.

### The City Attorney Lacked the Authorization to File this Suit

Section 40 of the Charter for the City of San Diego defines the scope of authority for the City Attorney. In October 2005, the City Council, through Acting Mayor Toni Atkins, retained a neutral third party to address, among others, the issue of whether the City Attorney has the unilateral authority to file and litigate lawsuits as he deems appropriate or whether the City Attorney must first obtain authorization from the City Council.

Robert Kehr, the neutral party retained, clearly and specifically articulated that the City Attorney represents the City. The City is an organization which, pursuant to California Rules of Professional Conduct 3-600, which acts "through its highest authorized officer, employee, body, or constituent overseeing the particular engagement." In this case, the "organization" acts through the City Council. As such, before filing any lawsuit, including this one, the attorney must obtain authorization from the client, i.e. the City Council.

In this case, Mr. Aguirre did not obtain authorization from the City Council before he filed this lawsuit. As such, it is an *ultra vires* act. That is, one which is beyond the scope of his authority. It therefore is void and will be dismissed by the court. The City Council should direct the City Attorney to dismiss the case before that happens.

## V.

### Consequences for Failing to Dismiss the Case Are Significant

Pursuant to the Government Code, employees and former employees are entitled to a defense provided at the City's expense. *Govt. C. Section 995.* There are certain limited exceptions to that requirement. The City Council, in denying Ms. Means a defense mistakenly relied on the argument that Ms. Means was acting outside the course and scope of her employment. That reliance is misplaced as outlined previously.

The City Council also relied on the allegations of fraud and corruption although there is no evidence of any as defined by case law. At best, the evidence shows that the Purchasing Agent paid ABS for work invoiced even though it was not approved by the Department Director or City Manager and sometimes not even the Deputy Director. It also shows that the Purchasing Agent never asked for documentation that approval authority had been delegated to the Deputy Director.

HONORABLE SCOTT PETERS, COUNCIL PRESIDENT
HONORABLE MEMBERS OF THE CITY COUNCIL
September 7, 2006
Page 6

It does not show that Ms. Means ever knew that she was violating any Administrative Regulation, Municipal Code provision or City Charter provision. Without being able to *prove* intentional conduct and bad motives, the City will lose this case. It cannot meet this obligation of proof.

Finally, the City Council relied on the provision allowing it to avoid paying for an employee's defense when there is a conflict of interest. *Govt. C.* 995.4(b). In a suit filed by Tracy Means against the City for an order requiring the City to pay for her defense (*Means v. City of San Diego*, GIC 864419), the City argued that the lawsuit was barred because of *Govt. C.* §995.4(b), i.e. that there was an actual conflict of interest. The court overruled that objection and refused to bar Ms. Means' lawsuit from going forward.

If the City Council chooses not to settle this matter now, when judgment is entered for Ms. Means as it most surely will be, the City will be liable to Ms. Means for all of her costs of litigation and all attorneys' fees expended in defense of this frivolous action. These amounts are significant now, are increasingly rapidly and by the time we conclude all of the litigation surrounding the unfounded allegations, they will be substantially more.

In addition, when this suit is concluded, Ms. Means will have the opportunity to sue the City for abuse of process and for violations of her rights under 42 U.S.C. 1983. Local governments and municipal corporations are "persons" subject to liability under this code section. *Monell v. Department of Social Services* (1978) 436 US 658. While a municipality can not be found liable under a *respondiat superior* theory, it may be found liable when it "causes the constitutional violation at issue." Here, the City would not be liable because of Mr. Aguirre's actions in filing this ill-founded suit but rather for its own actions in allowing it go forward and in denying Ms. Means a defense.

She will also have the opportunity to sue Michael Aguirre personally for violations of her rights under 42 U.S.C. 1983. He also is a "person" under this code section. He can and will be held individually liable for his actions against her. Unlike the City, Mr. Aguirre will be exposed to punitive damages in addition to the general and special damages likely to be awarded.

In this follow-on lawsuit, Ms. Means will be able to recover her lost wages and benefits that were caused by the filing of the City's suit against her. As a direct result of this suit, she had at least two job offers withdrawn - one of which she had already accepted and was heading to when the suit was filed, others not made when she told them about this litigation, and finally has ended up at an airport which is minuscule in comparison to San Diego and the responsibilities she had here. Her career has taken a significant "u-turn" as a direct result of this frivolous suit.[3] Obviously, her income has taken a similar and significant downward turn. The City will be responsible for those losses.

---

[3] Again, even assuming arguendo that she did anything wrong, there is no evidence that she received any training from anyone in purchasing or from her superiors that would have enabled her to comply in the manner asserted by the lawsuit that she should have. Moreover, as COO Ronne Froman has said, every department did things differently and no one was held to a particular standard. Why Ms. Means is being sued as opposed to anyone else is still unknown and inexplicable.

HONORABLE SCOTT PETERS, COUNCIL PRESIDENT
HONORABLE MEMBERS OF THE CITY COUNCIL
September 7, 2006
Page 7

## VI.

### Conclusion

This wrong can never be fully corrected. The City can, however, begin the process by bringing this unfortunate chapter to a close. In order to do so, the City Council would need to adopt a resolution directing the City Attorney to dismiss *City of San Diego v. Means*, GIC 858344 and to reimburse Ms. Means for her damages including her attorneys fees and litigation costs and her lost wages and benefits to date and for the next three years. This length of time is reasonable as it will take her at least that long to get her career back on track. In exchange, we will dismiss *Means v. City of San Diego*.

We are certain that Mr. Aguirre has represented to you that this suit is part of his reform agenda, part of an attempt to hold people accountable who have engaged in fraud and corruption. While those are admirable goals, they must be pursued with care and, most importantly, *with evidence*. Neither of those features is present here. Ms. Means always acted with the best interests of the City in mind. She had no special relationship with ABS. She merely thought they did a good job in providing the City service. She had no reason to believe any one thought differently.

Tracy Means was a star employee for the City until she made a lot of people mad by presenting evidence to the decision-making bodies that the proposed Brown Field expansion was not good for San Diego. She made more enemies when she proposed development which might have caused Gibbs Aviation to lose its lease. Her performance evaluations reflect the success of her leadership as do the financial figures for her division. She is not deserving of the treatment she is currently receiving. It is time for the City Council to bring this matter to resolution.

Your prompt response to this letter is critical. Please provide it within two weeks of the date of the letter. If you have any questions, I would be happy to meet with any of you or your staff. Thank you for your anticipated cooperation. My goal, as I know is each of yours, is to get the City of San Diego back on track. Resolving this litigation is another step on that path.

Sincerely,

ROSENSTEIN, WILSON & DEAN, P.L.C.

Paula S. Rosenstein, Esq.

PSR/st

cc:     Tracy L. Means
        James F. Pokorny, Esq.
        Hon. Jerry Sanders, Mayor
        Michael J. Aguirre, Esq., City Attorney
        Sheila L. Ferguson, Esq., Deputy City Attorney

EXHIBIT 2

1   Paula S. Rosenstein, Esq. (SBN 126264)
    ROSENSTEIN, WILSON & DEAN, P.L.C.
2   1901 First Avenue, Suite 300
    San Diego, California 92101
3   Telephone: (619) 232-8377

4   Attorneys for Plaintiff
    TRACY MEANS

5

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                IN AND FOR THE COUNTY OF SAN DIEGO

10

11  TRACY MEANS,                        CASE NO. GIC   864419

12          Plaintiff,                  COMPLAINT FOR DECLARATORY
                                        RELIEF, MANDAMUS AND ATTORNEYS'
13  v.                                  FEES

14  CITY OF SAN DIEGO and DOES 1-30,
    inclusive,
15
            Defendants.
16

17

18          Plaintiff brings this action for specific performance, or, in the alternative, for declaratory relief,

19  to enforce her rights under California Government Code § 995 to be defended at the City of San

20  Diego's expense in various civil proceedings brought against her.  This court has jurisdiction to

21  determine this matter pursuant to C.C.P. § 1060 and 1084, et seq.

22          Plaintiff Tracy Means (hereinafter "Plaintiff" or "Means") alleges:

23          1. Plaintiff is, and at all times herein mentioned, was a resident of the County of San Diego,

24  State of California.

25          2. Defendant City of San Diego is, and at all times herein mentioned was, a government entity

26  within the State of California which is governed by the California Government Code, among other laws

27  and regulations.

28          3. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-30,

                                    - 1 -
                                  COMPLAINT

1   inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this

2   complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes

3   and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the

4   occurrences herein alleged and that Plaintiff's injuries as herein alleged were proximately caused by the

5   aforementioned defendants.

6      4. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned,

7   Defendants, and each of them, were agents, servants and employees of each of the remaining

8   defendants. Further, Defendants, and each of them, in doing the things hereinafter alleged, were acting

9   within the course and scope of such agency, servitude and employment, and with the permission and

10   consent of each of the other defendants.

11      5. Plaintiff has been named by City Attorney Michael Aguirre in a civil action styled City of

12   San Diego, a municipal corporation and a political subdivision of the State of California, Plaintiff v.

13   Tracy L. Means (aka Tracy L. Williams), an individual, et al., San Diego Court Case No. GIC 858344.

14   The Complaint is attached hereto as Exhibit "A".

15      6. This Complaint was filed on December 13, 2005 and served on Plaintiff on December 15,

16   2005. Plaintiff filed an Answer to that Complaint on January 13, 2006. A copy of her Answer is

17   attached hereto as Exhibit "B".

18      7. Based upon Government Code § 995, Plaintiff provided a tender of defense to the City in

19   connection with the civil action via a letter dated January 10, 2006. A copy is attached hereto as

20   Exhibit "C".

21      8. The City asked for two extensions of time in which to respond to the tender of defense

22   letter. Finally, on March 7, 2006, the City Council refused to provide Ms. Means a defense as is

23   required under Government Code § 995.

24      9. Because Ms. Means could not wait for the City to decide whether or not it was going to

25   meet its obligations under Government Code § 995, she was required to obtain counsel to defend her

26   in the lawsuit file against her by Mr. Aguirre.

27      10. Mr. Aguirre's Complaint accuses Plaintiff Tracy Means of awarding fourteen written

28   purchase order contracts for consulting services to Co-Defendant Airport Business Solutions, Inc. The

1   Complaint alleges that the purchase order contracts resulted in actual payments in the sum of

2   $218,527.00 to Defendant Airport Business Solutions, Inc. (Exhibit "A", 3:6-10)

3       11. In a very similar situation, wherein Mr. Aguirre sued various employees and former

4   employees of the City of San Diego connected to the San Diego City Employees Retirement System

5   ("SDCERS") Board of Administration ("Board"), the City hired the law firm of Procopio, Cory,

6   Hargreaves & Savitch, L.L.P. ("Procopio") to advise it as to whether the City was obligated to provide

7   a defense for the Defendants in that action. In a Memorandum dated July 14, 2005 and made public

8   on or about August 2, 2005, Procopio concluded that the City was obligated to defend the Defendants

9   in the civil actions in which they are named as Defendants and Cross-Defendants on two grounds, a

10  resolution which the City Council had adopted some years before regarding pension board members

11  and the City's obligations under Government Code § 995. The resolution's grounds are inapplicable

12  here, although the opinion regarding the applicability of Government Code § 995 is directly on point.

13  See also San Diego Superior Court Case No. GIC 852293.

14      12. On February 27, 2006 and again on March 7, 2006, the City Council addressed the

15  question of whether the City would provide Plaintiff Tracy Means a defense in the civil action. A

16  motion was made to deny Ms. Means a defense. The motion passed.

17      13. More than twenty days have passed without the City's agreeing to provide Plaintiff with

18  a defense. See California Government Code § 995.2. To date, the City Council has not authorized

19  the City action against Ms. Means.

20                          **FIRST CAUSE OF ACTION**

21                          **DECLARATORY RELIEF**

22      14. Plaintiff realleges and incorporates herein by reference each and every allegation in

23  Paragraphs 1-13 of this Complaint set out hereinabove.

24      15. Procopio, as the City Council's agent, explicitly admitted that the City employees involved

25  in that representation were, at least, covered by California Government Code § 995's provisions. As

26  noted under California Evidence Code § 1222, these admissions are admissible against the City:

27      "The duty to provide employees with a defense in civil actions is mandatory, unless
        one of the exceptions include in Government Code § 995.2 and 995.4 exist".
28      Stewart v. City of Pismo Beach (1995) 35 Cal App 4th 1600, 1605, review denied.

- 3 -
COMPLAINT

1    16.  To refuse to provide a defense, the City must determine that one of the three specified

2    conditions exist.  The City Attorney has previously advised the City that such a determination is

3    required before the City may refuse to provide a defense.  See Exhibit "D", report from the City

4    Attorney to the Mayor and City Council of the City of San Diego, February 15, 2005 at P.2. ("Ms.

5    Means would be entitled to a defense by the City unless an exception under California <u>Government</u>

6    <u>Code</u> §§ 995.2 or 995.4 is found to be applicable in this circumstance..")

7    17.  No sufficient findings which allow the denial of a defense under <u>Government Code</u> § §

8    995.1 or 995.4 have been made against Ms. Means.

9    18.  The City Council, based upon incorrect legal advice from City Attorney Michael Aguirre,

10    attempted to suggest that Defendant Means was acting outside the course of her employment

11    (<u>Government Code</u> § 995.2(a)(1)) or that there was a conflict of interest with the City.  <u>Government</u>

12    <u>Code</u> § 995.2(a)(3).  However, they identified no facts upon which to make this determination, there

13    was no hearing where evidence was presented such that they could make that determination and

14    therefore, it has never made the necessary determinations.

15    19.  Plaintiff is entitled to have the City to pay for her defense under <u>Government Code</u> § 995.

16    **SECOND CAUSE OF ACTION**

17    **MANDAMUS**

18    20.  Plaintiff realleges and incorporates herein by reference each and every allegation in

19    Paragraphs 1-19 of this Complaint set out hereinabove.

20    21.  Plaintiff Tracy Means was at all times herein relevant to the actions taken in the underlying

21    suit which is Exhibit A hereto an employee of the City of San Diego.

22    22.  As an employee and even now as a former employee, Defendant City has a clear and

23    present duty to provide a defense to Plaintiff at Defendant City's expense.  This duty is statutory

24    pursuant to <u>Government Code</u> section 995.

25    23.  On the same basis, i.e. <u>Government Code</u> section 995, Plaintiff has a clear, present and

26    beneficial right to have Defendant City perform its duty and provide her a defense to the lawsuit which

27    is Exhibit A hereto at Defendant City's expense.

28    24.  Defendant's decision to deny Plaintiff a defense leaves her with no adequate remedy other

1  than an order of *Mandamus* compelling Defendant City to provide Plaintiff with all attorneys' fees and

2  costs necessary to fully and completely defend Plaintiff from the allegations made against her in the

3  underlying litigation, Exhibit A hereto.

4      25. Because of the City's actions, Plaintiff was required to retain counsel and the litigation has

5  moved forward. Requiring her to change counsel would unfairly impair her defense and therefore any

6  order compelling Defendant to provide Plaintiff with the attorneys' fees and costs for a defense to the

7  underlying litigation must include a provision allowing her to retain and maintain the counsel of her

8  choosing.

9  **THIRD CAUSE OF ACTION**

10  **AWARD OF ATTORNEYS' FEES AND COSTS**

11      26. Plaintiff realleges and incorporates herein by reference each and every allegation in

12  Paragraphs 1-25 of this Complaint set out hereinabove.

13      27. California Government Code § 800 provides, in part:

14      "In any civil action to appeal or review the award, finding or other determina-
   tion of any administrative proceeding under this code or under any other provision of

15  state law ... where it is shown that the award, finding, or other determination of the
   proceeding was the result of arbitrary or capricious action or conduct by a public entity

16  or an officer thereof in his or her official capacity, the Complainant, if he or she
   prevails in the civil action, may collect reasonable attorneys' fees ...".

17

18      An administrative proceeding under this section includes the City Council resolution that

19  determines an issue. See, e.g., Reeves v. City of Burbank (1979) 94 Cal App 3d 770, 775-777

20  (determining that City Council vote on application for a conditional use permit was administrative,

21  rather than legislative, thus giving rise to Government Code § 800 relief, and affirming trial court's

22  award of attorneys' fees under Government Code § 800). "The phrase 'arbitrary or capricious'

23  encompasses conduct not supported by a fair or substantial reason, stubborn insistence on following

24  an unauthorized course of action, and a bad faith legal dispute". Gilliland v. Medical Board (2001) 89

25  Cal App 4th 208, 220, citations and alterations omitted.

26      28. Additionally, C.C.P. § 128.5 provides that:

27      "Every trial court may order a party, the party's attorney, or both, to pay any
   reasonable expenses, including attorneys' fees, incurred by another party as

28  a result of bad faith actions or tactics that are frivolous or solely designed to
   cause unnecessary delay".

In this case, the City Attorney named Plaintiff as a Defendant in the civil action. Then, without justification, the City, acting through the City Council, breached its obligation to provide Plaintiff with a defense. This heavily burdens and unfairly surprises Plaintiff, who had every reason to believe that she would be defended as required by law.

28. The City Council acted contrary to its legal obligations under <u>Government Code</u> § 995. As noted previously, the City, in a very similar situation, has frankly admitted that it is obligated to provide Plaintiff a defense. The City Attorney knows that the City has acted in bad faith. Under these circumstances, the unexcused refusal to perform an acknowledged duty is oppressive, motivated by bad faith, frivolous, lacking in any reasonable justification and arbitrary and capricious. Therefore, attorneys' fees and costs in bringing this action are merited.

### RELIEF SOUGHT

29. For the reasons stated herein, Plaintiff requests a determination by the court that the City, pursuant to <u>Government Code</u> § 995, must pay for her defense in the civil action.

30. In the alternative, Plaintiff requests that an order mandating that the City pay for Plaintiff's defense in the underlying civil action be issued.

31. Further, it would be inequitable at this stage to permit the City to substitute counsel of its own choosing, to force Plaintiff to begin fresh with new counsel and force her to bear the expense for legal assistance she has already obtained.

32. In addition, Plaintiff asks that this court grant her reasonable attorneys' fees and costs of suit for bringing this action, as provided under <u>Government Code</u> § 800 and <u>C.C.P.</u> § 128.5.

33. Plaintiff further requests that the court grant Plaintiff any and all other fees or costs deemed reasonable or appropriate by the court.

Dated: 4/13, 2006.                    Respectfully submitted,

                                      ROSENSTEIN, WILSON & DEAN, P.L.C.


                                      By: _____
                                          Paula S. Rosenstein, Esq.
                                          Attorneys for Plaintiff Tracy Means

EXHIBIT 3

F I L E D

Clerk of the Superior Court

NOV 0 8 2007

By: A. Gerba, Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO, CENTRAL DIVISION

| | |
|---|---|
| TRACY MEANS,<br><br>       Plaintiff,<br><br>  v.<br><br>THE CITY OF SAN DIEGO, and DOES 1-30, inclusive<br><br>       Defendants. | Case No.: GIC 864419<br><br>**JUDGMENT BY COURT UNDER CCP § 437c IN FAVOR OF DEFENDANT CITY OF SAN DIEGO AND AGAINST PLAINTIFF TRACY L. MEANS**<br><br>I/C/J:        Hon. Joan M. Lewis<br>Dept.       65<br>Complaint Filed:  April 14, 2006 |

      Plaintiff Tracy Means and Defendant City of San Diego filed cross-motions for summary judgment pursuant to CCP § 437c. Both motions were heard on September 21, 2007 at 9:30 a.m. in Department 65 of this Court, the Honorable Joan M. Lewis presiding. After hearing argument from both parties and having considered all documents filed in support of, and in opposition to, both motions, the Court finds and rules as follows:

      Plaintiff Tracy Means' ("Means") "First Amended Complaint for Mandamus" ("FACM") complains that Plaintiff was entitled to have her former employer, the City of San Diego (the "City"), pay for her defense in the underlying City of San Diego v. Means action. Means asserts that insufficient findings were made to allow the denial of a defense under Gov. Code Secs. 995.2 or 995.4 and that she is entitled to have the City pay for her defense under Gov. Code Sec. 995.

///

1

1    Both Means and the City have filed motions for summary judgment. The parties' requests
2  for judicial notice are granted. The City's objections to the Requests for Judicial Notice are
3  overruled.

4    Plaintiff Tracy Means' motion for summary judgment is denied as the Court concludes
5  that Plaintiff has failed to establish, at a minimum, that the exception found at Gov. Code Sec.
6  995.2(a)(3) does not provide a defense to this action.

7    The City's evidentiary objections to Paras. 1, 2 and 4 of the Means' declaration are
8  overruled. The remaining objections to that declaration are sustained.

9    Defendant the City of San Diego's notice of motion for summary judgment provided four
10  bases for why the FACM lacks merit, including that the City acted within its discretion to deny
11  Means' request for fees because to have done so would have created a specific conflict of interest.

12    Gov. Code Sec. 995 requires a defense for an employee who has been sued "in his official
13  or individual capacity or both, on account of an act or omission in the scope of his employment as
14  an employee of the public entity" "except as otherwise provided in Sections 995.2 and 995.4."
15  Sec. 995.2(a)(3) permits the denial of a defense where the defense "would create a specific
16  conflict of interest between the public entity and the employee or former employee." The
17  Resolution denying Means' request for a defense included a finding that "an inherent conflict of
18  interest exists between the City of San Diego and former employee Tracy Means in that the City
19  is a plaintiff in the action against Ms. Means in the [underlying] lawsuit, . . ." [The City's Ex. 10]

20    Having reviewed the various complaints in the underlying action and the subject
21  Resolution, the Court concludes that the City appropriately denied a defense on the basis that the
22  defense "would create a specific conflict of interest between the public entity and the employee or
23  former employee" and therefore concludes that the FACM lacks merit and summary judgment in
24  favor of the City is appropriate.

25    The City's evidentiary objections to Paras. 3, 4, 5, 12 to the Rosenstein declaration are
26  overruled.

27    The remaining objections to that declaration are sustained.

28    This ruling disposes of the entire action.

2

1    THEREFORE, IT IS ORDERED ADJUDGED AND DECREED:

2    THAT Plaintiff Tracy Means take nothing by her complaint and that Judgment be entered

3    in favor of Defendant City of San Diego.

4    Costs to be awarded to the prevailing party pursuant to statute.

5    Dated: _11- 8___, 2007

6

7

8                                              JOAN M. LEWIS

9                                              _____
                                               Honorable Joan M. Lewis
10                                             Judge of the Superior Court

11   Approved as to form:

12   Dated: _____, 2007

13   Rosenstein, Wilson & Dean, PLC

14

15

16   By_____
     Paula S. Rosenstein, Esq.
     Attorneys for Plaintiff Tracy L. Means
17

18

19

20

21

22

23

24

25

26

27

28                                                                          3

EXHIBIT 4

1  Paula S. Rosenstein, Esq. (SBN 126264)
   ROSENSTEIN, WILSON & DEAN, P.L.C.
2  1901 First Avenue, Suite 300
   San Diego, California 92101
3  Telephone: (619) 232-8377
   Facsimile: (619) 238-8376
4
   Attorneys for Defendant
5  Tracy L. Means

6

7

8                      **SUPERIOR COURT OF CALIFORNIA**

9                  **IN AND FOR THE COUNTY OF SAN DIEGO**

10 | CITY OF SAN DIEGO, a municipal | CASE NO. GIC 858344
   | corporation and a Political Subdivision of the |
11 | State of California and the PEOPLE OF THE | NOTICE OF RULING: DEFENDANT
   | STATE OF CALIFORNIA, acting by and | TRACY L. MEANS' MOTION FOR AN
12 | through San Diego City Attorney, Michael J. | AWARD OF REASONABLE ATTORNEYS'
   | Aguirre | FEES AND COSTS OF DEFENSE
13 |
   |                    Plaintiff, | I/C/J:   Hon. Joan M. Lewis
14 | | Dept.:  65
   | v. | Date:   January 4, 2008
15 | | Time:  8:30 a.m.
   | TRACY L. MEANS, (aka Tracy L. Williams) |
16 | an individual; MICHAEL HODGES, an | Complaint Filed: December 13, 2005
   | individual; ROBERTA THOMPSON, an | Trial Date:  Not Applicable
17 | individual; AIRPORT BUSINESS |
   | SOLUTIONS, INC., a Georgia Corporation; | Tentative Ruling Available 1/3/08 at 4:00 p.m.
18 | ABS AVIATION CONSULTANCY, INC., | at (619) 531-3690 or www.sdcourt.ca.gov
   | d/b/a AIRPORT BUSINESS SOLUTIONS, a |
19 | Florida Corporation; THOMPSON |
   | AVIATION CONSULTING, INC., a Florida |
20 | Corporation; and Does 1-20, inclusive, |
   |
21 |                    Defendants. |

22

23         On January 4, 2008 at 8:30 a.m. in Department 65 of the above-entitled Court, Hon. Joan M.

24 Lewis confirmed her tentative ruling on Defendant Tracy L. Means' Motion for an Award of

25 // //

26 // //

27 // //

28 // //

NOTICE OF RULING: DEFENDANT' TRACY L. MEANS' MOTION FOR AN AWARD
OF REASONABLE ATTORNEYS' FEES AND COSTS OF DEFENSE

1  Reasonable Attorneys' Fees and Costs of Defense. A true and correct copy of the ruling is attached

2  hereto and incorporated herein as Exhibit "A".

3  Dated: _1 / 7_, 2008.              Respectfully submitted,

4                                     ROSENSTEIN, WILSON & DEAN, P.L.C.

5

6                                     By:

7                                         Paula S. Rosenstein, Esq.
                                          Attorneys for Defendant Tracy L. Means

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

NOTICE OF RULING: DEFENDANT' TRACY L. MEANS' MOTION FOR AN AWARD
OF REASONABLE ATTORNEYS' FEES AND COSTS OF DEFENSE

# EXHIBIT A

SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO
HALL OF JUSTICE
TENTATIVE RULINGS - January 03,2008

EVENT DATE: 01/04/2008          EVENT TIME:    08:30:00 AM      DEPT.: C-65
JUDICIAL OFFICER:Joan M. Lewis

CASE NO.:    GIC858344

CASE TITLE:  CITY OF SAN DIEGO VS MEANS

CASE CATEGORY: Civil - Unlimited         CASE TYPE:  Contract - Other

EVENT TYPE:  Motion Hearing (Civil)
CAUSAL DOCUMENT Motion for Attorney Fees, 11/29/2007
/DATE FILED:

On August 10, 2007, this Court granted Defendant's motion for summary judgment finding, in part, that the City had failed to submit sufficient evidence to create a triable issue of fact on the City's claim that the Defendant had acted with actual fraud, corruption or actual malice. The Court also found that the Defendant had demonstrated that she was acting within the course and scope of her employment during the times the subject of Plaintiff's complaint. With this ruling and these findings, the Defendant now seeks to recover her attorneys' fees and costs.

The Court concludes that Gov. Code Sec. 996.4 permits the Defendant to recover her fees in this case if the City's complaint was not an action or proceeding as described in Gov. Code Sec. 995.4. The City does not argue that this was an action brought pursuant to 995.4(b). Rather, the City maintains that subdivision (a) applies.

An action under 995.4(a) is one "brought by the public entity to remove, suspend or otherwise penalize" its employee or former employee. This was an action brought by a public entity against its former employee. Because this was not an action to remove or suspend, the question is whether or not this was an action to "otherwise penalize" the Defendant.

It is this Court's opinion that the "otherwise penalize" language has to be read in context with the language that precedes, resulting in the conclusion that subdiv. (a) was intended for disciplinary-type actions. Although the City's prayer in this case requested penalties, the primary claim made was for reimbursement of monies spent for the awarding of certain contracts. The Court does not believe this was an action to "penalize" the Defendant as contemplated by 995.4(a).

Accordingly, the Court believes that Defendant is entitled to recover her fees and costs incurred in defending this action.

In support of Defendant's motion her counsel lodged billing records that appear to seek reimbursement for fees and possibly costs incurred in other matters. Although these other matters may have some relation to the claims brought by the City here, the Court believes reimbursable fees and costs must be limited to those incurred specifically in defending this action and may not include fees and costs sought in any related action.

CASE TITLE: CITY OF SAN DIEGO VS MEANS       CASE NUMBER: GIC858344

This motion is therefore continued to February 8, 2008, at 8:30 a.m. On or before January 14, 2008, the Defendant is directed to submit supplemental papers -- including supplemental declarations and/or billing records -- reflecting only the fees and costs incurred in defending this action. On or before January 25, 2008, Defendant may file supplemental opposition.

EXHIBIT 5

## COUNTY OF SAN DIEGO
## HALL OF JUSTICE
### TENTATIVE RULINGS - February 07,2008

EVENT DATE: 02/08/2008       EVENT TIME:    08:30:00 AM        DEPT.: C-65

JUDICIAL OFFICER: Joan M. Lewis

CASE NO.:    GIC858344

CASE TITLE:  CITY OF SAN DIEGO VS MEANS

CASE CATEGORY: Civil - Unlimited         CASE TYPE: Contract - Other

EVENT TYPE:  Motion Hearing (Civil)
CAUSAL DOCUMENT
/DATE FILED:

As the Court indicated in its ruling of January 4, 2008, it believes that Defendant is entitled to recover her fees and costs incurred in defending this action pursuant to Gov. Code Sec. 996.4.

Sec. 996.4 permits the recovery of "reasonable attorney's fees, costs and expenses as are necessarily incurred" in defending the action. The Court has reviewed the supplemental papers and concludes that Defendant is entitled to recover her attorneys' fees in the amount of $245,130.

I concluding that this amount is appropriate, the Court rejects the City's contention that the hourly rate charged was unreasonable or that an allocation on the order of 60/40 would somehow be appropriate. The Court believes that Defendant has demonstrated that the vast majority of her counsel's time was spent defending this case. The amount eliminated from the fee request strikes the Court as a reasonable amount given the limited number of services performed in the Means v. City case. Moreover, the Court was not able to identify any charges improperly included in the time records that should have been allocated to the Means v. City case. In this regard, the Court is satisfied with Ms. Rosenstein's explanation regarding the entries of July 27, 2007.

As to the costs, the statute permits the recovery of reasonable "costs and expenses" necessarily incurred. The Court does not believe that Defendant would receive a "double recovery" if the costs sought by way of this motion were awarded. In the absence of any evidence to suggest these costs were not reasonable or were not necessarily incurred in defending this case, the costs are awarded as requested.

Defendant is therefore entitled to recover her attorneys' fees in the amount of $245,130 and her costs of $5,864.73. The award of costs is in addition to those costs permitted following this Court's December 14, 2007, ruling on Plaintiff's motion to tax