1 MICHAEL J. AGUIRRE, City Attorney
  JOE CORDILEONE, Senior Deputy City Attorney
2 California State Bar No. 73606
          Office of the City Attorney
3          1200 Third Avenue, Suite 1100
          San Diego, California 92101-4100
4          Telephone:  (619) 533-5800
          Facsimile:  (619) 533-5856
5

6 Attorneys for Defendant City of San Diego

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10 TRACY MEANS,                          Case No.  08cv0580 WQH (POR)

11              Plaintiff,               **DEFENDANT'S REPLY TO
                   v.                    PLAINTIFF'S OPPOSITION TO
12                                       MOTIONS UNDER: FRCP 12(b) TO
   CITY OF SAN DIEGO, a municipal corporation  DISMISS; FRCP 12(e) FOR MORE
13 and a Political Subdivision of the State of  DEFINITE STATEMENT; AND 12(f) TO
   California, and DOES 1-30, inclusive,        STRIKE PORTIONS**
14
                 Defendants.            **NO ORAL ARGUMENT UNLESS
15                                       REQUESTED BY COURT**
16
                                         Judge: Hon. William Q. Hayes
17                                       Courtroom: 4
                                         Date: June 9, 2008
18                                       Time: 11:00 a.m.
                                         Magistrate: Hon. Louisa S. Porter
19

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

Defendant City of San Diego Replies to Plaintiff's opposition to its motion to dismiss and related matters:

## I.    Introduction:

Plaintiff acknowledges a dismissal is mandated "'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"[1] The reason her lawsuit fails is because she cannot plead facts essential to the very nature of her grievance against the City; even if she could, what she seeks, is not permitted under the law. Judicially noticeable evidence and judicial admissions made by Plaintiff in her opposition pleadings demonstrate she cannot prove the **one thing** upon which her entire claim is based. She says the City's lawsuit against her was "frivolous" and no one in authority "took any meaningful action to stop the frivolous and unlawful underlying action." (FAC ¶ 31; emphasis added.) If the action against her was not frivolous, then she has no claim. When she filed her lawsuit, she could not prove the claim was frivolous because the case was not over. Today, she cannot prove the claim is frivolous because it is still not over.

The City of San Diego has the right to sue those who have caused it legal harm. Plaintiff herself tacitly acknowledges that the complaint against her and the amendments to it were valid on their face – she admits that rather than demur or move to dismiss the charges, she "filed an answer to" the original complaint and "also answered the Fourth Amended Complaint." (FAC ¶ 7.) The issues were joined in State Court. She was being sued for many things.[2]

_____

[1] "Plaintiff's Opposition to Defendant's Amended Motion *etc.*"(hereafter Opposition), p4: lls18-20 quoting *Newman v. Universal Pictures*, 813 F.2d 1519, 1521-22 (9th Cir. 1987).

[2] See the City's lawsuit against Plaintiff which is attached as Exhibit A to Plaintiff's First Amended Complaint. Although, in ¶ 7, she described Exhibit A as the City's Fourth Amended Complaint, she attached the City's First Amended Complaint. Differences between claims in the 1st Amended and 4th Amended Complaints are not critical to this inquiry and where they are not identical, they are noted below. The City's claims against Ms. Means are: Count 1 – Intentional misrepresentation of fact; Count 2 – Negligent misrepresentation of fact; Count 3 – Rescission (1stAC only); Count 4 – Money had and received (1stAC only); Count 5 – Violation of Bus. & Prof. §§ 17200 et seq. (Unfair Competition Act); Count 6 – Violation of Gov. Code §§ 12650 et seq. (False Claims Act – 4thAC only);  Count 7 – Violation of Gov. Code §§ 12650 et seq. (False record or statement to get a false claim paid or approved – 4thAC only); Count 8 – Violation of Gov. Code §§ 12650 et seq. (Conspiracy to defraud by false claim); Count 11 – Violation of Civ. Code § 1710(3) (Fraudulent concealment – 4thAC only); and, Count 12 – Violation of City Charter § 108 (4thAC only).

1

1    Her complaint alleges that the trial court ruled in her favor on a motion for summary

2   judgment. That fact, in and of itself, does not prove that the claims against her were

3   frivolous.³ Actually, the fact that the trial court ruled in her favor is apropos of nothing.

4   Plaintiff herself points out, "Following the entry of Judgment against the City, the City filed

5   an appeal to the Court's decision on the MSJ. **The appeal is still pending**."⁴ In other words,

6   the Appellate Court for the State of California, at any time, is free to rule that the State Trial

7   Court erred when it held in favor of Tracy Means on her motion for summary judgment. The

8   case will then be remanded for trial.

9    Ms. Means cannot guarantee that, once the underlying case goes to trial, she will win

10  the case against her. When she loses the State Court case, any imaginable 42 USC § 1983

11  claim will evaporate. She cannot have been injured by a legal judgment against her.

12  Forgetting all the other reasons to dismiss her claim, a decision to hear her claim during the

13  period that it is impossible for her to plead or prove that the lawsuit against her is **over,** that

14  she won it, and that there are no appeals available to the City, is an invitation to every

15  individual who has ever been sued or ever will be sued by a state or local government to come

16  to Federal Court and try or re-try the case. Reference to her own opposition pleadings shows

17  repeated instances by Plaintiff to forum shop and that she continues to do so to this day.

18    **II.    Plaintiff's Claims Have Already Been Adjudicated:**

19    Plaintiff herself makes it clear that this case belongs in the State Court and that the

20  things she seeks here she already sought in State Court. Consider the following. (In this

21  example, to avoid confusion, the lawsuit the City filed against Tracy Means is referred to as

22

23

24  _____

25  ³"Every case litigated to a conclusion has a losing party, but that does not mean the losing position was not arguably meritorious when it was pled. [Citation.] And just as an action that ultimately proves nonmeritorious

26  may have been brought with probable cause, successfully defending a lawsuit does not establish that the suit was brought without probable cause. [Citations.]" *Jarrow Formulas, Inc. v. LaMarche,* 31 Cal.4th 728 (2003).

27  ⁴Opposition, p3: lls4-5; emphasis added.

28

1  Means 1;[5] the lawsuit that Tracy Means filed in State Court against the City is referred to as

2  Means 2;[6] the present lawsuit now before this Court is Means 3.)

3       It is undisputed that in Means 2, Plaintiff had a full hearing on her lawsuit. She

4  brought a motion for summary judgment and she opposed a motion for summary judgment. A

5  sitting judge in the State Court ruled against her and held that she was not entitled to any

6  recovery at all and she was not entitled to attorney fees for that lawsuit.[7] The Court held that

7  her claims had no legal merit. She had the right to appeal that judgment and she did not do so.

8  When she didn't appeal Means 2, the issues involved in Means 2 including attorney's fees

9  incurred in that case, should have been over. But this Plaintiff persisted. Although she gave

10  up her right to appeal the decision she tried to get the money anyway.

11       She went before a State Court Judge in Means 1 and asked to have the attorney fees

12  she incurred in Means 2 awarded to her **even though she did not appeal the judge's award**

13  **which said she was not entitled to recover anything for that case**. After a full hearing and

14  after awarding her more than $250,000 for fees in Means 1, that judge told her she could not

15  recover attorney fees incurred in Means 2. Plaintiff again admits in her opposition that "As

16  part of the [State] Court's order [in Means 1], however, **Ms. Means was not permitted to**

17  **recover any of her fees and costs incurred as part of the unsuccessful Writ Case**."[8] She

18  appealed that ruling and then abandoned her appeal.[9]

19

20

---

21  [5]*City of San Diego, etc. v. Tracy Means, et al.,* GIC 858344

22  [6]*Tracy Means v. City of San Diego, et al.,* GIC 864419

23  [7]In Plaintiff's words: "Cross Motions for Summary Judgment were filed by the parties in the Writ Case which
alternatively argued that the City Council had done/ had not done what it was required to do in deciding whether
24  to provide or deny Ms. Means a defense in the underlying action. The City prevailed on its MSJ and Judgment
was entered in the City's favor." Opposition, p3: lls6-9.

25  [8]Opposition, p3: lls17-18; emphasis added.

26

27  [9]See Defendant's Supplemental Request for Judicial Notice items 6 and 7 representing Plaintiff Means' appeal
in Means 1 "from the court's ruling on January 4, 2008, . . . specifically from the portion of the ruling denying
Defendant's request to recover fees and costs associated with prosecuting the companion case of *Means v City of*
28  *SanDiego* [Means 2] . . ." (item 6) and then her subsequent abandonment of the appeal (item 7).

1    Nevertheless, today, in Means 3, she advises this Court that "If the Appellate Court

2    reverses the trial court's award of costs of defense, then, of course, she will seek to recover all

3    of the costs of defense incurred in the underlying case **as well as the Writ Case**."[10] The State

4    Court Judge in Means 1 considered her legal arguments and ruled against her.[11]

5    She had her day in Court – twice. She lost both times. She had the right to appeal –

6    twice. **She gave up her right to appeal twice.** Nevertheless, she wants to use the Federal

7    Court as a forum to re-litigate this matter even though the matter has been fully argued and

8    briefed and put before a Court of competent jurisdiction. Twice. This is precisely the kind of

9    abuse of the judicial system that Court was talking about in *Younger v Harris,* 401 U.S. 37

10   (1971).

11   Under *Younger v. Harris*, 401 U.S. 37, . . . (1971), and its progeny, a federal
     court should abstain from hearing a case that would interfere with ongoing
12   state proceedings.[fn] The Supreme Court has explained that the "importance
     of the state interest in the pending state judicial proceedings and in the federal
13   case calls Younger abstention into play," and that "[s]o long as the
     constitutional claims of respondents can be determined in the state proceedings
14   and so long as there is no showing of bad faith, harassment, or some other
     extraordinary circumstance that would make abstention inappropriate, the
15   federal courts should abstain." *Middlesex*, 457 U.S. at 435 . . .

16   [The footnote to this passage states:] *Younger* dealt with ongoing state
     criminal proceedings, but the same abstention principle was extended to civil
17   actions in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457
     U.S. 423, 432 . . . (1982) ("The policies underlying *Younger* are fully
18   applicable to noncriminal judicial proceedings when important state interests
     are involved.").

19

20   *Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*, 505 F.3d 860 (9th Cir., 2007).

21   And note that it is not merely her current loss of attorney fees from the writ case that she

22   wants to relitigate. Consider again the quoted language from her opposition papers with

23   emphasis on a different part of her argument. "**If** the [State] Appellate Court reverses the trial

24   court's award of [$250,000 in] costs of defense, [incurred in Means 1] then, **of course**, she

25   will seek to recover all of the costs of defense **incurred in the underlying case** as well as the

26

27   ---
     [10]Opposition, p3: lls24-26; emphasis added.

28   [11]The same Judge heard all the arguments in both Means 1 and Means 2.

4

1    Writ Case."[12]

2          In other words, Tracy Means does not care what the State Court does. At the Trial

3    Court level, she was awarded about $250,000 in fees. If we accept her at her word, this award

4    is a *bona fide* judgment and she is entitled to the money. However, notwithstanding the fact

5    that she already got an award of fees for Means 1, she nevertheless chose to include here in

6    Means 3, a claim for the exact same award of fees.[13] If wins in State Court she wants the

7    money. If she loses in State Court she wants to retry the issue here.

8          **III.    This Is a Malicious Prosecution Lawsuit and Nothing Else**:

9          At pages 11 and 12 of her opposition, Plaintiff does aught but gainsay Defendant's

10   assertion that she is "not pursuing a malicious prosecution claim."[14] The allegations of her

11   complaint show the contrary. According to Plaintiff, every injury she suffered, every

12   wrongful act alleged against the City, and the source of all injuries she allegedly suffered

13   came about because the City filed a lawsuit against her. It is that and nothing more. She says

14   the City maintained the action after she informed it that it was "baseless."[15] (FAC ¶ 13.) She

15   pleads the following:

16          After she left her employment with the City, the City sued her. (FAC ¶ 6.)[16]

17          She alleges "repeated attempts . . . to have the lawsuit withdrawn . . ." (FAC ¶
            14.)

18

19

20   [12]Opposition, p3: lls24-26; emphasis added.

21   [13]She describes her damages thus: "Plaintiff was required to retain counsel to defend the underlying action and
     therefore incurred significant costs and attorneys fees which would have been unnecessary . . ." (FAC ¶ 23; FAC
22   ¶ 36; FAC ¶ 46.)

23   [14]Opposition, p11: lls24-25.

24   [15]"'[C]ontinuing to prosecute a lawsuit discovered to lack probable cause' may also support a claim of malicious
     prosecution. [Citation.] 'Continuing an action one discovers to be baseless harms the defendant and burdens the
25   court system just as much as initiating an action known to be baseless from the outset.' [Citation.]" *Sycamore
     Ridge Apartments LLC v. Naumann,* 157 Cal.App.4th 1385, 1398 (2008).

26

27   [16]In the complaint she only says she "left her employment" with the City. In State Court pleadings she admits
     she was fired after an independent fact-finding body (one having no relationship to the City Attorney she loves
     to vilify) found that she committed malfeasance in office. The complaint the City filed against her used language
28   from the fact-finding report as the basis for the charging allegations.

1    She says the City was "deliberately indifferent and refused to stop the loss of her
2    life, liberty or property interests" she "**was suffering by the continuation of the
     underlying action.**" (FAC ¶ 20; emphasis added.)

3    She says the City's "actions, failure to act, deliberate indifference, arbitrary
     and/or capricious conduct" caused her harm. (FAC ¶ 22.)

4
5    She says "**Because of the Defendants' actions, Plaintiff was required to retain
     counsel to defend the underlying action and therefore incurred significant
     costs and attorneys fees which would have been unnecessary . . .**" (FAC ¶ 23;
6    FAC ¶ 36; FAC ¶ 46; same language repeated several times in the complaint;
     emphasis added.)

7    She adds that the City never "**took any meaningful action to stop the frivolous
8    and unlawful underlying action**." (FAC ¶ 31; emphasis added.)

9    She says The City "encouraged, convinced, and/or **allowed the underlying
     action to** continue against Plaintiff . . ." (FAC ¶ 43; emphasis added.)

10
11   She says the City's "actions, failures to act, and/or deliberate indifference
     towards the harm Plaintiff suffered were carried out **because of their failure and
     refusal to examine the basis, evidence and legitimacy of the underlying
12   action**." (FAC ¶ 45; emphasis added.)

13        As noted in the City's moving papers, the current action was filed **solely** because

14   the City sued her and refused to pay a lawyer to defend her. In every way imaginable,

15   she pleads how the City's evil motive, intent, and procedures led to the one operative act

16   of filing and maintaining a lawsuit against her. She says suit was filed without probable

17   cause. (She calls it "baseless litigation" in ¶ 13 of her FAC but in both State and Federal

18   Court "baseless" actions and actions without "probable cause" are co-equal terms.)[17]

19        Professor Witkin defines malicious prosecution actions as follows:

20   Malicious prosecution consists of the initiation and maintenance of legal
     proceedings against another with malice and without probable cause.
21   [Citation.] The proceedings on which the tort is based may be criminal
     [citation], civil [citation], or administrative [citation] in nature. [Citations.]
22
     The elements of the tort, which must be established by a preponderance of
23   the evidence, are (a) the institution of an action at the direction of the
     defendant in the malicious prosecution suit (b) without probable cause and
24   (c) with malice, (d) termination of the initial action favorably to the plaintiff
     in the malicious prosecution suit, and (e) resulting damage. [Citations.]
25

26

27   ────────────────────
     [17]*Amarel v. Connell*, 102 F.3d 1494, 1518 (9th Cir., 1996); *Sycamore Ridge Apartments LLC v. Naumann*, 157
28   Cal.App.4th 1385, 1398 (2008).

6

1   IX Torts § 469 Witkin, *Summary of California Law*, (10th Ed. 2007). Make no mistake.

2   Plaintiff can call it anything she wants, but this **is** a malicious prosecution action and

3   nothing else. In California, such actions are disfavored when brought against ordinary

4   litigants and they are flatly prohibited against public entities.

5       Under existing [California] law, the only common law tort claim that treats the
        instigation or bringing of a lawsuit as an actionable injury is the action for
6       malicious prosecution. The actionable harm is in forcing the individual to
        expend financial and emotional resources to defend against a baseless
7       claim.[Citation.] The bringing of a colorable claim is not actionable; plaintiff
        in a malicious prosecution action must prove that the prior action was brought
8       without probable cause and was pursued to a legal termination in plaintiff's
        favor. [Citations.] We have joined other courts in recognizing the cause of
9       action as a disfavored one because it may deter judicial resolution of
        differences. [Citation.] In fact we have recently refused to vest the jury with
10      the task of determining whether plaintiff has demonstrated that the prior action
        was brought without probable cause; a court must make the determination "[t]o
11      avoid improperly deterring individuals from resorting to the courts for the
        resolution of disputes...." [Citation.] The probable cause requirement is
12      essential to assure free access to the courts; the cause of action is the result of
        an accommodation "between the freedom of an individual to seek redress in
13      the courts and the interest of a potential defendant in being free from
        unjustified litigation." [Citation.] Obviously if the bringing of a colorable
14      claim were actionable, tort law would inhibit free access to the courts and
        impair our society's commitment to the peaceful, judicial resolution of
15      differences.

16  *Pacific Gas and Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1130-31 (1990).

17      As Defendant has shown in its moving papers, because her complaint is a

18  malicious prosecution claim pleaded three ways, it is not cognizable under 42 USC §

19  1983; the only exception is as noted in *Cline v Brusett,* 661 F2d 108 (9th Cir., 1981)

20  permitting only malicious prosecutions based upon **criminal** charges brought against an

21  individual with the intent of denying that individual equal protection under the law.

22      An example of the kind of allegations required to comply with the **exception** to

23  the rule can be found in *Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir., 1987). That

24  Plaintiff's complaint met the exception to the general rule by showing the criminal

25  prosecution was conducted with intent to deprive Plaintiff equal protection of the laws –

26  the Plaintiff, a black man, alleged that, in addition to the act of malicious prosecution, the

27  defendants hurled racial epithets at him. The Court held that "pleading that racial slurs

28  were directed against him, Usher has made an allegation of racial animus sufficient to

1  survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Therefore, Usher has

2  adequately pleaded causes of action under 42 U.S.C. § 1985(2) and (3)." *Id.,* at 561.

3      Turning again to the Plaintiff's opposition papers, once one accepts "all factual

4  allegations of the complaint as true and draw[s] all reasonable inferences in favor of the

5  nonmoving party"[18] the Court should grant the motion to dismiss because the facts as

6  pleaded do not support the legal claims made.

7      **IV.    Plaintiff Has No Defense to the Claim Preclusion Rule**:

8      Plaintiff blended several responses together in her attempt to avoid the claim

9  preclusion rule as it applies to Means 2. At page 5 of her brief, section IV, she engages in

10  crafty word selection and combinations of legal theories. In one paragraph she argues

11  because there was no prior "civil suit for damages" that she is free to file this lawsuit.

12  She also argues that there was no requirement to file a "compulsory cross-complaint"

13  and that the *Younger* doctrine does not apply.

14      However, , there is no requirement that a "civil suit for damages" be filed to rely

15  on the claim preclusion/*res judicata* theory; any suit will do. The Plaintiff's discussion

16  about whether a compulsory cross-complaint was required is a different issue from her

17  obligation, when filing her own lawsuit, to plead every claim she could have pleaded in

18  the State Court case of *Means v City* (Means 2).

19      The *Younger* doctrine is meaningless in the context of claim preclusion in Means

20  2. *Younger* deals with the case of *City v Means* (Means 1) which is still open and still

21  being litigated in State Court.

22      The claim preclusion defense is fatal to her complaint. The claim preclusion

23  focus is solely on the State Court case of *Means v City* (Means 2). The nature of the

24  relief sought (declaratory relief) does not matter. No Federal case holds the claim

25  preclusion rule does not apply to declaratory relief lawsuits. "It is well settled that *res*

26  *judicata* bars subsequent actions on all grounds for recovery that could have been

27  

28  

[18]Opposition, p4: lls21-24 quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001).

08cv0580 WQH (POR)

1  asserted, whether they were or not. [Citation.] . . . A litigant cannot avoid the preclusive

2  effect of *res judicata* by failing explicitly to plead federal constitutional violations in a

3  prior state action. . . . [F]ailure specifically to plead federal constitutional violations in

4  the state court complaint does not affect the application of *res judicata* . . .” *Palomar*

5  *Mobilehome Park Ass'n v. City of San Marcos,* 989 F.2d 362, 365, (9th Cir., 1993.)

6      Plaintiff's comments about Cal. Code of Civil Procedure § 426.60 describing

7  declaratory relief actions as special proceedings only means that if she had been sued for

8  declaratory relief she would not have had to cross-complain with any of her other claims. See

9  CCP § 426.30 discussing what must be pleaded in cross-complaints.

10      **V.      At Best, the Lawsuit Is Premature:**

11      The effect of this case is *contingent* upon what is currently occurring in State Court.

12  How do we know this? Because Plaintiff, in her opposition papers, tells us so. She says: “The

13  [State] Court's award did nothing to compensate her for her past and future lost wages and

14  benefits, career and reputation damage or emotional distress.”[19] Note that Plaintiff's

15  complaint does not claim that she was wrongfully terminated. The lost wages and benefits

16  described, the damage to her reputation, and the emotional distress all stem, she claims, from

17  the fact that a lawsuit was filed against her. But if that lawsuit against her is valid, if the City

18  prevails in that lawsuit, then her inability to get work, the damage to her career and

19  reputation, and the emotional distress all will have stemmed from the fact that she cheated her

20  employer and she got caught.[20]

21      Until we know the results of the State Court Appeal, then whether the claim was

22  frivolous, whether she suffered any damages and if so the amount of damages are all

23  unknown and unknowable.

24  */ / /*

25

26  _____

27  [19]Opposition, p4: lls2-4.

28  [20]Note the City's complaint attached as Exhibit A to Plaintiff's First Amended Complaint identifies six other co-defendants. Those individuals settled out of the case by paying money to the City.

9

## VI.    Conclusion:

It is unnecessary to respond to the balance of Plaintiff's arguments. The issues as to the uncertainty of the claims and the improper material alleged are covered in the opening brief.

What happened here is the Plaintiff got caught awarding sweetheart contracts to friends of hers. An independent fact-finding panel reviewed what she did, gave her every opportunity to be heard and then concluded that she needed to be fired. She did not challenge her firing by requesting a Civil Service Commission hearing. The City sued her and her friends to recover some of the hundreds of thousands of dollars she funneled off in illegal contracts to friends.

The how and the why of a summary judgment in her favor at the Trial Court level in Means 1 is pending in another jurisdiction. But some things are certain and are true here regardless of what happens in Means 1. They are: 1) she filed two lawsuits against the City. 2) They have the same title. 3) As Defendant pointed out in the moving papers, the misconduct pleaded against the City in this case (Means 3), is, mostly a *verbatim* copy of the same factual misconduct pleaded against the City in Means 2. 4) She could have pleaded any theory of recovery that those identical facts would support in Means 2. 5) The City filed its suit and refused to defend her and the judgment on that suit was not final when she filed Means 2. 6) Those exact same facts were true when she filed Means 3. 7) Plaintiff lost Means 2 completely. 8) She could have appealed but she did not. 9) Means 2 is OVER and she now relies upon exactly the same facts in Means 3.

Defendant respectfully prays that this Court dismiss Means 3 with prejudice.

Dated:  June 2, 2008                                MICHAEL J. AGUIRRE, City Attorney


By_____/s/ Joe Cordileone_____
    Joe Cordileone, Sr. Dep. City Attorney
    Attorneys for Defendant City of San Diego

10